DAVID H. BERNSTEIN (CA Bar No. 336551)
Email:  dhbernstein@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone:  (415) 738-5700
Facsimile:   (415) 644-5628

MEGAN K. BANNIGAN (*Pro Hac Vice* Forthcoming)
Email:  mkbannigan@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836

RUSSELL M. SELMONT (CA Bar No. 252522)
Email:  rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, 12th Floor
Beverly Hills, CA 90212-2974
Telephone:  (310) 273-6333
Facsimile:  (310) 859-2325

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDD FOUNDATION,<br><br>        Plaintiff,<br><br>   v.<br><br>CLEMENTS DESIGN, INC. and KIM KARDASHIAN,<br><br>        Defendants. | CASE NO. _____<br><br><br>**COMPLAINT FOR RELIEF PURSUANT TO 15 U.S.C. §§ 1114 AND 1125(a), 17 U.S.C. §§ 101 *et seq.*, CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 AND 17500, AND CALIFORNIA LAW** |

Plaintiff Judd Foundation ("Judd Foundation"), by its undersigned attorneys, Debevoise & Plimpton LLP, for its Complaint against Defendant Clements Design, Inc. ("Clements Design") and Defendant Kim Kardashian ("Ms. Kardashian") alleges as follows:

## PRELIMINARY STATEMENT

1.  This is an action for trademark infringement, copyright infringement, unfair competition, false advertising, and false endorsement arising out of Clements Design's advertising and sale of knockoff DONALD JUDD furniture and celebrity Kim Kardashian's display and promotion of that fake furniture as being authentic DONALD JUDD furniture even when she knew that it was not genuine.

2.  Donald Judd ("Mr. Judd") was a renowned twentieth-century American artist.  His work is featured in world-famous museums, including the Museum of Modern Art and Guggenheim Museum in New York and the National Gallery of Art in Washington, D.C.  Mr. Judd and his art have been covered extensively in mainstream media publications such as *The New York Times*, *The Wall Street Journal*, the *Chicago Tribune*, and the *Financial Times*.  He is widely known and acclaimed for his distinctive minimalist, geometric, and precise style, which he began incorporating into furniture designs in the 1960s.

3.  Plaintiff Judd Foundation is a nonprofit organization founded to carry on and protect Mr. Judd's legacy following his death in 1994.  Plaintiff maintains and preserves Mr. Judd's permanently-installed living and working spaces, libraries, and archives in New York City and Marfa, Texas.  Plaintiff also sells authentic DONALD JUDD furniture through its wholly-owned subsidiary Judd Furniture LLC, DBA Donald Judd Furniture, and selectively permits certain retailers to do the same.  All authentic DONALD JUDD furniture is sold under and stamped with the federally registered DONALD JUDD trademark.

COMPLAINT

4.      Mr. Judd, the Judd Estate, and now Judd Foundation have fabricated and sold a DONALD JUDD-branded table named "La Mansana Table 22" (the "DONALD JUDD La Mansana Table") and a DONALD JUDD-branded chair named "Chair 84" (the "DONALD JUDD Chair 84") since 1984.  The DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 are two of Mr. Judd's most well-known designs.  Both of these works are nonfunctional designs embodying Mr. Judd's precise, geometric, and unadorned style.  Although they are two separate designs, they were created to fit together as a single piece.  Such harmony and integration are a hallmark of Mr. Judd's works, and the composition of the chair and table together is a nonfunctional, distinctively DONALD JUDD piece unto itself.  The DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84, and the integrated design (the "DONALD JUDD Integrated Trade Dress") are all famous in the furniture and design world, having been recognized—alone and together—as iconic furniture designs.

COMPLAINT

| DONALD JUDD Chair 84 | DONALD JUDD La Mansana Table |
|---|---|
|  | |

| Integration of DONALD JUDD Chair 84 and DONALD JUDD La Mansana Table |
|---|
|  |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5.      Defendant Clements Design is an interior design firm that caters to art collectors, design enthusiasts, and celebrities.  In blatant disregard of Judd Foundation's trademark and copyright rights, Clements Design manufactured and sold knockoff versions of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 to Ms. Kardashian.  As part of its design proposal, Clements Design used Judd Foundation's copyrighted photo of a DONALD JUDD table surrounded by DONALD JUDD Chair 84s and a photo of a DONALD JUDD Chair 84, deceptively advertising that the works that would be provided to Ms. Kardashian were authorized, authentic DONALD JUDD furniture.

6.      The knockoff furniture was subsequently installed into Ms. Kardashian's SKKN BY KIM office.  Ms. Kardashian promoted the fake furniture and her association with Mr. Judd and DONALD JUDD furniture in a video (the "Kardashian Video") on her YouTube channel, which has more than two million subscribers.  The video showed the fake furniture, which included knockoff versions of both the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 shown in the DONALD JUDD Integrated Trade Dress, with Ms. Kardashian telling the "furniture people" watching that she had purchased authentic "Donald Judd tables."  The Kardashian Video has garnered 3.7 million views and was widely covered by the media, which erroneously reported that Ms. Kardashian had purchased authentic DONALD JUDD furniture.  Consumers who watched the video or read the media coverage were misled to believe Ms. Kardashian's tables and chairs were authentic DONALD JUDD pieces.

7.      Consumers have believed and are likely to believe that Clements Design's tables and chairs are made by, authorized by, or associated with Judd Foundation and its trademarks and copyrights.  Consumers are likely to believe Judd Foundation and the DONALD JUDD brand are connected or affiliated with, or otherwise sponsored or endorsed Ms. Kardashian and her SKKN BY KIM products.  The design- and art-loving consumers of both Clements Design and Judd Foundation are the same "furniture people"

4

COMPLAINT

to whom Ms. Kardashian referred in the Kardashian Video. Those people would expect Ms. Kardashian to own and display authentic—not fake—DONALD JUDD furniture and to have the real and true—not false—endorsements of celebrities, designers, or artists with whom Ms. Kardashian discusses working or mentions by name.

8.    Clements Design's and Ms. Kardashian's actions harm Judd Foundation's reputation by undermining its ability to control the quality of pieces sold under its trademarks, as well as its ability to control Mr. Judd's name and identity. This conduct, if not enjoined and corrected, will cause further confusion in the market and undermine the goodwill and integrity of Judd Foundation's DONALD JUDD brand, including Mr. Judd's name and identity.

9.    Judd Foundation attempted to resolve this matter amicably with Clements Design and Ms. Kardashian for several months—including through correspondence and conversations between counsel—but those attempts proved fruitless. Despite being well aware that the furniture featured in the Kardashian Video is fake, the video remains live and there have been no efforts by either party to correct the misstatements, recycle the fake furniture, or remove the false statement from the Kardashian Video. Judd Foundation has unfortunately been left with no choice but to bring this action to stop Clements Design's and Ms. Kardashian's further violation of Judd Foundation's exclusive intellectual property rights and rights in Mr. Judd's name and identity.

**PARTIES, JURISDICTION, AND VENUE**

10.    Plaintiff Judd Foundation is a 501(c)(3) not-for-profit organization registered in the state of Texas with its principal place of business at 101 Spring Street, New York, New York 10012 and registered to do business in New York State.

11.    Defendant Clements Design is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 717 N. Highland Ave. # 3, Los Angeles, CA 90038.

12.    On information and belief, Defendant Kim Kardashian is an individual residing in Los Angeles County, California.  Ms. Kardashian is the owner of the @KimKardashian YouTube channel, which provides "[e]xclusive Videos from Kim Kardashian."  https://www.youtube.com/@KimKardashian.  Ms. Kardashian is also the founder and CEO of the SKKN BY KIM brand, a brand that sells skincare products.

13.    This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

14.    This Court has personal jurisdiction over Defendant Clements Design pursuant to the California Long-Arm Statute, Cal. Code Civ. Proc. § 410.10, as Clements Design has transacted and conducted business, advertised, and wrongfully caused injury to Judd Foundation within the State of California and within this district and derives substantial revenue from interstate commerce.

15.    This Court has personal jurisdiction over Defendant Kim Kardashian as Ms. Kardashian is domiciled within the State of California and within this district.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events and omissions giving rise to the claims occurred in this district and because Clements Design and Ms. Kardashian are subject to personal jurisdiction in this district.

## **FACTUAL BACKGROUND**

17.    Judd Foundation is a not-for-profit organization established to educate the public about and preserve the legacy of Mr. Judd, one of the most important American artists of the twentieth century.

18.    Mr. Judd was born in 1928 in Missouri and studied art history and painting in New York.  He began working as an art critic and artist—working mainly in painting—in his twenties.  He transitioned to creating and exhibiting three-dimensional art in the early 1960s.

