1  AARON B. BLOOM (SBN 215037)
   Email:  abloom@troygould.com
2  JOHN C. ULIN (SBN 165524)
   Email:  julin@troygould.com
3  CHINELO N. IKEM (SBN 343780)
   Email:  cikem@troygould.com
4  TROYGOULD PC
   1801 Century Park East, 16th Floor
5  Los Angeles, CA 90067-2367
   Telephone:    (310) 553-4441
6  Facsimile:    (310) 201-4746

7  Attorneys for Defendant
   Clements Design, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  JUDD FOUNDATION,                    Case No. 2:24-cv-02496-MEMF-AS

13          Plaintiff,                  DEFENDANT CLEMENTS DESIGN, INC.'S
                                        MEMORANDUM OF POINTS AND
14      v.                              AUTHORITIES IN SUPPORT OF MOTION
                                        TO DISMISS
15  CLEMENTS DESIGN, INC. and KIM
    KARDASHIAN,                         Assigned for All Purposes To:
16                                      Hon. Maame Ewusi-Mensah Frimpong
            Defendants.
17                                      Date:    June 6, 2024
                                        Time:    10:00 a.m.
18                                      Ctrm:    8B

19                                      Complaint Filed:     March 27, 2024

20

21

22

23

24

25

26

27

28

**TroyGould PC**

_____
CLEMENTS DESIGN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 3

III. ARGUMENT ......................................................................................................... 5

A.  Legal Standard ............................................................................................ 5

B.  Judd Foundation Fails to Plead Actionable Claims for Trade Dress
Infringement ............................................................................................... 6

1.  *Judd Foundation has Failed to Allege the Claimed Trade
Dress with Particularity* ................................................................. 6

2.  *Judd Foundation Does Not, and Cannot, Sufficiently Plead
Non-Functionality* .......................................................................... 9

3.  *Judd Foundation Does Not Sufficiently Plead That Its
Claimed Trade Dress Has Acquired Secondary Meaning* ........... 11

4.  *Judd Foundation Does Not, and Cannot, Sufficiently Plead a
Likelihood of Confusion* .............................................................. 12

C.  Judd Foundation Fails to Plead Actionable Claims for Trademark
Infringement and False Designation of Origin Based On Clements
Design's Use of the Phrase "In the Style of Donald Judd" ..................... 13

1.  *Clements Design's Use of the Phrase "In the Style of Donald
Judd" was Nominative Fair Use* ................................................. 14

2.  *Judd Foundation Has Not Alleged, and Cannot Allege,
Likelihood of Confusion* .............................................................. 15

D.  Judd Foundation Fails to Plead False Advertising Under Federal or
State Law ................................................................................................... 16

1.  *Judd Foundation Has Not Alleged Any False Statements* ......... 17

2.  *Judd Foundation Does Not Allege Any Actionable Advertising* .. 17

E.  Judd Foundation Fails to Plead Claims Under California Business
and Professions Code Sections 17200 and 17500 .................................. 18

F.  Judd Foundation Fails to Plead Common Law Unfair Competition ....... 19

G.  Judd Foundation's Claim for Copyright Infringement Fails Because
No relief is Available ............................................................................... 20

H.  Judd Foundation Lacks Standing to Bring Some of Its False
Advertising Claims .................................................................................. 20

**TABLE OF CONTENTS (cont.)**

**Page**

IV.    CONCLUSION.................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*,
   280 F.3d 619 (6th Cir. 2002) ................................................................................8

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ...............................................................................12

*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019) ...............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................5

*Au-Tomotive Gold, Inc. v. Volkswagen of Am.*,
   457 F.3d 1062 (9th Cir. 2006) .............................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................5

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
   553 F. Supp. 3d 793 (C.D. Cal. 2021) .................................................................17

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
   963 F.3d 859 (9th Cir. 2020) ...............................................................................10

*Cedars-Sinai Med. Ctr. v. United Healthcare Ins. Co.*,
   2010 WL 1875556 (C.D. Cal. May 7, 2010) .......................................................18

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012).................................................................20

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ...............................................................................19

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) .............................................................................10

*DO Denim, LLC v. Fried Denim, Inc.*,
   634 F. Supp. 2d 403 (S.D.N.Y. 2009) ..................................................................11

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) .............................................................................12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   11 F.3d 1460 (9th Cir. 1993) ...............................................................................15

TroyGould
PC

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*International Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.*,
    103 F.3d 196 (1st Cir. 1996) .................................................................................................16

*Jack Daniel's Properties, Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) ............................................................................................................15

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005) ............................................................................................21

*Jason Scott Collection, Inc. v. Trendily Furniture LLC*,
    68 F.4th 1203 (9th Cir. 2023) ...................................................................................6, 10, 11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir.1995) ......................................................................................................8

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
    2018 WL 1524499 (S.D. Cal. Mar. 28, 2018) ...............................................................16, 17

*MAP Co. v. Lebanese Arak Corp.*,
    2018 WL 3357474 (C.D. Cal. Feb. 5, 2018) .......................................................................19

*Matthews v. Ryan*,
    2020 WL 3050571 (D. Ariz. June 8, 2020) .........................................................................18

*McGraw-Hill Pub. Co. v. American Aviation Assocs.*,
    117 F.2d 293 (D.C. Cir. 1940) ............................................................................................16

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..............................................................................................14

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ...............................................................................18

*Smith v. Chanel, Inc.*,
    402 F.2d 562 (9th Cir. 1968) ..............................................................................................14

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................................................19

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
    445 F. Supp. 3d 139 (N.D. Cal. 2020) .................................................................................15

*Tortilla Factory, LLC v. Trader Joe's Co.*,
    2018 WL 8367468 (C.D. Cal. Oct. 11, 2018) ......................................................................18

*TrafFix Devices, Inc. v Marketing Displays, Inc.*,
    532 U.S. 23 (2001) ..............................................................................................................10

TroyGould
PC

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Virgin Scent, Inc. v. Bel Air Natruals Care Corp.*,
    2018 WL 5264145 (C.D. Cal. Feb. 8, 2018) ............................................................. 11

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) .................................................................................................. 11

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................................. 6, 9

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir.2001) ......................................................................................... 6

**California Cases**

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ............................................................................................. 19

**Federal Statutes**

15 U.S.C.
    § 1125(a)(3) ............................................................................................................... 11

17 U.S.C.
    § 507(b) ..................................................................................................................... 20

Lanham Act
    § 32 ........................................................................................................................... 15
    § 43(a) ....................................................................................................................... 15

**California Statutes**

California Business and Professions Code
    § 17200 ............................................................................................................... 18, 19
    § 17500 ............................................................................................................... 18, 19

**Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 15, 21

**TroyGould PC**

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On one occasion, three and a half years ago, defendant Clements Design, Inc. ("Clements Design") sent one interior design proposal (the "Proposal") to one client that included two tables and some chairs for the client's staff lunchroom, in which the tables and chairs were described as "in the style of Donald Judd."  (Compl. ¶ 59).