COMPLAINT

19.     Mr. Judd became widely known for his minimalist style, specifically sculptures that incorporate repetition of geometric shapes at an impressive scale.  He is considered a leading artist and theoretician of the Minimalism art movement.  His essays and articles are widely acknowledged as key texts in the history of contemporary art.

20.     In the words of *New York Magazine*, Judd's "influence is everywhere." Mr. Judd's works have been displayed at over 230 solo museum and gallery exhibitions worldwide, including world-class art museums like the Museum of Modern Art in New York, the Whitney Museum of American Art in New York, and the Tate Modern in London.  Mr. Judd's exhibitions and his legacy have been covered extensively by well-known publications like *The New York Times* and *The Wall Street Journal*.  Mr. Judd and his art have been the subject of solo documentaries, including *Donald Judd's Marfa, Texas* (1997); *Bauhaus, Texas: The American Artist Donald Judd* (1994); and *The Artist's Studio: Donald Judd* (1972) and featured in other films on famous artists, including *Inspired* (2017), *Dia's Artists on Artists* (2001), and *Masters of Modern Sculpture III* (1978).  According to *New York Magazine*, "Judd has become increasingly ubiquitous" in recent years.

21.     Mr. Judd and his pioneering, revolutionary works received extensive critical acclaim.  He received medals for his work in sculpture and was awarded fellowships, such as the Guggenheim Foundation Fellowship in 1968.

22.     In 1971, Mr. Judd moved to Marfa, Texas, drawing inspiration from the minimal and remote landscape.  There he established The Chinati Foundation as a site for the permanent installation of large-scale works of art.  This move turned the remote desert town into an international cultural destination, attracting art aficionados and celebrities from around the world.  Marfa has been the site of famous movies like *No Country for Old Men* and *There Will Be Blood*, television series like *I Love Dick*, and fashion shoots for global luxury brands.  It has been covered extensively by international publications like *Vogue* and *Elle* as a place for "design-lovers" and as "America's

Coolest Art Town." The Chinati Foundation itself hosts about 25,000 visitors a year. Judd Foundation preserves, restores, and opens to the public Mr. Judd's Marfa buildings and installations.

### DONALD JUDD Furniture

23.    Among his many pursuits, Mr. Judd designed and fabricated furniture that embodied his distinct minimalist style, including chairs, stools, benches, beds, desks, shelves, and tables—initially for his own use. Starting in the 1980s, Mr. Judd expanded his range of furniture designs and started to make them available for commercial sale. Mr. Judd's furniture possessed the same minimalist artistic elements, meticulous craftsmanship, and creative ingenuity embodied in his other works. Because of his attention to detail and the quality of the materials used, Mr. Judd's furniture cost thousands of dollars to purchase and months to build.

24.    Mr. Judd died in 1994. Mr. Judd's will directed that Judd Foundation be created to preserve his legacy and to be the beneficiary of his estate, including all intellectual property rights in Mr. Judd's art, writing, furniture, and archives.

25.    Since Mr. Judd's death, Judd Foundation has continued to market, promote, manufacture, and sell Mr. Judd's iconic furniture designs, faithfully adhering to Mr. Judd's exacting specifications. Judd Foundation uses all proceeds from these furniture sales to support its mission of maintaining Mr. Judd's legacy, preserving his installations in New York and Marfa, and educating the public about his oeuvre.

26.    Judd Foundation has authorized a handful of exclusive art galleries—like Salon 94 Design—and select retail stores—like the MoMA Design store—periodically to sell DONALD JUDD furniture. To maintain the integrity of Mr. Judd's work and legacy, as well as the goodwill in the DONALD JUDD brand, Judd Foundation is highly selective with its partnerships and has declined opportunities for mass production and licensing.

COMPLAINT

27.     In 2017, Judd Foundation launched a separate commerce website where individuals can view and purchase the entire catalog of Mr. Judd's furniture designs. Customers are often art collectors and design enthusiasts and have included well-known celebrities. Judd Foundation's DONALD JUDD furniture is marketed and promoted through editorial pieces and by its authorized retailers through exhibitions.

28.     DONALD JUDD furniture is widely known and acclaimed. *The New York Times*, *The Wall Street Journal*, *Vogue*, the *Chicago Tribune*, *Vulture*, and the *Financial Times* have all featured and discussed Mr. Judd's furniture, which has garnered artistic renown similar to that of his sculptures. In 2018, for example, the San Francisco Museum of Modern Art exhibited Mr. Judd's furniture in a solo exhibition, and art history scholars have studied and analyzed Mr. Judd's furniture designs alongside his broader artistic portfolio. As one magazine explained, collectors and consumers covet Mr. Judd's works and "his furniture designs [have become] trophies in the realms of fashion and design[.]"[1]

29.     Judd Foundation scrupulously protects its intellectual property rights in the DONALD JUDD word mark, the trade dress of his furniture, and the copyrights it maintains in photographs of DONALD JUDD furniture. The DONALD JUDD word mark is used in commerce to indicate the source of DONALD JUDD for furniture, and the mark has been registered with the United States Patent and Trademark Office since 2007 (Reg. No. 3,273,411). All DONALD JUDD furniture is stamped with "Donald Judd™" or "DONALD JUDD™" and a sequential production number.[2] Images of the DONALD JUDD trademark stamped in wood and metal on authentic DONALD JUDD furniture are shown below.

---

[1] Leah Pires, *A Chair Is a Chair*, TRIPLECANOPY (Apr. 21, 2015), https://canopycanopycanopy.com/contents/a-chair-is-a-chair (last visited Mar. 26, 2024).
[2] Judd Foundation has a registration in the DONALD JUDD trademark but denotes the mark with ™ based on how Mr. Judd formerly represented the mark before registration.

9

| DONALD JUDD trademark in wood | DONALD JUDD trademark in metal |
|---|---|
|  | |

30.   As a condition of any purchase of DONALD JUDD furniture, Judd Foundation prohibits customers from using the names DONALD JUDD, DONALD JUDD Furniture, or Judd Foundation in any editorial, press, or promotional materials, and advertising materials must be approved in advance by Judd Foundation.  Additionally, Judd Foundation invoices emphasize that "[n]o editorial, press or promotional materials shall create the impression that Judd Foundation endorses or is affiliated in any way, with any product, service or company."

**The DONALD JUDD La Mansana Table and The DONALD JUDD Chair 84 Trade Dress**

31.   In 1982, Mr. Judd designed two iconic pieces:  the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84.  These pieces are widely celebrated, innovative, and quintessential DONALD JUDD furniture designs.

32.   The DONALD JUDD La Mansana Table (shown at right) is a rectangular table measuring 30 inches tall, 168 inches long, and 56 inches wide.  The table is orthogonal and precise.  Its surface



COMPLAINT

and legs are rectangular, flat, straight, unadorned, and made from his signature use of 2x12 boards, all hallmarks of Mr. Judd's innovative and minimalist vision.  The table has six legs.  Unlike most ordinary tables, each leg is distinctly comprised of wide, rectangular pieces.  There are four legs at the four corners of the table, each made of two flat rectangular pieces meeting orthogonally at the corner.  There are two legs across from each other at the center of the table, each made of flat rectangular pieces.  Also unlike most tables, each leg is flush to the table surface, as opposed to sitting inset beneath the table surface.  The table design thus evokes the seamless skeleton structure of a rectangular prism.  The table also has rectangular skirting beneath its top, inset behind the legs.  The table design allows for Judd-designed chairs, like the DONALD JUDD Chair 84, to fit seamlessly flush with the height of the table.  The rectangular table legs look exactly like the rectangular backs of Judd-designed chairs, uniquely dissolving the distinction between table and chair into one singular, integrated piece.  The piece encapsulates Mr. Judd's distinct artistic emphasis on simple, orthogonal shapes, the geometry of lines and planes, scale, and precision.

33.     The DONALD JUDD La Mansana Table is authorized and offered only in the following wood types:  alder, ash, black walnut, cedar, cherry, clear pine, pine, cypress, Douglas fir, maple, oak, Sitka spruce, and white elm.  It is not designed in or authorized in plywood.

34.     The trade dress of the DONALD JUDD La Mansana Table is nonfunctional.  It is not necessary for others to use this distinctive design to compete in the marketplace.  It is a highly innovative and original piece designed by an artist.