The Proposal was never published or sent to anyone other than that one client.  Clements Design never advertised or commercially promoted furniture "in the style of Donald Judd." Plaintiff Judd Foundation ("Judd Foundation") does <u>not</u> allege that Clements Design ever created another proposal containing such furniture for, or sold it to, any other client.  Nor could it make such an allegation because Clements Design never did so.

In describing the furniture to its client, Clements Design never described it as "authentic" Donald Judd furniture.  On the contrary, Clements Design described the furniture as "in the style of" Donald Judd, which means the furniture was <u>not</u> actually Donald Judd furniture, but was only designed in the same minimalist style.  Of course, that fact would be clear to the small group of discerning consumers who might buy actual Donald Judd furniture at a cost of "$90,000 for a table" and "$9,000 for a chair."  (Compl. ¶ 45).

The Proposal was created for KKW Beauty, Inc. ("KKW"), owned by Kim Kardashian ("Ms. Kardashian").  In a YouTube video posted about two years after KKW purchased the only furniture "in the style of Donald Judd" ever sold by Clements Design, Ms. Kardashian made a single reference to the tables as "Donald Judd tables."  (Compl. ¶ 66).[1]

There is no allegation that any potential consumer of Donald Judd furniture (table and chair combined sells for six figures) actually saw the video, let alone was confused by it.  Nor could any such confusion have related to a consumer's purchasing decision because Clements Design never again sold furniture "in the style of Donald Judd" to, or used that phrase with, anyone.

---

[1]   Judd Foundation's Complaint is misleading.  It alleges Ms. Kardashian said in her video that "she had purchased *authentic* 'Donald Judd tables.'" (Compl. ¶ 6, emphasis added).  However, the screen capture with subtitles that Judd Foundation put in its Complaint shows that she said "these Donald Judd tables" (*i.e.*, no use of the word "authentic").  (Compl. ¶ 69).

Despite the glaring legal and factual deficiencies, Judd Foundation seeks to base a case founded on purported claims of trademark and trade dress infringement, false advertising and unfair competition on these allegations.  But the claims fail and must be dismissed for at least the following reasons:

- The first, second, and third claims fail because Judd Foundation: (1) does not allege its trade dress with particularity; (2) does not sufficiently plead non-functionality; (3) does not sufficiently plead secondary meaning; and (4) does not sufficiently plead likelihood of confusion;

- The fourth claim for trademark infringement and fifth claim for false designation of origin fail because Clements Design's use of the phrase "in the style of Donald Judd" qualified as nominative fair use of the alleged "DONALD JUDD" word trademark and Judd Foundation does not sufficiently plead likelihood of confusion;

- The sixth and ninth claims for false advertising fail as a matter of law because Judd Foundation has not alleged any false or misleading statement made by Clements Design or any statement made in advertising;

- The eighth claim for unfair competition under California Business and Professions Code section 17200 and ninth claim for false advertising under California Business and Professions Code section 17500 fail as matter of law because Judd Foundation is not entitled to any of the remedies that are available under those statutes;

- The tenth claim for common law unfair competition fails as a matter of law because it is substantially congruent to the trademark infringement and false designation of origin claims and fails for the same reasons, and because Judd Foundation fails to allege "passing off;"

- The seventh claim for copyright infringement fails because neither damages nor injunctive relief is an available remedy, and the claim is time-barred; and

- Judd Foundation lacks standing to bring its false advertising claims.

## II.   **FACTUAL BACKGROUND**

Clements Design is a mother-and-son interior design team.  Clements Design was honored in Architectural Design's AD100 list of 2023.  Its celebrity clientele includes Ms. Kardashian.

Donald Judd was an American artist and designer associated with minimalism, a movement that dominated the American art scene of the 1960s and early 1970s.  Although Mr. Judd was part of the minimalist movement, he cannot be considered to *own* the design elements that are associated with minimalism.

Judd Foundation is a nonprofit organization that purports to have protected Mr. Judd's intellectual property rights since his death in 1994 and allegedly "sells authentic DONALD JUDD furniture through its wholly-owned subsidiary Judd Furniture LLC, DBA Donald Judd Furniture." (Compl. ¶ 3).  For reasons that are not entirely clear, Judd Furniture LLC is <u>not</u> a plaintiff in this action.

Judd Foundation alleges that Donald Judd was known for his "distinctive minimalist, geometric, and precise style, which he began incorporating into furniture designs in the 1960s." (Compl. ¶ 2).  By their own admission, however, minimalism existed long before Mr. Judd and he only began incorporating its elements into his furniture in the 1960s.

Minimalism is associated with "straight lines and a monochromatic palette" and has been used in many cultures, especially in Japanese and Scandinavian design.[2]  In or around November 2020, Clements Design sought to create a minimalist look for at least part of KKW's office, and procured minimalist tables and chairs for KKW's staff lunchroom to help realize that vision. (Compl. ¶ 51).

In the Proposal, which was dated November 23, 2020 (*see* Compl., p. 18), Clements Design suggested several pieces to be placed in the lunchroom at KKW's office.  (Compl. ¶ 59).  The suggested pieces included two tables described as "Dining Tables in the Style of Donald Judd in Natural Plywood" and chairs described as "Dining Chairs in the Style of Donald Judd in Natural Plywood."  (Compl. ¶ 59).  This description in this Proposal is the only instance Judd Foundation

---

[2]   https://www.architecturaldigest.com/story/minimalist-interior-design-101

1  points to in its Complaint where the name Donald Judd was ever referenced by Clements Design at

2  any time.