35.     The DONALD JUDD Chair 84 (shown at right) is a rectangular chair measuring 30 inches tall,

COMPLAINT

15 inches wide, and 15 inches long, using 1x12 boards. Like the DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84 is a minimalist design that incorporates unadorned, flat, straight, rectangular pieces meeting orthogonally. Instead of having four legs like most ordinary chairs, the base of the DONALD JUDD Chair 84 is an unornamented cuboid. The chair has no arms—rather, a single, undecorated, rectangular piece, orthogonal to the chair seat, serves as the back of the chair. The rectangular pieces making up the chair sit precisely flush with one another, creating a seamless design that, as discussed above, fits perfectly beneath the DONALD JUDD La Mansana Table. These elements give the chair a distinctive geometric, orthogonal, minimalist design.

36. The DONALD JUDD Chair 84 is authorized and offered in 10 different permutations, shown below, each identical save for slightly different configurations within the cuboid base. For example, the chair shown above is the "Forward Slant Chair 84" due to the flat, slanted rectangular piece within the base. Each style of the DONALD JUDD Chair 84, though, has the distinctive features described above.

| Center Divider Chair 84 | Backward Slant Chair 84 | Side Recessed Chair 84 | Low Shelf Chair 84 | Front Shelf Chair 84 |
|---|---|---|---|---|
| | | | | |
| Open Side Chair 84 | Half Divided Chair 84 | Forward Slant Chair 84 | Front Recessed Chair 84 | Side Shelf Chair 84 |
| | | | | |

12
COMPLAINT

1

2    37.    The DONALD JUDD Chair 84 is offered only in the following wood types:

3   alder, ash, black walnut, cedar, cherry, clear pine, pine, cypress, Douglas fir, maple, oak,

4   Sitka spruce, and white elm.  It is authorized in high-quality Finnish plywood.

5    38.    The trade dress of the DONALD JUDD Chair 84 is nonfunctional.  It is not

6   necessary for others to use this distinctive design to compete in the marketplace.  It is a

7   highly innovative and original piece designed by an artist.

8    39.    The DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84

9   are each a distinctive piece and together form the DONALD JUDD Integrated Trade

10  Dress—a singular, distinctive trade dress unto itself.  As discussed above, the DONALD

11  JUDD Chair 84 and the DONALD JUDD La Mansana Table fit together seamlessly to

12  create a minimalist, orthogonal, geometric, rectangular prism, evocative of the minimalist

13  concrete and mill aluminum cubes and rectangular prisms that populated Mr. Judd's

14  famous Marfa installations.  The unadorned, flat, rectangular backs of the DONALD

15  JUDD Chair 84 mimic the unadorned, flat, rectangular legs of the DONALD JUDD La

16  Mansana Table, making the chairs, when pushed in, dissolve into the structure of the

17  table.  This DONALD JUDD Integrated Trade Dress has been recognized by design

18  critics, who have noted that the table and chairs "merge into one block, closing space

19  within it.  The backs of the chairs form the outer walls, hinging on the table's legs and

20  capped off by its top.  When the chairs are pulled back again, space is re-opened,

21  becoming accessible, usable, and visible."  This exploration of the geometry of lines,

22  planes, and space is "characteristic" of Mr. Judd.  The DONALD JUDD Integrated Trade

23  Dress is highly distinctive, nonfunctional, and unnecessary for others to use to compete in

24  the marketplace.

25    40.    Since the 1980s, the DONALD JUDD La Mansana Table and the DONALD

26  JUDD Chair 84 have been publicly displayed—often together in the DONALD JUDD

27  Integrated Trade Dress—and have garnered acclaim.  Two DONALD JUDD La Mansana

28

Tables serve as the centerpiece of Mr. Judd's installation in the Arena at The Chinati Foundation in Marfa, Texas, which turned that remote Texas town into an international cultural center and pilgrimage site for art and design lovers. As shown right, each table in the Marfa installation is surrounded by DONALD JUDD Chair 84 chairs, which are seamlessly tucked into the



tables showcasing the DONALD JUDD Integrated Trade Dress.  Every year, famous celebrities and tens of thousands of art enthusiasts make the pilgrimage to remote Marfa, Texas to appreciate The Chinati Foundation, the Arena, the DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84, and the DONALD JUDD Integrated Trade Dress.  The DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84, and the DONALD JUDD Integrated Trade Dress are emblematic of the recognizable Donald Judd aesthetic that has garnered secondary meaning as "the world's most iconic minimalist furniture."

41.    Several configurations of the DONALD JUDD Chair 84 have been exhibited at the San Francisco Museum of Modern Art and the Museum of Modern Art in New York.  In 2020, *Architectural Digest* referred to the Chair 84 design as "iconic" and the "essence of design."  Another publication has referred to the Chair 84 as "peak Judd," meaning the chair is the distillation of the quintessential minimalist elements that turned Mr. Judd into one of the best-known artists of the twentieth century.

42.    The DONALD JUDD La Mansana Table is also displayed in Judd Foundation's permanent installation at 101 Spring Street New York, New York.

43.     Since 1984 Mr. Judd—and subsequently Judd Foundation—have fabricated the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 for commercial sale.  Each piece is handmade to order.

44.     The DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 are available for purchase through the Judd Furniture website and have been available through the following select authorized retailers:  Galerie Greta Meert, Brussels; Galerie Mitterand, Paris; and Galerie Elvira Gonzales, Madrid.  They have also been available through Judd Foundation's primary galleries:  Gagosian, various locations; Galerie Thaddeaus Ropac, various locations; and Salon 94 Design, New York.

45.     The DONALD JUDD La Mansana Table retails for $90,000 in hardwood. The DONALD JUDD Chair 84 retails for $9,000 in hardwood.

46.     Judd Foundation has sold more DONALD JUDD Chair 84 chairs than any other piece of DONALD JUDD furniture.

### The Kardashian Tables and Chairs

47.     World-famous celebrity Kim Kardashian is known for everything from her widely-watched reality TV show to her successful multibillion-dollar businesses. Ms. Kardashian is the co-founder of SKIMS, a popular shapewear collection launched in August 2019.  It was valued at $4 billion in 2023 and made it onto *Time*'s list of 100 Most Influential Companies of 2022.

48.     Ms. Kardashian is the founder and CEO of SKKN BY KIM, a high-end skincare collection launched in June 2022.  SKKN BY KIM was previously known as KKW Beauty, LLC, which was valued at $1 billion in 2020.

49.     Ms. Kardashian is widely known and lauded for her savvy promotional skills—both for herself and her business endeavors—on social media.  Ms. Kardashian's personal YouTube channel—found using the @KimKardashian handle—has over two million subscribers alone.  *See* https://www.youtube.com/@KimKardashian.  YouTube is

a popular video and social media platform that has become increasingly popular for the advertising and promotion of brands.

50.     Ms. Kardashian has also garnered a reputation as an art collector and design enthusiast, collaborating with artists and designers, including Rick Owens and Axel Vervoordt.

51.     On information and belief, Ms. Kardashian contacted Clements Design about the interior design of her SKKN BY KIM office in Los Angeles, California in or around 2020.  Clements Design is a Los Angeles-based interior design firm founded in 2002 by mother-and-son team Kathleen and Tommy Clements.  The firm is renowned in the interior design world, catering to celebrity clients, such as Jennifer Aniston and Ellen DeGeneres, and was recognized as a 2023 *Architectural Digest* "top talent in interior decoration, architecture, and landscape design."

52.     Clements Design frequently collaborates with Los Angeles-based designer Waldo Fernandez ("Mr. Fernandez") for its interior design projects.  On information and belief, Clements Design partnered with Mr. Fernandez to design the SKKN BY KIM office.

53.     When designing a space, Clements Design contacts art galleries, just like those that carry DONALD JUDD furniture, to order authentic designer pieces.  Clements Design has ordered a number of authentic Rick Owens pieces from Owens Atelier, represented by Salon 94 Design, one of Judd Foundation's authorized furniture galleries.

54.     On information and belief, Clements Design also designs, manufactures, and sells furniture itself.  In fact, Clements Design, along with Mr. Fernandez, appears to have done so for Kris Jenner, Ms. Kardashian's mother, designing and manufacturing pieces of furniture for Ms. Jenner's home, including a marble bar.  Clements Design and Mr. Fernandez also designed the interior of the home of Kendall Jenner, Ms. Kardashian's sister.  Clements Design and Mr. Fernandez, thus, have a long history of working with the Kardashian family.

16
COMPLAINT

1     55.    According to her representative, Ms. Kardashian is a "huge fan" of Mr. Judd
2  and, on information and belief, Clements Design knew of this fact.

3     56.    On November 23, 2020, Clements Design sent a proposal to KKW Beauty,
4  LLC—the predecessor to SKKN BY KIM that was owned by Ms. Kardashian—that, on
5  information and belief, listed pieces from well-known designers to be delivered to and
6  installed in various rooms in the SKKN BY KIM office.