3      The Proposal included a photo, in which Judd Foundation purportedly owns a copyright

4  registered on February 14, 2024 under the registration number TX0009361383.  (Compl. ¶ 57).

5  This photo was included by Clements Design only to show Ms. Kardashian what a table in a

6  minimalist style might look like.  It is a common practice in interior design that designers will use

7  "mood boards" or photos to help clients visualize concepts.  As noted above, Clements Design

8  made clear in the Proposal that the tables and chairs it actually proposed for the KKW lunchroom

9  were not actual Donald Judd furniture, but only "in the style of Donald Judd."

10     Pursuant to the Proposal, Clements Design procured tables and chairs for its client's staff

11  lunchroom.  Ms. Kardashian later created and uploaded a video titled "Welcome to my Office!

12  Official SKKN BY KIM Office Tour" to her YouTube channel on August 12, 2022 (the "Video").

13  (Compl. ¶ 60).  In the video, she referred to the tables that Clements Design procured for her staff

14  lunchroom as "Donald Judd tables."  (Compl. ¶ 66).  That is the only reference to Donald Judd

15  furniture by Ms. Kardashian identified in the Complaint.  The Video has since been taken down.

16     All of Judd Foundation's claims are thus based on a single design proposal that Clements

17  Design sent privately to one client.  Judd Foundation apparently brought this action for publicity,

18  and not based on any real controversy.  It has not alleged (1) a single false statement made by

19  Clements Design, (2) any advertisements or commercial speech made by Clements Design, or (3)

20  any likelihood of confusion among potential consumers of Donald Judd furniture caused by

21  Clements Design's actions.

22     By this action, Judd Foundation essentially seeks monopoly protection for what are generic

23  minimalist design features.  Below is the table and chair that the Judd Foundation claims are

24  "unique." (Compl. ¶ 4).

25

26

27

28



There are thousands of similar minimalist rectangular, wooden tables and chairs in the market. Minimalism is an extremely popular interior design style and Judd Foundation attempts, with this action, to stifle competition in the market, prevent other designers from creating their own wooden tables, and claim minimalism as its own, even though minimalist design obviously existed long before Donald Judd.

## III.   ARGUMENT

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. Accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").

**B.** <u>**Judd Foundation Fails to Plead Actionable Claims for Trade Dress Infringement**</u>

Judd Foundation's first three claims for relief purport to allege trade dress infringement with respect to the DONALD JUDD La Mansana Table ("Table"), the DONALD JUDD Chair 84 ("Chair"), and the combination of the two, which Judd Foundation refers to as the "Integrated Trade Dress." (¶¶ 96-116). To state a claim for trade dress infringement under Section 43(a) of the Lanham Act, a plaintiff must allege: "(1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Jason Scott Collection, Inc. v. Trendily Furniture LLC*, 68 F.4th 1203, 1212 (9th Cir. 2023). Judd Foundation's trade dress claims fail on all three of these elements. Moreover, the claims fail on an even more fundamental level. Plaintiff fails to allege the claimed trade dress with particularity and their laundry list of features of Donald Judd furniture is so broad that it describes the entire category of minimalist furniture and is therefore generic and unprotectible. *See Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 114 (2d Cir. 2001); *Walker & Zanger, Inc. v. Paragon Indus., Inc*., 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007).

### *1.* *Judd Foundation has Failed to Allege the Claimed Trade Dress with Particularity*

The Ninth Circuit has held that, for a trade dress claim to be actionable, "the elements of the alleged trade dress must be clearly listed and described." *Jason Scott*, 68 F.4th at 1213 (citing 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed. 2022)).

The requirement carries particular force for product design trade dress claims, which Courts treat with "'particular caution' . . . because such claims present an acute risk of stifling competition." *Walker & Zanger*, at 1174 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co*., 113 F.3d 373, 380 (2d Cir.1997)). That is because, "[w]hile most trademarks only create a monopoly in a word, a phrase or a symbol, granting trade dress protection to an ordinary product design . . . create[s] a monopoly in the goods themselves." *Yurman*, 262 F.3d at 115.

Judd Foundation attempts to finesse the requirement of pleading the elements of its alleged trade dress by extensively describing the construction and features of the chairs and tables and integrated installation for which it seeks trade dress protection.

With respect to the Donald Judd La Mansana Table, the Complaint describes:

"a rectangular table measuring 30 inches tall, 168 inches long, and 56 inches wide. The table is orthogonal and precise. Its surface and legs are rectangular, flat, straight, unadorned, and made from his signature use of 2x12 boards, all hallmarks of Mr. Judd's innovative and minimalist vision. The table has six legs. Unlike most ordinary tables, each leg is distinctly comprised of wide, rectangular pieces. There are four legs at the four corners of the table, each made of two flat rectangular pieces meeting orthogonally at the corner. There are two legs across from each other at the center of the table, each made of flat rectangular pieces. Also unlike most tables, each leg is flush to the table surface, as opposed to sitting inset beneath the table surface. The table design thus evokes the seamless skeleton structure of a rectangular prism. The table also has rectangular skirting beneath its top, inset behind the legs. The table design allows for Judd-designed chairs, like the DONALD JUDD Chair 84, to fit seamlessly flush with the height of the table. The rectangular table legs look exactly like the rectangular backs of Judd-designed chairs, uniquely dissolving the distinction between table and chair into one singular, integrated piece. The piece encapsulates Mr. Judd's distinct artistic emphasis on simple, orthogonal shapes, the geometry of lines and planes, scale, and precision." (Compl. ¶ 32).

With respect to the Donald Judd Chair 84, the Complaint describes:

"a rectangular chair measuring 30 inches tall, 15 inches wide, and 15 inches long, using 1x12 boards. Like the DONALD JUDD La Mansana Table, the DONALD JUDD Chair 84 is a minimalist design that incorporates unadorned, flat, straight, rectangular pieces meeting orthogonally. Instead of having four legs like most ordinary chairs, the base of the DONALD JUDD Chair 84 is an unornamented cuboid. The chair has no arms—rather, a single, undecorated, rectangular piece, orthogonal to the chair seat, serves as the back of the chair. The rectangular pieces making up the chair sit precisely flush with one another, creating a seamless design that, as discussed above, fits perfectly beneath the DONALD JUDD La Mansana Table. These elements give the chair a distinctive geometric, orthogonal, minimalist design." (Compl. ¶ 35).