7     57.    On this design proposal, pictured below, Clements Design offered to provide
8  "(2) 168" L Dining Tables in the Style of Donald Judd."  Accompanying the proposal
9  was a photo of an authentic DONALD JUDD table in a Donald Judd installed space,
10 surrounded by the DONALD JUDD Chair 84 chairs in the distinctive DONALD JUDD
11 Integrated Trade Dress (the "DONALD JUDD Table Photo").  The photograph was taken
12 in connection with the 2018 Donald Judd Exhibition at the San Francisco Museum of
13 Modern Art.  The photo is a work for hire, and Judd Foundation owns the worldwide
14 copyright in the photo and registered the photo with the United States Copyright Office
15 on February 14, 2024 under registration number TX 9-361-383.  It was printed in *Donald
16 Judd Spaces*, a visual survey of Mr. Judd's living and working spaces published in 2020.
17 Judd Foundation printed and distributed over 12,500 copies of the DONALD JUDD
18 Table Photo.

19    58.    Clements Design also offered to provide "(24) Dining Chairs in the Style of
20 Donald Judd."  Accompanying the proposal was a photo of an authentic DONALD
21 JUDD Chair 84.

22    59.    The design proposal also stated that Clements Design would bill separately
23 for "Delivery / Installation" of both the tables and chairs.  On information and belief,
24 Clements Design manufactured, sold, and installed the tables and chairs in the SKKN BY
25 KIM office.

26

27

28

17



CLEMENTS DESIGN

Proposal

KKW Beauty, LLC
c/o Tri-Star Sports & Entertainment
9255 Sunset Blvd., Floor 2
West Hollywood, CA 90069
(KKW AGOURA OFFICE PROJECT)

Proposal #:        102786
Proposal Date:     11/23/2020

| Quantity | Unit | Description | Unit Price | Total Price |
|---|---|---|---|---|
| | | **1st Level - Conference Room** | | |
| 1.00 | Each | ▮▮▮▮▮ | ▮ | ▮ |
| | | **Delivery / Installation to be billed separately | | |
| | | **1st Level - Full Kitchen/Eating** | | |
| 1.00 | Each | ▮▮▮▮▮ | ▮ | ▮ |
| | | **Delivery / Installation to be billed separately | | |
| 2.00 | Each | (2) 168" L Dining Tables in the Style of Donald Judd in Natural Plywood *Shipping to be billed separately | ▮ | ▮ |
| | | **Delivery / Installation to be billed separately | | |
| 24.00 | Each | (24) Dining Chairs in the Style of Donald Judd in Natural Plywood *Shipping to be billed separately | ▮ | ▮ |
| | | **Delivery / Installation to be billed separately | | |

18
COMPLAINT

1

60.    On August 12, 2022, Ms. Kardashian posted the Kardashian Video titled "Welcome to my Office!  Official SKKN BY KIM Office Tour" to her personal YouTube channel.[3]

61.    In the video, Ms. Kardashian gave a tour of the Los Angeles office of the SKKN BY KIM skincare brand, launched two months prior, and promoted SKKN BY KIM products.  During the video, Ms. Kardashian showcased and discussed her SKKN BY KIM products extensively.

62.    Throughout the tour, Ms. Kardashian also discussed the various art and furniture pieces in the office, named their designers and creators, and described the personal relationships she had with them.  Ms. Kardashian explicitly drew the connection between her SKKN BY KIM brand and these pieces.

63.    At thirty seconds into the video, Ms. Kardashian said, "my whole office was kind of decorated by my decorators Tommy and Waldo."  On information and belief, "Tommy and Waldo" are Tommy Clements and Waldo Fernandez.

64.    At thirty-five seconds into the video, Ms. Kardashian said, "we had Michèle from Rick Owens, she did all the furniture and helped me come up with just everything that I would possibly need and love for this big space."  Rick Owens is a famous American fashion designer who, with his wife Michèle Lamy, also designs furniture that has been featured in galleries and museums around the world.  Ms. Kardashian then pointed to a "Rick Owens bed" in the office and explained that she had previously seen and loved a Rick Owens bed, so she asked Michèle to "make something like this for my office."

65.    The video then followed Ms. Kardashian into the office kitchen where she said, "[w]e have all of the Vanessa Beecroft art everywhere.  If you see any art it's all Vanessa, who really was so pivotal in SKIMS and doing our first campaigns, and she's

---

[3] *See* Kim Kardashian, *Welcome to my Office! Official SKKN BY KIM Office Tour*, YOUTUBE (Aug. 12, 2022), https://www.youtube.com/watch?v=Na811tR1gFQ.

COMPLAINT

just amazing.  I work with her all the time."  Vanessa Beecroft is a famous American artist who has been featured in renowned museums like the Museum of Modern Art and worked with luxury brands like Louis Vuitton.

66.     Two minutes and twenty seconds into the video, immediately after discussing her personal and working relationships with Michèle Lamy, Rick Owens, and Vanessa Beecroft, Ms. Kardashian pointed to two tables with sets of chairs seamlessly tucked under the tables and said, "If you guys are furniture people—because I've really gotten into furniture lately—these Donald Judd tables are really amazing and totally blend in with the seats."

67.     Ms. Kardashian deliberately named Mr. Judd—as she did the other designers—and utilized the DONALD JUDD trademark to give the impression that she and her SKKN BY KIM brand were connected, affiliated, associated with, or otherwise endorsed by Mr. Judd and the DONALD JUDD brand.  Ms. Kardashian's intentional statement gave the false impression that, by providing this furniture, Judd Foundation lent the DONALD JUDD trademark and Mr. Judd's world-renowned artistic reputation to Ms. Kardashian and the SKKN BY KIM brand.

68.     The effect of this statement and the surrounding context has misled and is likely to mislead consumers into believing that the furniture is authentic DONALD JUDD furniture and that Ms. Kardashian also worked personally with Mr. Judd, or his estate, in outfitting her SKKN BY KIM office.  Ms. Kardashian's statement is literally false and particularly misleading because Judd Foundation categorically prohibits customers from using purchased DONALD JUDD furniture for marketing and promotional purposes.  Therefore, viewers of the Kardashian Video would believe that Judd Foundation had endorsed Ms. Kardashian and granted her unique permission to use DONALD JUDD furniture in the Kardashian Video.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

69.    However, the tables and chairs shown in the Kardashian Video ("the Kardashian Tables and Chairs") are not authentic DONALD JUDD pieces fabricated by Judd Foundation but were instead unauthorized knockoffs that were produced by Clements Design.  Ms. Kardashian and SKKN BY KIM are in no way affiliated with or endorsed by Mr. Judd or Judd Foundation.  Selected screengrabs of the Kardashian Video are shown below:





21

COMPLAINT





COMPLAINT







1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

70.     The Kardashian Tables and Chairs slavishly imitate the trade dress of the DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84, and the DONALD JUDD Integrated Trade Dress—designs that are iconic of Mr. Judd's work, that are installed in Mr. Judd's famous Arena installation at The Chinati Foundation, and that are sold commercially by Judd Foundation.

71.     The Kardashian Tables are identical to the DONALD JUDD La Mansana Table design.  They are identical in length, as specified on Clements Design's proposal. From the Kardashian Video, they also appear to be identical in width and height. However, the Kardashian Tables are made in plywood, a material which Judd Foundation does not authorize for the fabrication of the DONALD JUDD La Mansana Table.  The Kardashian Tables bear the DONALD JUDD La Mansana Table's signature, nonfunctional design components:  a composition of flat, rectangular, straight, unadorned pieces; six wide rectangular table legs in an identical formation; legs at the corners that meet in orthogonal fashion and are flush to the table surface; legs that, when displayed with the DONALD JUDD Chair 84, blend in with the chairs; and a sliver of rectangular skirting beneath the table.

72.     The Kardashian Chairs, too, appear identical to the DONALD JUDD Chair 84 design:  they appear identical in length, height, and width.  Although the Kardashian Chairs are made of plywood, which Judd Foundation authorizes for the fabrication of the DONALD JUDD Chair 84, it is not the same high-quality Finnish plywood Judd Foundation uses.  The Kardashian Chairs bear the DONALD JUDD Chair 84 trade dress's signature, nonfunctional design components:  the iconic straight, flat, rectangular back sitting orthogonal to the seat; the armless seat; and the unadorned cube acting as the chair base.