Finally, the Complaint describes the so-called Donald Judd Integrated Trade Dress this way:

"The DONALD JUDD La Mansana Table and the DONALD JUDD Chair 84 are each a distinctive piece and together form the DONALD JUDD Integrated Trade Dress— a singular, distinctive trade dress unto itself. As discussed above, the DONALD JUDD Chair 84 and the DONALD JUDD La Mansana Table fit together seamlessly to create a minimalist, orthogonal, geometric, rectangular prism, evocative of the minimalist concrete and mill aluminum cubes and rectangular prisms that populated Mr. Judd's famous Marfa installations. The unadorned, flat, rectangular backs of the

**TroyGould**
**PC**

DONALD JUDD Chair 84 mimic the unadorned, flat, rectangular legs of the DONALD JUDD La Mansana Table, making the chairs, when pushed in, dissolve into the structure of the table. This DONALD JUDD Integrated Trade Dress has been recognized by design critics, who have noted that the table and chairs 'merge into one block, closing space within it. The backs of the chairs form the outer walls, hinging on the table's legs and capped off by its top. When the chairs are pulled back again, space is re-opened, becoming accessible, usable, and visible.' This exploration of the geometry of lines, planes, and space is 'characteristic' of Mr. Judd." (Compl. ¶ 39).

In no instance does Judd Foundation identify which of the many features it lists is an element of the alleged trade dress for which it seeks protection. That is fatal to its trade dress claims. Judd Foundation fails to plead the elements of its alleged trade dress with particularity, as required by Ninth Circuit precedent. It is not even clear from the Complaint whether it asserts that a certain combination of the elements of its table and chairs constitute the trade dress or whether it seeks protection for the overall look and feel of the furniture.

As for the alleged Chair 84 trade dress, in particular, Judd Foundation alleges its affiliate sells them in ten different permutations, each of which looks different. (Compl. ¶ 36). Which permutation constitutes the alleged trade dress? What combination of elements is common to all ten permutations? And which permutations form part of the "integrated" trade dress for which Judd Foundation seeks protection? The claims leave Clements Design without notice as to what Judd Foundation's claimed trade dress even is, and they must be dismissed for that reason alone.

Equally dispositive, what Judd Foundation alleges as trade dress in the Complaint is so broad as to describe the entire genus of minimalist tables and chairs, and is therefore generic and unprotectible as trade dress. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002) ("generic product configurations," or "designs regarded by the public as the basic form of a particular item," are not protectible as trade dress).

In product design trade dress cases, "genericness" covers three situations: (1) if the definition of a product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; or (3) if the product design is so common in the industry that it cannot be said to identify a particular source. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir.1995). Judd Foundation's broad recitations of the manner in which its

1  furniture is constructed are overbroad and generalized descriptions of minimalist furniture and

2  describe common designs that are not unique to Donald Judd.  They are therefore generic product

3  configurations that cannot support actionable trade dress claims.

4          The *Walker & Zanger* case is instructive.  In that case, a manufacturer of tiles brought a

5  trade dress claim against defendant for copying its French Provençal-styled tiles.  *Walker*, at 1172.

6  The court held that the tiles were unprotectible as trade dress and that plaintiff's reliance on style

7  terms like "rustic" "Old World handiwork" and "Provence" left "the boundary of [its] trade dress

8  rights unclear."  *Id*., at 1176.  It reasoned that "the very reason plaintiff's tiles evoke the 'look of

9  Old World handiwork' is because the tiles copy styles that craftsman have used for centuries," and

10 concluded that the plaintiff's tile designs were therefore "generic."  *Id*.

11         The same is true here.  Judd Foundation describes the designs for which it seeks trade dress

12 protection as "the distillation of…quintessential minimalist elements…."  (Compl. ¶ 41).  Among

13 the minimalist elements the Judd Foundation wishes to claim in its table and chair include: "wide,

14 rectangular pieces," "orthogonal shapes," "six legs" that are "rectangular, flat, straight, unadorned,"

15 no-armed cuboid chairs in "alder, ash, black walnut, cedar, cherry, clear pine, pine, cypress,

16 Douglas fir, maple, oak, Sitka spruce, and white elm" woods.  (Compl. ¶¶ 32-39).  But these are

17 generic aspects of an artistic aesthetic in furniture design that long pre-dates Donald Judd and have

18 been commonly used by many designers.  Design elements like six-legged tables, cuboid chairs

19 with no arms and installations that include both are generic aspects of minimalist design and

20 therefore not proper subjects of trade dress protection.  These vague and overbroad descriptions fail

21 to describe the alleged trade dress with particularity.  At best, they describe generic and

22 unprotectible designs.

### 2.       *Judd Foundation Does Not, and Cannot, Sufficiently Plead Non-Functionality*

25         For similar reasons, Judd Foundation's trade dress claims fail because the alleged trade

26 dress is at least aesthetically functional.  The Ninth Circuit has held that one way in which alleged

27 product design trade dress may be functional is when "exclusive use of the feature would put

28 competitors at a significant, non-reputation-related disadvantage."  *Jason Scott*, 68 F.4th at 1213.

As the Court of Appeal has elaborated, a claimed trade dress has "aesthetic functionality" if it serves "'an aesthetic purpose wholly independent of any source identifying function,' such that the trade dress's protection under trademark law 'would impose a significant non-reputation-related competitive disadvantage' on its owner's competitors." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020) (quoting *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1127 (9th Cir. 2016)); *see TrafFix Devices, Inc. v Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *Au-Tomotive Gold, Inc. v. Volkswagen of Am.*, 457 F.3d 1062, 1073-74 (9th Cir. 2006). "The inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source (*e.g.*, the alternative designs would not have as much intrinsic aesthetic appeal)." *Blumenthal*, 963 F.3d at 865.