73.     The Kardashian Tables and Chairs situated together are also identical to the DONALD JUDD Integrated Trade Dress of the seamlessly integrated DONALD JUDD La Mansana Table and DONALD JUDD Chair 84.  This is illustrated and noted by

COMPLAINT

Ms. Kardashian herself who says, two minutes and thirty seconds into the video, "these Donald Judd tables . . . totally blend in with the seats." Ms. Kardashian then pulls out one of the imitation DONALD JUDD Chair 84 chairs to illustrate how it is seamlessly integrated into the table. Photos comparing the DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84, and the DONALD JUDD Integrated Trade Dress to the Kardashian Tables and Chairs are shown below.

| DONALD JUDD La Mansana Table, DONALD JUDD Chair 84, and DONALD JUDD Integrated Trade Dress | Kardashian Tables and Chairs |
|---|---|
|  |  |
|  |  |

74.     These poor-quality imitations masquerading as authentic DONALD JUDD tables and chairs harm the DONALD JUDD brand, as consumers will see the cheap

25

knockoffs, be told they are authentic DONALD JUDD furniture, and erroneously associate those low-grade pieces with the DONALD JUDD brand.

75.     Not only do the Kardashian Tables and Chairs trade off of Mr. Judd's iconic furniture designs, but Ms. Kardashian's promoting these tables as "Donald Judd tables" serves only to reinforce the deception that these are actual, authentic, authorized DONALD JUDD works.  Moreover, Clements Design's specific installation of the tables and chairs in the SKKN BY KIM office slavishly copies the composition of Mr. Judd's Arena (Mr. Judd's famous installation consisting of his architectural interventions and furniture in Marfa, Texas, which has been highly photographed, featured in publications such as *Vogue* and *The Wall Street Journal*, and which hosts tens of thousands of visitors, including world-famous celebrities, each year).  As Mr. Judd himself articulated, "the space surrounding [a] work is crucial to it:  as much thought has gone into the installation as into a piece itself."

76.     Clements Design—and specifically Mr. Fernandez, who assisted in the design of Ms. Kardashian's space—are intimately familiar with Marfa, Texas, The Chinati Foundation, and Mr. Judd's Arena installations.  Mr. Fernandez is listed as a supporter of Ballroom Marfa, a leading art nonprofit in Marfa, Texas, which has partnered with Judd Foundation.

77.     The SKKN BY KIM office features the same set of two identical tables and chairs situated parallel to one another, vaulted ceilings, two sets of track lights running parallel over the tables, and a concrete slab floor.  In the Kardashian Video, the Kardashian Tables and Chairs are arranged with the chairs pushed in.  This imitates the arrangement in the Arena where the DONALD JUDD La Mansana Tables are accompanied by pushed-in DONALD JUDD Chair 84 chairs as in the DONALD JUDD Integrated Trade Dress.  When designing the Arena, Mr. Judd himself poured this large concrete slab by the kitchen.  The large concrete slab in Ms. Kardashian's space, which, on information and belief, was also installed by Clements Design, is similarly part of the

COMPLAINT

space's kitchen.  Just like in the Arena, the Kardashian Tables and Chairs are recessed on one side of the room, leaving the same open space.  Both the Arena and Ms. Kardashian's space arrange the tables toward the central axis of the space.  Additionally, the Arena and Ms. Kardashian's space feature white walls with wooden accents.  Furthermore, the Kardashian Tables and Chairs are a light wood type, imitating the wood type in which the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 are exclusively manufactured.  Photos comparing the DONALD JUDD La Mansana Tables and the DONALD JUDD Chair 84 chairs installed in the Arena to the Kardashian Tables and Chairs are shown below.

| DONALD JUDD La Mansana Tables and DONALD JUDD Chair 84 Chairs Installed by Mr. Judd in the Arena | Kardashian Tables and Chairs Installed by Clements Design in Ms. Kardashian's Office |
| --- | --- |
|  |  |

78.     On information and belief, Clements Design designed and installed the furniture in the SKKN BY KIM office to specifically imitate Mr. Judd's Arena, which causes further confusion as to the origin of the furniture.

79.     Finally, Ms. Kardashian's imitation of the Arena further suggests to viewers that Mr. Judd or Judd Foundation were personally connected with and endorsed Ms. Kardashian by incorporating Mr. Judd's past compositions to style her SKKN BY KIM office.

COMPLAINT

1

**Judd Foundation's Effort to Resolve This Dispute Amicably**

2      80.     As of the filing of this Complaint, the Kardashian Video has been viewed

3   3.7 million times.  The Kardashian Video, and the Kardashian Tables and Chairs shown

4   in it, were discussed in widely distributed and read publications, including *Architectural*

5   *Digest*, the *Daily Mail*, *Vogue*, *Grazia*, and *Us Weekly*, with each publication naming the

6   SKKN BY KIM brand and products and erroneously repeating that Ms. Kardashian's

7   SKKN BY KIM office boasted "Donald Judd" furniture.  These articles amplified and

8   lent credence to the knockoff furniture and false representations in the Kardashian Video.

9   The *Architectural Digest* article stated that Ms. Kardashian has "consistently turned to

10   neutral colors and minimalism in her design choices" and "the offices of her skincare

11   line, Skkn by Kim . . .  are no exception" where the "open-plan kitchen area boasts

12   Donald Judd tables and a matching fleet of the influential designer's iconic Chair 84."

13   This article further spread Ms. Kardashian's false representation and endorsement to its

14   art- and design-loving audience.

15      81.     These misstatements predictably led consumers to believe the source of the

16   furniture was Judd Foundation and Ms. Kardashian and SKKN BY KIM were associated

17   with or endorsed by Mr. Judd and the DONALD JUDD brand.  On X (formerly Twitter),

18   one user posted a screenshot of the video featuring the Kardashian Tables and Chairs and

19   Ms. Kardashian's misstatement, reporting that "Kim Kardashian is really into furniture

20   and just discovered Donald Judd."

21

22

23

24

25

26

27

28





**Father Sean Misty**
@seanieviola

I'm sad to report Kim Kardashian is really into furniture and just discovered Donald Judd.

8:42 AM · Aug 17, 2022

**47** Reposts   **46** Quotes   **1,415** Likes   **129** Bookmarks

82.    On August 17, 2022, David Eardley, a design critic, posted screenshots of the Kardashian Video to his Instagram account with 106,000 followers.  The screenshots had subtitles showing Ms. Kardashian stating "these Donald Judd tables."  Various followers commented, demonstrating they believed it was authentic DONALD JUDD furniture.  Despite the large number of followers to this account, no users appeared to have identified that this was inauthentic DONALD JUDD furniture.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   83.   On September 29, 2022, Mr. Eardley wrote an article discussing the

16  Kardashian Video, further evincing how he, and likely other consumers, perceived

17  Ms. Kardashian as communicating that Mr. Judd and his furniture were an extension of

18  and affiliated with Ms. Kardashian and her brands.  He wrote that Ms. Kardashian's

19  "furniture" was "an extension of Kim's clothing itself" and, specifically, "the Judd dining

20  set" played on the "neutral palette" of Ms. Kardashian's products.

21   84.   Judd Foundation learned about the Kardashian Video on August 15, 2022

22  through a press alert three days after its release.  Judd Foundation scrupulously tracks all

23  fabricated DONALD JUDD furniture and immediately suspected that Ms. Kardashian's

24  furniture was inauthentic.  That same day, Judd Foundation contacted Ms. Kardashian

25  through her publicist to understand the origin of the furniture.  Ms. Kardashian's

26  representative responded:  "[u]pon receiving it, we did further research and have learned

27  unfortunately that the table and chairs are not from Donald Judd. . . . [W]e are incredibly

28

COMPLAINT

sorry for any inconvenience this has caused the foundation."  Ms. Kardashian's representatives offered to "update the video caption with a retraction" but did not offer to take down the Kardashian Video.

85.     On August 30, 2022, Judd Foundation asked Ms. Kardashian's representatives to not just update the video caption but to retract the Kardashian Video itself and offer a statement to the press, including *Architectural Digest*, given the considerable press confusion about the origin of the Kardashian Tables and Chairs in the SKKN BY KIM office.  Judd Foundation could not accept Ms. Kardashian's offer to merely update the video caption, as doing so would allow fake Donald Judd furniture to remain in circulation and send a message to the general public that knockoff tables are not harmful.

86.     In an attempt to make every effort to resolve this amicably, on September 2, 2022, Judd Foundation wrote again to Ms. Kardashian's representatives offering to replace at a discount the inauthentic Kardashian Tables and Chairs with authentic DONALD JUDD La Mansana Tables and DONALD JUDD Chair 84 chairs.