In this case, Judd Foundation claims trade dress protection over minimalist chair and table designs and an integrated installation that is so broad that it would render it impossible for competitors to sell minimalist furniture that is comprised, for example, of simple six-legged tables made from boards or cuboid chairs with no arms. That is the essence of aesthetic functionality – the use of trade dress to stifle competition based on non-reputation related disadvantages. *Id.* It is also the reason why courts examine functionality "with extra care" when the claimed trade dress is an overall appearance, "to prevent 'semantic trickery' from obscuring the functionality of the design the plaintiff seeks to monopolize." *Id.* at 866.

In the Ninth Circuit, the standard for whether claimed trade dress consisting of an "overall appearance" is functional is "whether protecting the trade dress threatens to eliminate a substantial swath of competitive alternatives in the relevant market." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1261 n.5 (9th Cir. 2001) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 n.6 (5th Cir. 1991)). Protecting Judd Foundation's claimed trade dress would have exactly that effect in the market for minimalist furniture and it should therefore be found functional and unprotectible.

1    It bears emphasis that the burden in this inquiry belongs to Judd Foundation to plead and

2  prove non-functionality, not to Clements Design to establish functionality.  15 U.S.C. § 1125(a)(3)

3  ("In a civil action for trade dress infringement under this chapter for trade dress not registered on

4  the principal register, the person who asserts trade dress protection has the burden of proving that

5  the matter sought to be protected is not functional.").  It is not enough for a plaintiff to state in a

6  conclusory fashion that its trade dress is non-functional without providing supporting facts.

7  Instead, a plaintiff must "allege how a trade dress is non-functional".  *Virgin Scent, Inc. v. Bel Air

8  Natruals Care Corp.*, 2018 WL 5264145, at *4 (C.D. Cal. Feb. 8, 2018) (granting motion to

9  dismiss because plaintiff failed to plead non-functionality).

10    But Judd Foundation has done just the opposite here[3] by pleading facts that reveal that its

11  claimed trade dress would unduly restrict competition for non-reputation related reasons and is thus

12  aesthetically functional.

13    **3.    *Judd Foundation Does Not Sufficiently Plead That Its Claimed Trade Dress Has***

14    ***Acquired Secondary Meaning***

15    The Supreme Court has held that product design is not inherently distinctive and can only

16  be protected as trade dress if it has acquired secondary meaning.  *Wal-Mart Stores, Inc. v. Samara

17  Bros., Inc.*, 529 U.S. 205, 216 (2000).  That is because "product design almost invariably serves

18  purposes other than source identification" and consumers "should not be deprived of the benefits

19  of competition with regard to the utilitarian and aesthetic purposes that product design ordinarily

20  serves by a rule of law that facilitates plausible threats of suit against new entrants based upon

21  alleged inherent distinctiveness."  *Id.* at 213.

22    Secondary meaning, such as is necessary for Plaintiff to plead and prove in order to

23  establish trade dress protection, is "a mental recognition in buyers' and potential buyers' minds

24  that products connected with the [trade dress] are associated with the same source."  *Jason Scott*,

---

[3]  In pleading trade dress, Judd Foundation states that its trade dress in the Mansana Table, Chair 84, and Integrated Trade Dress is "nonfunctional" and "unique." (¶¶ 96, 104, 111).  But this is not enough to plead nonfunctionality. *See Virgin Scent*, at *4, relying on DO *Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (dismissing plaintiff's trade dress claim where it plead nonfunctionality only by stating that the trade dress was "unique and nonfunctional").

1   68 F.4th at 1214 (quoting *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 873

2   (9th Cir. 2002)).  To the extent that Judd Foundation alleges facts that address secondary meaning

3   in its furniture designs, those allegations all speak to potential association of the designs with

4   Donald Judd by the general public.  Judd Foundation never addresses whether the association is

5   made by the limited class of consumers who might buy the furniture in question at $90,000 per

6   table and $9,000 per chair – *i.e.*, "buyers and potential buyers" of Donald Judd furniture.  For that

7   reason, the allegations of the Complaint do not address the relevant association that might support

8   a finding of secondary meaning and Judd Foundation fails to plead secondary meaning for that

9   reason.

### 4.   *Judd Foundation Does Not, and Cannot, Sufficiently Plead a Likelihood of Confusion*

12   Finally, the trade dress claims fail as a matter of law because Judd Foundation has not pled

13   likelihood of confusion resulting from the single instance in which Clements Design sold furniture

14   "in the style of Donald Judd" to one client without promoting it to any other potential buyers.  Judd

15   Foundation notes that 3.7 million viewers saw a video in which Ms. Kardashian refers to the tables

16   at issue as "Donald Judd tables" and alludes to unidentified coverage in popular magazines that it

17   asserts repeat that claim uncritically.

18   Even if that were relevant confusion (it is not), any such confusion does not stem from any

19   statement made by Clements Design.  Moreover, the Complaint does <u>not</u> allege either actual or

20   likely confusion among the small group of wealthy and sophisticated consumers who might buy

21   Donald Judd furniture for more than $100,000 for a table and chairs.  Both Clements Design and

22   the Judd Foundation operate in a world in which such consumers carefully choose the furniture

23   that is included in their high-priced interior design projects and their consumers know full well

24   whether they are purchasing Donald Judd furniture or furniture "in the style of Donald Judd."

25   "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the

26   marketplace is likely to be confused as to the origin of the good or service bearing" the trade dress.

27   *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998); *see AMF Inc.*

28   *v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  To the extent Judd Foundation alleges

1  facts sufficient to establish confusion among members of the general public about whether

2  Clements Design sold Donald Judd furniture, that is not the relevant inquiry in a trade dress claim.

3  The focus must be on actual consumers or potential consumers and there is no allegation that those

4  people are likely to be confused.

5       It also bears emphasis that the challenged conduct in this case consists of one sale of

6  furniture nearly three and a half years ago.  This case is therefore very unlike a typical trade dress

7  case that involves ongoing sales and a course of conduct.  A single isolated use of claimed trade

8  dress is not likely to create confusion among consumers, if it is even remembered.  Even the press

9  coverage upon which Judd Foundation places such great emphasis in this case occurred years ago

10  and has not recurred.  That is doubtless because Clements Design never subsequently procured

11  furniture "in the style of" Donald Judd for any other client and the allegations of the Complaint (or

12  more accurately what Judd Foundation cannot allege) reveal that real potential consumers of

13  Donald Judd furniture likely do not even remember the one sale that forms the basis of the

14  Complaint in this case.  Judd Foundation certainly is not suffering from any likelihood of

15  confusion among its actual or potential consumers as to the source of anything sold by Clements

16  Design.  And that is especially true because, even with respect to that one sale, Clements Design

17  described the furniture to KKW as "in the style of Donald Judd," *i.e.*, <u>not</u> actual Donald Judd

18  pieces.