87.     Ms. Kardashian, despite learning that the Kardashian Tables and Chairs were inauthentic and that Mr. Judd, the DONALD JUDD brand, and Judd Foundation had no connection to Ms. Kardashian or her SKKN BY KIM brand, ultimately declined to replace the Kardashian Tables and Chairs, retract the Kardashian Video, or issue a corrective statement to the press.  Instead, Ms. Kardashian's representatives suggested that Ms. Kardashian could make a social media post to promote Judd Foundation.  Judd Foundation rejected this offer, as it was—and remains—interested only in the preservation of Mr. Judd's legacy and protection of its rights, not media publicity.

88.     Judd Foundation later learned through one of its authorized retailers that Mr. Fernandez and Tommy Clements of Clements Design manufactured the fake Kardashian Tables and Chairs.

89.     On January 9, 2023, Rainer Judd, President of Judd Foundation and Mr.

COMPLAINT

Judd's daughter, personally wrote to Clements Design to inquire about Clements Design's role in the production of Ms. Kardashian's furniture, explain Judd Foundation's rights in the furniture designs, and request Clements Design's agreement that it would never again manufacture and sell knockoff DONALD JUDD furniture and would return and recycle the inauthentic Kardashian furniture.

90.     On January 24, 2023, Clements Design responded through counsel denying Judd Foundation's rights in the furniture designs and refusing to cease the manufacture and sale of furniture trading off Judd Foundation's trade dress and trademarks.  Clements Design also refused to recycle the infringing furniture.

91.     On February 15, 2023, Rainer Judd wrote to Ms. Kardashian explaining that she and her brother Flavin were entrusted with Mr. Judd's legacy and that Judd Foundation was "very much rooted in the idea of family and honoring our father's work." Rainer Judd again offered to replace the Kardashian Tables and Chairs with authentic DONALD JUDD tables and chairs at a discount.  As part of this offer, Ms. Kardashian would recycle—rather than destroy—the inauthentic Kardashian Tables and Chairs to alleviate her environmental and sustainability concerns.  Ms. Kardashian would also issue a retraction to the press and edit the Kardashian Video, clarifying that the Kardashian Tables and Chairs were not authentic DONALD JUDD furniture.  Ms. Kardashian and her representatives never responded to Rainer Judd's letter.

92.     On March 7, 2023, Clements Design wrote to Judd Foundation that it never represented to Ms. Kardashian that the Kardashian Tables and Chairs were authentic DONALD JUDD furniture, that Clements Design was not to blame for Ms. Kardashian's misstatement, and that Judd Foundation should contact Ms. Kardashian to resolve the dispute.  Clements Design claimed the furniture was sufficiently different from real DONALD JUDD furniture, which Judd Foundation disputes, but failed to explain why Ms. Kardashian represented it as real.  Since then, Judd Foundation and Clements Design have been at an impasse.

93.     For the next five months, Judd Foundation attempted to contact and convince individuals close to Ms. Kardashian that she should recycle the Kardashian Tables and Chairs, remove the Kardashian Video, and issue a corrective statement to the press.  Judd Foundation last spoke with Ms. Kardashian's associates in August 2023, to no avail.

94.     As of the filing of this Complaint, neither Clements Design nor Ms. Kardashian has taken steps to recycle the fake furniture, delete the promotional Kardashian Video associated with the furniture, or make any corrective advertising.

95.     Judd Foundation respects Ms. Kardashian, the work she has done to create successful businesses like SKKN BY KIM, and her passion for design.  Judd Foundation attempted to resolve this issue with both Clements Design and Ms. Kardashian amicably and with reasonable requests.  Judd Foundation is now left with no choice but to file this complaint after both Clements Design and Ms. Kardashian refused to take corrective action to protect its DONALD JUDD brand and Mr. Judd's legacy, identity, and reputation.

## **FIRST CLAIM FOR RELIEF:**

**Trademark Infringement and False Designation of Origin under**

**15 U.S.C. § 1125(a) of the DONALD JUDD La Mansana Table Trade Dress against**

**Defendant Clements Design**

96.     Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

97.     Judd Foundation owns a valid trade dress in the DONALD JUDD La Mansana Table, which is nonfunctional, unique, and has acquired secondary meaning.

98.     On information and belief, Clements Design manufactures and sells furniture throughout the United States, including in the State of California.

99.     Clements Design manufactured and sold tables that are identical to the DONALD JUDD La Mansana Table trade dress.

33
COMPLAINT

100.    Clements Design's manufacture of imitation DONALD JUDD La Mansana Tables that are confusingly similar to the trade dress of authentic DONALD JUDD La Mansana Tables, and its sale, offering for sale, distribution, and advertising of those ersatz tables, has been intentional and was done with knowledge of the considerable reputation, goodwill, and fame associated with Mr. Judd and the DONALD JUDD La Mansana Table.

101.    Clements Design's unauthorized copying of the DONALD JUDD La Mansana Table trade dress is likely to cause confusion as to the source of origin of Clements Design's tables and is likely to cause confusion as to whether Judd Foundation sponsors, is affiliated with, or has a connection with Clements Design and its tables.

102.    By reason of the foregoing, Judd Foundation is entitled to permanent injunctive relief against Clements Design restraining further acts of trade dress infringement and to recover damages caused by Clements Design in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF:**

**Trademark Infringement and False Designation of Origin under**

**15 U.S.C. § 1125(a) of the DONALD JUDD Chair 84 Trade Dress against Defendant**

**Clements Design**

103.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

104.    Judd Foundation owns a valid trade dress in the DONALD JUDD Chair 84, which is nonfunctional, unique, and has acquired secondary meaning.

105.    On information and belief, Clements Design manufactures and sells furniture throughout the United States, including in the State of California.

106.    Clements Design manufactured and sold chairs that are identical to the DONALD JUDD Chair 84.

COMPLAINT

107.    Clements Design's manufacture of imitation DONALD JUDD Chair 84 chairs that are confusingly similar to the trade dress of authentic DONALD JUDD Chair 84 chairs, and its sale, offering for sale, distribution, and advertising of those ersatz chairs, has been intentional and was done with knowledge of the considerable reputation, goodwill, and fame associated with Mr. Judd and the DONALD JUDD Chair 84.

108.    Clements Design's unauthorized copying of the DONALD JUDD Chair 84 trade dress is likely to cause confusion as to the source of origin of Clements Design's chairs and is likely to cause confusion as to whether Judd Foundation sponsors, is affiliated with, or has a connection with Clements Design and its chairs.

109.    By reason of the foregoing, Judd Foundation is entitled to permanent injunctive relief against Clements Design restraining further acts of trade dress infringement and to recover damages caused by Clements Design's aforesaid acts in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF:**

**Trademark Infringement and False Designation of Origin under**

**15 U.S.C. § 1125(a) of the DONALD JUDD Integrated Trade Dress against**

**Defendant Clements Design**

110.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

111.    Judd Foundation owns a valid trade dress in the DONALD JUDD Integrated Trade Dress, which is nonfunctional, unique, and has acquired secondary meaning.

112.    On information and belief, Clements Design manufactures and sells furniture throughout the United States, including in the State of California.

113.    Clements Design manufactured and sold tables and chairs that, together, are identical to the DONALD JUDD Integrated Trade Dress.

114.    Clements Design's manufacture and installation of imitation DONALD JUDD Integrated Trade Dress that is confusingly similar to the trade dress of the

35

authentic DONALD JUDD Integrated Trade Dress, and its sale, offering for sale, distribution, and advertising of those ersatz integrated tables and chairs, has been intentional and was done with knowledge of the considerable reputation, goodwill, and fame associated with Mr. Judd and the DONALD JUDD Integrated Trade Dress.

115.    Clements Design's unauthorized copying of the DONALD JUDD Integrated Trade Dress is likely to cause confusion as to the source of origin of Clements Design's tables and chairs, and is likely to cause confusion as to whether Judd Foundation sponsors, is affiliated with, or has a connection with Clements Design and its tables and chairs.  Indeed, Ms. Kardashian herself was purportedly confused about whether these items were authentic.

116.    By reason of the foregoing, Judd Foundation is entitled to permanent injunctive relief against Clements Design, restraining further acts of trade dress infringement and to recover damages caused by Clements Design in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF:

### Registered Trademark Infringement under 15 U.S.C. § 1114 against Defendant Clements Design

117.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

118.    The DONALD JUDD trademark is registered with the United States Patent and Trademark Office, is valid, subsisting, used in commerce, and has acquired distinctiveness.