19       Because Judd Foundation's trade dress claims fail on every essential element, they must be

20  dismissed.

21  **C.**    **<u>Judd Foundation Fails to Plead Actionable Claims for Trademark</u>**

22        **<u>Infringement and False Designation of Origin Based On Clements Design's</u>**

23        **<u>Use of the Phrase "In the Style of Donald Judd"</u>**

24       Judd Foundation purports to base its fourth and fifth claims for relief on Clements Design's

25  use of the words "in the style of Donald Judd" in a single design proposal three and a half years

26  ago.  The claims assert unauthorized use of the alleged Donald Judd word trademark and arise

27  under Sections 32 (registered trademark infringement) and 43(a) (false designation of origin) of the

28  Lanham Act.  They fail for the same essential reasons.  Specifically, (1) Clements Design's

1  isolated use of the phrase "in the style of Donald Judd" in the Proposal was a nominative fair use

2  of the words that comprise Judd Foundation's alleged trademark and thus beyond the reach of the

3  Lanham Act; and (2) Judd Foundation alleges no likelihood of consumer confusion resulting from

4  Clements Design's isolated use of the phrase.

5              **1.      Clements Design's Use of the Phrase "In the Style of Donald Judd" was**

6                      **Nominative Fair Use**

7              The Ninth Circuit has recognized that "many goods and services are effectively identifiable

8  only by their trademarks." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th

9  Cir. 1992).   In such cases, use of the trademark "does not imply sponsorship or endorsement of the

10  product because the mark is used only to describe the thing, rather than to identify its source." *Id*.

11  "Cases like this are best understood as involving a non-trademark use of a mark – a use to which

12  the infringement laws simply do not apply." *Id.* at 307.  If the words that comprise the mark are

13  used only in this nominative way, the fact that the use is "carried on for profit and in competition

14  with the trademark holder's business is beside the point." *Id*. at 309.

15              Thus, in *Smith v. Chanel, Inc.*, a defendant marketed its own perfume, which copied

16  Chanel's unpatented fragrance formula, in a single advertisement with the statement "We dare you

17  to try to detect any difference between Chanel #5 (25.00) and Ta'Ron's 2nd Chance. $7.00."

18  *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968).  The court ruled that the defendant had

19  the right to use the name of the other product in its advertising, so long as it did not misrepresent or

20  create a likelihood of confusion as to the source, identity or sponsorship of the product. *Id.* at 569.

21  The comparative "advertisement ma[de] it clear that the product [defendant] offer[ed was] their

22  own." *Id*.  Therefore, it did not give rise to trademark liability.

23              Under these precedents, the Court should dismiss Judd Foundation's trademark claims

24  because Clements Design's use of the phrase "in the style of Donald Judd" in the Proposal was

25  nominative fair use and did not imply any connection to Donald Judd or Judd Foundation.  On the

26  contrary, Clements Design's use of the phrase indicated only that the furniture was "in the style of

27  Donald Judd," which clearly means that they were <u>not</u> actual Donald Judd pieces.  The use of the

28

1    words "Donald Judd" simply identified the style used of the furniture included in the design

2    proposal.  The law permits Clements Design to make such a nominative use.

3         In this context, it bears emphasis that the words were presented in plain black type in a line

4    entry within a design proposal with many other entries.  They were not called out or highlighted or

5    presented in any stylized manner or in the way Judd Foundation and its affiliated entities

6    apparently use it – stamped on furniture in block lettering.  Such non-trademark use of the words

7    "Donald Judd" is not actionable as either trademark infringement or false designation under the

8    Lanham Act.  Accordingly, because nominative fair use is an appropriate basis for a motion to

9    dismiss a trademark claim, *see Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th

10   Cir. 2019) (affirming dismissal of trademark infringement claim based on nominative fair use);

11   *accord In re Dual-Deck Video Cassette Recorder Antitrust Litig*., 11 F.3d 1460, 1467 (9th Cir.

12   1993) (same); *Threshold Enterprises Ltd. v. Pressed Juicery, Inc*., 445 F. Supp. 3d 139, 155 (N.D.

13   Cal. 2020) ("A motion to dismiss may be granted due to a fair use defense."), Judd Foundation's

14   trademark claims should be dismissed for this reason alone.

15        **2.    *Judd Foundation Has Not Alleged, and Cannot Allege, Likelihood of***

16             ***Confusion***

17        In order to state a claim of trademark infringement or false designation of origin, a plaintiff

18   must allege facts that plausibly support that finding of likelihood of consumer confusion arising

19   from the alleged trademark misuse.  Just last term, the Supreme Court admonished that, "if, in a

20   given case, a [trademark] plaintiff fails to plausibly allege a likelihood of confusion, the district

21   court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)." *Jack*

22   *Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023).  In this case, Judd

23   Foundation has not alleged facts that plausibly support a likelihood of confusion resulting from

24   Clements Design's use of the phrase "in the style of Donald Judd" and their trademark claims

25   under both Section 32 and 43(a) of the Lanham Act should therefore be dismissed.

26        As noted above, Judd Foundation's trademark claims arise from Clements Design's use of

27   the phrase "in the style of Donald Judd" in a single design proposal that was sent only to one client

28   three and a half years ago.  No likelihood of confusion resulted from that use.  Judd Foundation

does not allege that Clements Design ever published the proposal to, or used the phrase "in the style of Donald Judd" with, another client or anyone else.  The phrase was only ever used once, with KKW.  The Complaint thus confirms that other consumers never heard or saw the only statement ever made by Clements Design that used the words "Donald Judd" and therefore obviously could not have been confused by it.[4]

That is doubtless why the Complaint contains literally no allegations that reasonably prudent consumers were likely to be confused by anything said in the Proposal – because nobody else saw it.  Of course, even if they had, the phrase "in the style of" Donald Judd clearly indicates the tables and chairs were <u>not</u> actual Donald Judd furniture.  Moreover, Judd Foundation alleges that a single Donald Judd La Mansana Table costs $90,000 and a single Donald Judd Chair costs $9,000.  (Compl. ¶ 45).  Potential purchasers of such expensive furniture are highly sophisticated and likely to exercise caution when spending six figures on a table set.  They are not likely to be confused about whether the phrase "in the style of Donald Judd" in a design proposal directed to someone else means that a piece is actually Donald Judd furniture.