119.    Clements Design's use in commerce of the DONALD JUDD trademark for its unauthorized furniture goods and design services—in particular to promote and sell tables and chairs nearly identical to Judd Foundation tables and chairs—is likely to cause confusion and deceive consumers as to the source, origin, or sponsorship of its goods. Consumers seeing the DONALD JUDD trademark, either alone or alongside photos of

authentic DONALD JUDD furniture, one of which is copyrighted by Judd Foundation, in association with competing furniture goods in the marketplace, are likely to believe that they come from, are sponsored or licensed by, or are associated or affiliated with Judd Foundation and its registered DONALD JUDD trademarks and furniture.

120. Judd Foundation's use of the DONALD JUDD trademark predates any use of the trademark by Clements Design.

121. Clements Design's use of the DONALD JUDD trademarks in connection with its furniture goods and design services constitutes trademark infringement in violation of 15 U.S.C. § 1114.

122. As a direct and proximate result of Clements Design's wrongful acts, Judd Foundation has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.

123. Clements Design's unauthorized use of the DONALD JUDD trademarks has been intentional, willful, and in bad faith, evinced by the fact that Clements Design knowingly utilized a copyrighted photo of authentic DONALD JUDD furniture to sell its copycat furniture and knowingly utilized the DONALD JUDD trademarks in a deceptive manner to pass off its copycat furniture as authentic.

124. By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from any further acts of infringement of its federally registered trademarks, and to recovery of damages proven to have been caused by reason of Clements Design's aforesaid acts in an amount to be determined at trial.

## **FIFTH CLAIM FOR RELIEF:**

## **False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a) against Defendant Clements Design**

125. Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

COMPLAINT

126.    The DONALD JUDD trademark is used in commerce and has acquired distinctiveness through secondary meaning.

127.    Clements Design's unauthorized use of the DONALD JUDD trademark in interstate commerce in connection with the distribution, sale, or promotion of its goods and services falsely suggests that these goods and services are connected with, sponsored by, affiliated with, or related to Judd Foundation's goods and services and is likely to cause confusion about same.

128.    Clements Design's use of the DONALD JUDD trademarks in connection with its inauthentic furniture goods and design services constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

129.    As a direct and proximate result of Clements Design's wrongful acts, Judd Foundation has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.

130.    Clements Design's unauthorized use of the DONALD JUDD trademarks has been intentional, willful, and in bad faith, as evinced by the fact that Clements Design knowingly utilized a copyrighted photo of authentic DONALD JUDD furniture to sell its copycat furniture and knowingly utilized the DONALD JUDD trademarks in a deceptive manner to pass off its copycat furniture as authentic.

131.    By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from any further acts of infringement of its valid and enforceable trademarks, and to recovery of damages proven to have been caused by reason of Clements Design's aforesaid acts in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF:

**False Advertising under 15 U.S.C. § 1125(a) against Defendant Clements Design**

132.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

COMPLAINT

133.   Clements Design made false and misleading representations of fact by advertising the furniture it delivered to and installed for Ms. Kardashian with a copyrighted and widely disseminated and publicized photo of authentic DONALD JUDD furniture.

134.   By using Judd Foundation's copyrighted photograph of its protected DONALD JUDD furniture, along with the DONALD JUDD trademark, to describe its furniture, Clements Design falsely advertised DONALD JUDD furniture as its own.

135.   In reality, Clements Design is not an authorized retailer or producer of DONALD JUDD furniture and did not deliver authentic DONALD JUDD furniture as depicted in the photos on its design proposal to Ms. Kardashian.

136.   Clements Design made its false and misleading representations in commercial advertising or promotion by using the copyrighted photo of authentic DONALD JUDD furniture in a design proposal for a client.

137.   Clements Design's false and misleading representations via advertising its furniture with a copyrighted photo of authentic DONALD JUDD furniture are material to consumers, who care that they are getting the goods represented to them and—in the case of Judd Foundation and Clements Design's art- and design-loving consumers—care about the designer source and authenticity of their furniture.

138.   Clements Design's false and misleading representations via advertising its furniture with a copyrighted photo of authentic DONALD JUDD furniture have caused, and are likely to continue causing, competitive or commercial injury to Judd Foundation.

139.   The competitive or commercial injury to Judd Foundation includes the loss of current or prospective clients who do not purchase authentic DONALD JUDD furniture as a consequence of Clements Design's false and misleading representations.

140.   Clements Design's false and misleading representations via advertising its furniture with a copyrighted photo of authentic DONALD JUDD furniture were in bad faith, evinced by the fact that Clements Design knowingly utilized a copyrighted photo of

COMPLAINT

authentic DONALD JUDD furniture to sell its copycat furniture and knowingly utilized the DONALD JUDD trademarks in a deceptive manner to pass off its copycat furniture as authentic.

141.     By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from further advertising its furniture with copyrighted photos of authentic DONALD JUDD furniture or the use of the DONALD JUDD trademark or making any other false or misleading representations, and to recovery of damages proven to have been caused by reason of Clements Design's aforesaid false and misleading representations in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF:

**Copyright Infringement under 17 U.S.C. §§ 101 *et seq.* against Defendant Clements Design**

142.     Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

143.     Judd Foundation owns the copyright in the DONALD JUDD Table Photo, which is a protected work of authorship and subject to copyright under 17 U.S.C. § 102(a)(5).

144.     The DONALD JUDD Table Photo was first published in 2020 and was registered with the United States Copyright Office on February 14, 2024 under registration number TX 9-361-383.

145.     On November 23, 2020, Clements Design used a verbatim copy of this photograph in its order form sent to Ms. Kardashian in violation of Judd Foundation's exclusive right to reproduce this photograph under 17 U.S.C. § 106(1).  Clements Design then distributed an infringing copy of this photograph in a design proposal in violation of Judd Foundation's exclusive right to distribute this photograph under 17 U.S.C. § 106(3).

146.     Judd Foundation learned about this infringement on March 7, 2023 when counsel for Clements Design sent Judd Foundation the design proposal.

COMPLAINT

147.    By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from any further acts of infringement of its copyrights, and to recovery of damages proven to have been caused by reason of Clements Design's aforesaid infringement of Judd Foundation's copyrights in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF:

### Unfair Competition under California Business and Professions Code § 17200 against Defendant Clements Design

148.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

149.    As alleged in the foregoing paragraphs, Clements Design's actions are unlawful, as they violate several provisions of the Lanham Act.

150.    Clements Design made false and misleading representations as to the origin of its goods by utilizing a copyrighted and widely disseminated and publicized photo of authentic DONALD JUDD furniture and the DONALD JUDD trademark to describe the table and chairs it delivered to and installed for Ms. Kardashian.

151.    On information and belief, Clements Design further intimated to Ms. Kardashian that the furniture sold to her were authentic versions of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84, expressly misrepresenting the origin of the goods.

152.    Clements Design's false representations were fraudulent and likely to deceive a significant portion of the general consuming public.

153.    Clements Design's business practices are unfair, as they significantly threaten competition, are unethical and substantially injurious to consumers, and are not outweighed by any countervailing justifications.

154.    As a result of Clements Design's unlawful, unfair, and fraudulent business practices, Judd Foundation has suffered economic injury through lost sales of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84.

155.    By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from making any further false or misleading representations, and to recovery of restitution to be proven at trial.

**NINTH CLAIM FOR RELIEF:**

**False Advertising under California Business and Professions Code § 17500 against Defendant Clements Design**

156.    Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

157.    Clements Design knowingly made false and misleading representations by utilizing a copyrighted and widely disseminated and publicized photo of authentic DONALD JUDD furniture and the DONALD JUDD trademark to describe the table and chairs it delivered to and installed for Ms. Kardashian.

158.    These false and misleading representations have misled customers, like Ms. Kardashian, and have the capacity, likelihood, or tendency to deceive or confuse the public as to the source of their goods or services and their affiliation with Judd Foundation.

159.    As a result of Clements Design's false and misleading representations, Judd Foundation has suffered economic injury through lost sales of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84.

160.    By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from making any further false or misleading representations, and to recovery of restitution to be proven at trial.

COMPLAINT

**TENTH CLAIM FOR RELIEF:**

**Unfair Competition under California Law against Defendant Clements Design**

161.   Judd Foundation repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

162.   Clements Design engaged in deceptive advertising about its goods by utilizing a copyrighted and widely disseminated and publicized photo of authentic DONALD JUDD furniture and the DONALD JUDD trademark to describe the tables and chairs it delivered to and installed for Ms. Kardashian.

163.   On information and belief, Clements Design further intimated to Ms. Kardashian that the furniture pieces sold to her were authentic versions of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84, expressly misrepresenting the origin of the goods.

164.   Clements Design manufactured and sold goods that are confusingly similar to the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 in an attempt to exploit Judd Foundation's marketplace reputation.

165.   As a result, Judd Foundation suffered a competitive injury through lost sales of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84.