Because Clements Design's use of the phase "in the style of Donald Judd" was nominative fair use and Judd Foundation has not plausibly alleged likelihood of confusion, the Court should dismiss the fourth and fifth claims for trademark infringement and false designation of origin.

### D.   Judd Foundation Fails to Plead False Advertising Under Federal or State Law

The federal and state claims for false advertising[5] fail as a matter of law because Judd Foundation has alleged neither a false statement nor any actionable advertising by Clement Design.

---

[4]  To the extent that Ms. Kardashian misspoke, it is well-settled law that a single misstatement is insufficient to establish likelihood of confusion as a matter of law.  *See, e.g., McGraw-Hill Pub. Co. v. American Aviation Assocs.*, 117 F.2d 293, 295 (D.C. Cir. 1940) ("Probable confusion cannot be shown by pointing out that at someplace, at some time, someone made a false identification."); *International Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196 (1st Cir. 1996) ("[A]n isolated instance of confusion does not prove probable confusion").  The likelihood of confusion that gives rise to trademark liability is likely confusion by reasonably prudent consumers in the market for the goods at issue, not a one-time misstatement by a single consumer.

[5]  Federal and state false advertising claims can be analyzed together if based on the same facts.  *See Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, 2018 WL 1524499, at *6 (S.D. Cal. Mar. 28, 2018).

### 1.    *Judd Foundation Has Not Alleged Any False Statements*

"In order to prevail on their false advertising claim, plaintiff must establish: (1) in advertisements, defendant made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public." *Julian Bakery, Inc. v. Healthsource Int'l, Inc*., 2018 WL 1524499, at \*6 (S.D. Cal. Mar. 28, 2018) (emphasis in the original).

The first fundamental flaw in Judd Foundation's false advertising claims is that the Complaint alleges no false statement by Clements Design.  The statement that Judd Foundation contends constitutes false advertising is Clements Design's note in the Proposal that certain tables and chairs would be "in the style of Donald Judd."  Judd Foundation does not claim that statement was false.  In fact, it bases this entire action on the premise that it was true.  Of course, to the extent that Judd Foundation claims the statement falsely represents that the furniture was actual Donald Judd furniture, that claim is entirely inconsistent with the meaning of the phrase "in the style of" – that is, designed in the same style, but not from the same designer.  Because Judd Foundation has not alleged a false statement, its false advertising claims fail as a matter of law.

### 2.    *Judd Foundation Does Not Allege Any Actionable Advertising*

Equally fundamentally, the Complaint identifies no advertising that could form the basis of a false advertising claim.  "To constitute commercial advertising or promotion, a statement must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *BHRS Grp., LLC v. Brio Water Tech., Inc*., 553 F. Supp. 3d 793, 800 (C.D. Cal. 2021).  Judd Foundation does not allege that Clements Design made any statement that was disseminated broadly to the relevant purchasing public.  A single design proposal that was only sent to one client is not an advertisement.  And Judd Foundation alleges no other statement by Clements Design that could be construed as advertising.  In the absence of

1  advertising, there can be no false advertising and the Judd Foundation's sixth and ninth claims for

2  false advertising under federal and state law must therefore be dismissed.

3     **E.     Judd Foundation Fails to Plead Claims Under California Business and**

4          **Professions Code Sections 17200 and 17500**

5          To the extent Judd Foundation seeks relief under California Business and Professions Code

6  sections 17200 or 17500, none of the statutorily authorized remedies is available.  As a result, Judd

7  Foundation's eighth and ninth claims for violation of the state Unfair Competition Law ("UCL")

8  and False Advertising Law ("FAL") should be dismissed because no relief can be granted.

9          "Actions under the UCL and FAL are actions in equity…Damages such as those in contract

10  or tort cases are not available, and the remedies 'are generally limited to injunctive relief and

11  restitution.'"  *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1070–71 (N.D. Cal. 2020).

12  Neither restitution nor injunctive relief is available remedies to Judd Foundation.  Injunctive relief

13  requires an ongoing harm.  *See Matthews v. Ryan*, 2020 WL 3050571, at *2 (D. Ariz. June 8,

14  2020) ("To obtain preliminary injunctive relief, a plaintiff must demonstrate ongoing harm or the

15  present threat of irreparable injury, not a past injury.").  Clements Design sent the Proposal to one

16  client nearly three and a half years ago and, since that time, it has not sold, or proposed to sell, any

17  furniture "in the style of Donald Judd" to anyone.  Judd Foundation does not, and cannot, allege

18  any contrary facts.  In the absence of ongoing harm, injunctive relief is not available.

19          Nor is Judd Foundation entitled to restitution as Clements Design has not taken anything

20  from it.  "There are two types of disgorgement: restitutionary disgorgement, which focuses on the

21  plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust

22  enrichment… Nonrestitutionary disgorgement is not available under the UCL or the other statutes,

23  and cannot be pursued here." *Sharpe*, 466 F. Supp. 3d at 1072.  Specifically, disgorgement of

24  profits is not available to private plaintiffs under the UCL or FAL.  *See Cedars-Sinai Med. Ctr. v.*

25  *United Healthcare Ins. Co.*, 2010 WL 1875556, at *6 (C.D. Cal. May 7, 2010) ("Thus, courts have

26  consistently held that civil penalties, including those provided for under a 'borrowed' statute, are

27  not available to private plaintiffs under § 17200."); *Tortilla Factory, LLC v. Trader Joe's Co.*,

28  2018 WL 8367468, at *5 (C.D. Cal. Oct. 11, 2018) ("Although restitution is available,

1  disgorgement of profits 'is not an authorized remedy ... where the profits are neither money taken

2  from a plaintiff nor funds in which the plaintiff had a vested interest.'"); *see Korea Supply Co. v.*

3  *Lockheed Martin Corp*., 29 Cal.4th 1134, 1152 (2003) ("We hold that nonrestitutionary

4  disgorgement of profits is not an available remedy in an individual action under the UCL").