166.   Judd Foundation has invested substantial time and money in the development of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84, and Clements Design appropriated these designs at little cost.

167.   Clements Design's actions are analogous to "passing off" Judd Foundation's furniture and are intended to confuse consumers as to the source of its goods and exploit Judd Foundation's reputation and the reputation of the DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84.

168.   By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Clements Design, restraining it from making any further false or misleading representations, and to recovery of damages to be proven at trial.

43

1

## **ELEVENTH CLAIM FOR RELIEF:**

2

**False Endorsement under 15 U.S.C. § 1125(a) against Defendant Kim Kardashian**

3

169.    Judd Foundation repeats and realleges each and every allegation in the

4

foregoing paragraphs as if fully set forth herein.

5

170.    Judd Foundation owns the DONALD JUDD trademark and the rights to Mr.

6

Judd's name and identity.

7

171.    Mr. Judd is an icon in the art and design world.  He has gained and continues

8

to gain mainstream fame from his works' exhibition in world-class art museums and

9

coverage in leading media publications.

10

172.    On information and belief, Ms. Kardashian is the founder, owner, and CEO

11

of SKKN BY KIM.

12

173.    Ms. Kardashian was directly responsible for creation and publication of the

13

Kardashian Video.

14

174.    Ms. Kardashian, on behalf and for the benefit of the SKKN BY KIM brand,

15

erroneously and without authorization used the DONALD JUDD trademark and

16

Mr. Judd's name and identity when describing the Kardashian Chairs and Tables in the

17

Kardashian Video.

18

175.    Mr. Judd and Judd Foundation, as the beneficiary of his estate, never

19

endorsed the SKKN BY KIM brand or authorized Ms. Kardashian to use the DONALD

20

JUDD trademark or Mr. Judd's name or identity.

21

176.    Ms. Kardashian and SKKN BY KIM have not retracted the video or

22

otherwise corrected Ms. Kardashian's statement of false endorsement as of the filing of

23

this Complaint.

24

177.    Ms. Kardashian's actions are now intentional because the Kardashian Video

25

is still accessible on Ms. Kardashian's YouTube channel despite her knowledge that her

26

statement was false.

27

178.    Ms. Kardashian's unauthorized use of the DONALD JUDD trademark and

28

Mr. Judd's name and identity is likely to confuse consumers as to Mr. Judd's and/or Judd

44

COMPLAINT

Foundation's sponsorship or approval of the SKKN BY KIM brand and products advertised in the Kardashian Video.

179.    Ms. Kardashian's false statement is likely to increase the perceived value and exclusivity of the SKKN BY KIM brand by its implied association with the DONALD JUDD brand and Mr. Judd, his works, and his iconic status.

180.    By reason of the foregoing, Judd Foundation is entitled to injunctive relief against Ms. Kardashian, restraining her from making any further false or misleading representations and requiring Ms. Kardashian to issue a corrective set of actions, and to recovery of damages to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Judd Foundation requests this Court enter judgment:

A. That Defendant Kim Kardashian, and all those in active concert or participation with Defendant Kim Kardashian (including, but not limited to, her officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) be permanently enjoined and restrained from:

  i.    making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) the Plaintiff's DONALD JUDD trademark in connection with commercial advertising or promotion of Defendant Kim Kardashian's goods or services;

  ii.    making any false or misleading statements misrepresenting the affiliation, connection, association, sponsorship, or approval of Defendant Kim Kardashian's goods or services with Donald Judd or Judd Foundation, such as through the use of the DONALD JUDD trademark; and

  iii.    doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead retailers, purchasers, or

45

consumers into the belief that Defendant Kim Kardashian's goods or services are somehow affiliated, connected, associated, sponsored, or approved by Donald Judd or Judd Foundation.

B. That Defendant Kim Kardashian retract the Kardashian Video.

C. That Defendant Kim Kardashian correct her false statement to the press.

D. That Defendant Kim Kardashian recycle the infringing Kardashian Tables and Chairs.

E. That Plaintiff be awarded Defendant Kim Kardashian's profits and any and all damages sustained by Plaintiff, to the extent calculable, arising from the foregoing acts of false endorsement.

F. That Defendant Clements Design and all those in active concert or participation with Defendant Clements Design (including, but not limited to, its officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) be permanently enjoined and restrained from:

    i.    making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) furniture that infringes upon Plaintiff's furniture trade dress;

    ii.    making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) the Plaintiff's DONALD JUDD La Mansana Table trade dress in the offering, manufacture, distribution, or sale of furniture or design services;

    iii.    making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) the Plaintiff's DONALD JUDD Chair 84 trade dress in the offering, manufacture, distribution, or sale of furniture or design services;

    iv.    making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for

COMPLAINT

sale) the Plaintiff's DONALD JUDD Integrated Trade Dress trade dress in the offering, manufacture, distribution, or sale of furniture or design services

v. making any use of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) the Plaintiff's DONALD JUDD trademark in the offering, manufacture, distribution, or sale of furniture or design services;

vi. making any use or copies of (including, but not limited to, manufacturing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) the Plaintiff's copyrighted photos, including, but not limited to, the DONALD JUDD Table Photo;

vii. making any false or misleading statements misrepresenting the origin of Defendant Clements Design's goods or services as associated with or sponsored by Plaintiff, such as through the use of the DONALD JUDD trademark or copyrighted photographs of DONALD JUDD furniture in the offering or advertising of Defendant Clements Design's goods or services;

viii. doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead retailers, purchasers, or consumers into the belief that Defendant Clements Design's goods or services come from Plaintiff or are somehow sponsored or licensed by, or associated or affiliated with, Plaintiff or its goods or services; and

ix. otherwise unfairly competing with Plaintiff.

G. That Defendant Clements Design and all those in active concert or participation with Defendant Clements Design (including, but not limited to, its officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their sale of infringing DONALD JUDD

furniture and infringing use of copyrighted photos, including, but not limited to, recalling from any and all channels of distribution any and all advertising, marketing, or promotional material and the like bearing or distributed under the infringing designs and photos or any confusingly similar variations thereof.

H. That Defendant Clements Design and all those in active concert or participation with Defendant Clements Design (including, but not limited to, its officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) recall and destroy all furniture that infringes upon Plaintiff's furniture trade dress, including, but not limited to, the Kardashian Tables and Chairs, at Defendant Clements Design's expense.

I. That Defendant Clements Design and all those in active concert or participation with Defendant Clements Design (including, but not limited to, its officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) recall and destroy all materials that infringe upon Plaintiff's copyrights, including, but not limited to, materials that incorporate copies of the DONALD JUDD Table Photo, at Defendant Clements Design's expense.

J. That Defendant Clements Design, within thirty days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff's attorneys a written report under oath setting forth in detail the manner in which Defendant Clements Design has complied with the above-mentioned paragraphs F, G, H, and I.

K. That Plaintiff be awarded Defendant Clements Design's profits and any and all damages sustained by Plaintiff, to the extent calculable, arising from the foregoing acts of trademark infringement, copyright infringement, false designation of origin, unfair competition, and false advertising.

48
COMPLAINT

L. That Plaintiff be awarded its costs, including its reasonable attorneys' fees and disbursements in this action.

M. That Plaintiff has such other and further relief as the Court may deem just and proper.

DATED: March 27, 2024                         Respectfully submitted,

                                              DEBEVOISE & PLIMPTON LLP

                                              By: */s/ David H. Bernstein*
                                                  David H. Bernstein
                                                  dhbernstein@debevoise.com
                                                  650 California Street
                                                  San Francisco, CA 94108
                                                  Telephone:  (415) 738-5700
                                                  Facsimile:  (415) 644-5628


                                                  Megan K. Bannigan*
                                                  mkbannigan@debevoise.com
                                                  Jared I. Kagan*
                                                  jikagan@debevoise.com
                                                  Hannah Beattie*
                                                  hbeattie@debevoise.com
                                                  James Stramm*
                                                  jstramm@debevoise.com
                                                   (*ticket*Pro Hac Vice* Forthcoming)
                                                  66 Hudson Boulevard
                                                  New York, NY 10001
                                                  Telephone: (212) 909-6000
                                                  Facsimile: (212) 909-6836

                                              ERVIN COHEN & JESSUP LLP

                                                  Russell M. Selmont
                                                  Email: rselmont@ecjlaw.com
                                                  9401 Wilshire Boulevard, 12th Floor
                                                  Beverly Hills, CA 90212-2974
                                                  Telephone:  (310) 273-6333

49
COMPLAINT

Facsimile:  (310) 859-2325

Attorneys for Plaintiff

COMPLAINT