5  Because the Court therefore cannot grant Judd Foundation any relief (neither injunction nor

6  restitutionary disgorgement) under either statute, Plaintiff's claims under the UCL and FAL must

7  both be dismissed.

8         Moreover, the Ninth Circuit "has consistently held that state common law claims of unfair

9  competition and actions pursuant to California Business and Professions Code § 17200 are

10  'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp*., 30 F.3d

11  1255, 1263 (9th Cir. 1994).  The same is true for § 17500.  *MAP Co. v. Lebanese Arak Corp*., 2018

12  WL 3357474, at *5 (C.D. Cal. Feb. 5, 2018) ("False advertising claims under Cal Bus. & Prof.

13  Code § 17500 are substantially congruent to claims made under the Lanham Act and thus rise or

14  fall with Lanham Act claims.").  Judd Foundation's claims under sections 17200 and 17500 are

15  based on the same facts as the Lanham Act claims and therefore fail for the same reasons that the

16  Lanham Act claims fail.

17         **F.**    **Judd Foundation Fails to Plead Common Law Unfair Competition**

18         "The common law tort of unfair competition is generally thought to be synonymous with

19  the act of 'passing off' one's goods as those of another."  *Sybersound Recs., Inc. v. UAV Corp*., 517

20  F.3d 1137, 1153 (9th Cir. 2008) (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263

21  (1992)).  Judd Foundation's common law unfair competition claim therefore fails as a matter of

22  law because it has not plausibly alleged that Clements Design "passed off" furniture it sold to one

23  client as actual Donald Judd furniture.  As discussed above, Judd Foundation has alleged just the

24  opposite when it concedes in the Complaint that Clements Design described the furniture as "in the

25  style of Donald Judd" (*i.e.*, not from Donald Judd).

26         Moreover, the Ninth Circuit has also "consistently held that state common law claims of

27  unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act."

28  *Cleary*, 30 F.3d at 1263.  Because Judd Foundation's tenth claim for common law unfair

1    competition claim has the same factual basis as the Lanham Act claims, it fails and must be

2    dismissed for the same reasons they do.

3        **G.**     **Judd Foundation's Claim for Copyright Infringement Fails Because No relief**

4               **is Available**

5        Judd Foundation's seventh claim for, copyright infringement, fails because no relief is

6    available for the Court to grant.  The claim is based on the use of a photograph (in which Judd

7    Foundation claims to own a copyright) in the Proposal in November 2020.  Judd Foundation did

8    not register the copyright until February 14, 2024, just two months ago.  Even if Judd Foundation

9    could establish its copyright claim, there is no relief the Court can grant.  The claim must therefore

10   be dismissed.

11       Specifically, Judd Foundation has no entitlement to injunctive relief.  The photograph was

12   used once nearly three and a half years ago and there is no allegation of any continuing conduct or

13   threat that the photograph will be used again and therefore no threat of imminent or irreparable

14   harm and nothing to enjoin.  Nor are statutory damages available. "17 U.S.C. § 412(2) provides

15   that no award of statutory damages or of attorney's fees . . . shall be made for any infringement of

16   copyright commenced after first publication of the work and before the effective date of its

17   registration, unless such registration is made within three months after the first publication of the

18   work." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1101 (S.D. Cal. 2012).  The statute leaves

19   no room for discretion. *Id*.  Nor are actual damages available, given that the claim is time barred

20   under 17 U.S.C. § 507(b) because it accrued more than three years before Judd Foundation

21   commenced this action.

22       For all of these reasons, the Court cannot grant Judd Foundation relief on its copyright

23   claim.  Therefore, the claim must be dismissed.

24       **H.**     **Judd Foundation Lacks Standing to Bring Its False Advertising Claims**

25       Finally, Judd Foundation's sixth and ninth claims for false advertising must be dismissed

26   for lack of standing.  The Ninth Circuit has held that, in order to establish standing, a plaintiff

27   asserting a false advertising claim "must show: (1) a commercial injury based upon a

28   misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the

**TroyGould PC**

20

plaintiff's ability to compete with the defendant."  *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).  Judd Foundation is not in competition with Clements Design and therefore cannot make either assertion.

The Complaint makes clear that Judd Foundation does not sell furniture.  It is Judd Foundation's subsidiary Judd Furniture LLC that makes and "sells authentic DONALD JUDD furniture."  (Compl. ¶ 3).  Accordingly, even if Judd Foundation could prove that Clements Design engaged in false advertising (it can't, *see supra* Section D), any injury that might flow from the alleged false advertising would not affect Judd Foundation's ability to compete with Clements Design because the two entities are not in competition with one another.

To the extent that anyone might have standing to bring a false advertising claim on these facts, it would be Judd Furniture LLC, which is not a party to this case.  Judd Foundation lacks the requisite "competitive" injury and the sixth and ninth claims for false advertising must therefore be dismissed for this additional reason.

## IV.    CONCLUSION

For these reasons, the Court should dismiss all of Judd Foundation's claims against Clements Design pursuant to Fed. R. Civ. P. 12(b)(6).


Dated:  April 26, 2024                          TROYGOULD PC


                                                By:   /s/ Aaron B. Bloom
                                                       Aaron B. Bloom
                                                       John C. Ulin
                                                       Chinelo N. Ikem
                                                Attorneys for Defendant Clements Design, Inc.

**TroyGould PC**

21

CLEMENTS DESIGN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

## **CERTIFICATE OF COMPLIANCE**

2

3       The undersigned, counsel of record for Clements Design, Inc., certifies that this brief

4   contains 21 pages, which complies with the page limit of set by the court's standing order.

5

6   Dated:  April 26, 2024                    TROYGOULD PC

7

8                                    By:   /s/ Aaron B. Bloom
                                          Aaron B. Bloom
9                                         John C. Ulin
                                          Chinelo N. Ikem
10                                   Attorneys for Defendant Clements Design, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TroyGould PC**