COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California  94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6404
Facsimile: (310) 883-6500

Attorneys for Defendant
KIM KARDASHIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JUDD FOUNDATION,<br><br>        Plaintiff,<br><br>    v.<br><br>CLEMENTS DESIGN, INC. and KIM KARDASHIAN,<br><br>        Defendants. | Case No. 2:24-cv-02496-MEMF-AS<br><br>**DEFENDANT KIM KARDASHIAN'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF JUDD FOUNDATION'S ELEVENTH CLAIM FOR RELIEF FOR FALSE ENDORSEMENT**<br><br>Date:    August 29, 2024<br>Time:    10:00 a.m.<br>Court:   Courtroom 8B. 8th Floor<br>Judge:   Hon. Maame Ewusi-Mensah Frimpong<br><br>Date Action Filed:  March 27, 2024 |

COOLEY LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 29, 2024 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Maame Ewusi-Menash Frimpong in the United States District Court for the Central District of California, located at 350 West First Street, 8th Floor, Los Angeles, CA 90012, Defendant Kim Kardashian ("Defendant") will, and hereby does, move to dismiss the Eleventh Claim for Relief in the Complaint filed by plaintiff Judd Foundation ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules") for lack of standing and failure to state a claim ("Motion").

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which followed Defendant's lengthy letter dated June 14, 2024 in which Defendant outlined various defects in the Complaint and asked Plaintiff to drop its sole claim against Defendant.  The conference of counsel took place on June 21, 2024, at Plaintiff's counsel's earliest indicated availability following its receipt of Defendant's letter.  Plaintiff refused to dismiss or amend its claim against Ms. Kardashian.

This Motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and Consideration of Documents Incorporated by Reference ("RJN"), Declaration of Colette Ghazarian ("Ghazarian Decl.") and Exhibits 1-7 thereto (including the lodging of a digital file containing the office video tour at issue in the Complaint); other pleadings and papers on file in this action; and such other matters as may be presented to the Court at the hearing.

Dated: June 27, 2024

COOLEY LLP

By: _____
    Michael G. Rhodes
    Bobby Ghajar
    Colette Ghazarian

Attorneys for Defendant
KIM KARDASHIAN

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF RELEVANT FACTS AND ALLEGATIONS ......................... 3

    A.  Donald Judd and His Furniture ................................................................ 3

    B.  Kim Kardashian and the SKKN BY KIM Business ................................ 4

    C.  Ms. Kardashian's 13-Minute Office Tour Video .................................... 5

    D.  The Surprise Lawsuit and Its Allegations ............................................... 7

III.  LEGAL STANDARDS ...................................................................................... 8

IV.  ARGUMENT ..................................................................................................... 9

    A.  Plaintiff Lacks Standing to Bring Its False Endorsement Claim ............ 9

    B.  The First Amendment Bars Plaintiff's False Endorsement Claim ......... 11

    C.  The Complaint Fails to Plausibly Allege Likelihood of Consumer
        Confusion As to Endorsement ............................................................... 14

        1.  The Complaint Fails to Plausibly Plead Recognition of "Donald
            Judd" Among Relevant Purchasers ............................................ 17

        2.  Any Fame Donald Judd May Have Achieved As An Artist is
            Unrelated to the SKKN BY KIM Beauty Products ................... 18

        3.  There is a Single Reference to "Donald Judd Table" in the 13
            Minute Video ............................................................................. 19

        4.  The Complaint Fails to Plausibly Allege Actual Confusion As To
            Endorsement ............................................................................... 19

        5.  The Parties Use Different Marketing Channels .......................... 21

        6.  Any Consumers That Recognize Donald Judd Are Discerning ... 22

        7.  The Complaint Fails to Plausibly Allege Intent .......................... 22

V.  CONCLUSION ................................................................................................ 23

i

**DEF. K. KARDASHIAN'S NOTICE OF
MTN AND MTN TO DISMISS
CASE NO. 2:24-CV-02496-MEMF-AS**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt, Inc.*,
5    744 F.3d 595 (9th Cir. 2014)...........................................................................................23

6

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979)...........................................................................................18
7

*Ariix, LLC v. NutriSearch Corp.*,
8    985 F.3d 1107 (9th Cir. 2021).........................................................................................11

9

*Ashcroft v. Iqbal*,
10    556 U.S. 662 (2009)..........................................................................................................9

11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................8, 9
12

*Bolger v. Youngs Drug Products Corp.*,
13    463 U.S. 60 (1983)....................................................................................................11, 12

14

*Cairns v. Franklin Mint Co.*,
15    107 F. Supp. 2d 1212 (C.D. Cal. 2000) .........................................................................17

16

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002).........................................................................................16
17

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
18    598 F.3d 1115 (9th Cir. 2010)...........................................................................................8

19

*Chaquico v. Freiberg*,
20    274 F.Supp.3d 942 (N.D. Cal. 2017) ........................................................................10, 17

21

*Dahlia v. Rodriguez*,
    735 F.3d 1060 (9th Cir. 2013)...........................................................................................9
22

*Daniels-Hall v. Nat'l Educ. Ass'n*,
23    629 F.3d 992 (9th Cir. 2010).............................................................................................9

24

*Dfinity Foundation v. Meta Platforms, Inc.*,
25    2022 WL 16857036 (N.D. Cal. Nov. 10, 2022)...............................................................17

26

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001)....................................................................................*passim*

27

28

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Eastwood v. Nat'l Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997)....................................................................... 13

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002)....................................................................... 15

*Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A. Inc.*,
   778 F.3d 1059 (9th Cir. 2015)................................................................. 13, 16

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010)......................................................................... 12

*Hoffman v. Capital Cities/ABC Inc.*,
   255 F.3d 1180 (9th Cir. 2001)................................................................. 11, 12

*Infostream Grp. Inc. v. Avid Life Media Inc.*,
   2013 WL 6018030 (C.D. Cal. Nov. 12, 2013).............................................. 17

*Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*,
   103 F.3d 196 (1st Cir. 1996)......................................................................... 15

*Jackson v. Robinhood Markets, Inc.*,
   2021 WL 2435307 (N.D. Cal. Jun. 15, 2021)................................................. 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)........................................................................................ 8

*Kournikova v. Gen. Media Commc'ns Inc.*,
   278 F. Supp. 2d 1111 (C.D. Cal. 2003) .............................................. 11, 13, 20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................... 10

*McGillvary v. Vonkurnatowski*,
   2024 U.S. Dist. LEXIS 65993 (C.D. Cal. Apr. 10, 2024)............................. 15

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
   804 F.3d 930 (9th Cir. 2015)..................................................................... 4, 22

*Murray v. Cable Nat'l Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996)................................................................... 9, 16, 17

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992)......................................................................... 14

iii

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
2019 WL 3082160 (S.D. Cal. July 15, 2019) ........................................................ 17

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014).............................................................................. 21

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012)................................................................................ 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013).................................................................................. 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................... 10, 11

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ............................................................................... 16

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ............................................................................................ 12

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992).............................................................................. 9

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003).............................................................................. 8

*West v. Misguided*,
2019 U.S. Dist. LEXIS 248537 (C.D. Cal. 2019) .................................................. 5

*Yeager v. Cingular Wireless*,
673 F. Supp. 1089 (E.D. Cal. 2009)................................................................ 13, 19

**Statutes**

Lanham Act, 15 U.S.C. § 1125(a).................................................................. *passim*

**Other Authorities**

First Amendment................................................................................ 2, 9, 11, 13

Federal Rules of Civil Procedure
12(b)(1) ......................................................................................................... 1, 8
12(b)(6) ......................................................................................................... 1, 8

COOLEY LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Judd Foundation's lawsuit targets the creation and sale of two tables and a set of chairs by Defendants Clements Design ("Clements"), which were purchased at a significant sum and later placed in the private offices of SKKN BY KIM, a beauty company owned by Defendant Kim Kardashian.  Ten of the Complaint's eleven legal claims are based on *Clements'* conduct, yet the narrative of the Complaint is curated around Ms. Kardashian's fame – a ploy designed to maximize publicity.  It is not until the end of the Complaint that Plaintiff articulates its only legal claim against Ms. Kardashian (Claim 11), for "false endorsement."  That is where Plaintiff's narrative goes off the rails.

Nearly two years ago, Ms. Kardashian posted a 13-minute YouTube video tour of the SKKN BY KIM office.  Over two minutes into the video, Ms. Kardashian mistakenly referred to a set of furniture in her office as "Donald Judd tables," when they were allegedly not.  Nowhere did she tell viewers that she has a sponsorship deal with "Donald Judd," leverage the "Donald Judd" name in the title of her video, use the name on products, or do any of the types of things that one might do if they had an endorsement deal with a celebrity. Nevertheless, due to her errant reference, Plaintiff asserts that **certain unidentified "consumers" are likely to believe that Judd Foundation endorsed either Ms. Kardashian or the SKKN BY KIM business** (and it is not clear which).   This distorted view of a false endorsement claim is intellectually dishonest, unprecedented, and implausible.  Dismissal is required for three, separate reasons.

***First***, the claim against Ms. Kardashian must be dismissed for lack of standing because the Complaint fails to plausibly allege any injury in fact that is concrete or particularized.  For example, Plaintiff does not (because it cannot) allege that it has lost any sales or endorsements as a result of the reference to Donald Judd in the video.  That is not at all surprising given the incredibly high cost of Plaintiff's furniture ($90,000 for the La Mansana table and $9,000 for the Chair 84 chairs) and allegedly restrictive trade channels (¶¶ 26, 45)[1] and the historically few sales of these items

---

[1] Unless otherwise, stated, citations to "¶_" and "Ex. " are to the Complaint's paragraphs and exhibits, all emphases are added, and internal citations and quotation marks are omitted.

(Ghazarian Decl., Ex. 7).  Plaintiff otherwise makes a passing, conclusory reference to reputational injury that is unsupported by allegations of fact.   Without a plausible factual basis for any claim of damages, Plaintiff lacks standing to bring its "false endorsement" claim against Ms. Kardashian.

*Second*, the claim must be dismissed on First Amendment grounds.  The Complaint alleges that "Donald Judd" is a well-known and heralded designer.  On behalf of a public figure that is complaining about the use of his identity in noncommercial speech, Plaintiff must allege clear and convincing facts showing that Ms. Kardashian acted with "actual malice" in creating a false impression of endorsement.  Here, the office tour video is not a commercial.  There is no "call to action" asking viewers to purchase any products, nor are any products the focus of the video. Instead, it is a creative, documentary-style tour that not only shows the physical attributes of the SKKN BY KIM office, but also features Ms. Kardashian telling personal anecdotes about her life and aesthetic preferences.  The video is noncommercial speech, and Plaintiff cannot come close to alleging facts that plausibly support that Ms. Kardashian's brief reference to "Donald Judd" furniture meets the "actual malice" standard.

*Third*, the Complaint fails to plausibly allege a likelihood of confusion as to sponsorship or endorsement.  The claim is not just implausible, it is nonsensical: that one of the most popular and followed celebrities in the world – known for *her* endorsement power – sought to benefit (or benefitted) from some "implied endorsement" by one of the alleged makers of the furniture or décor that adorn her private office.  As an initial defect, the Complaint is unclear as to the hypothetical "consumers" who were supposedly confused by the video: were they high-end furniture purchasers, Ms. Kardashian's fans, or purchasers of SKKN BY KIM beauty products?  There are no allegations that Ms. Kardashian promoted the video by using the "Donald Judd" name or as featuring designers and artists that allegedly endorsed her.  The Complaint does not plausibly support a claim that relevant customers would (a) watch the video; (b) get two minutes into the video; and then (c) from a single reference to "Donald Judd" when describing a set of tables and chairs during her office tour, be confused into believing Plaintiff "sponsored" or "endorsed" Ms. Kardashian.  And although Plaintiff misleadingly cropped screenshots of the video into the Complaint – turning on captions to display "Donald Judd" as though his name was the focus of the video or promoted as such – clearly,

Cooley LLP
Attorneys at Law

2

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

that was not the case.  One need only watch the entire video (a copy of which is lodged with this motion) to readily reach that conclusion.

During the meeting of counsel preceding this motion, Defendant asked Plaintiff to provide a citation to any case supporting its backwards application of a "false endorsement" claim.  Plaintiff would only point to Section 1125(a) itself – declining to provide any supporting case law.  By Plaintiff's rationale, somebody giving an Instagram video tour of their home who mistakenly refers to a décor detail – whether the name of the builder, a window brand, or even a sofa designer (e.g. their "Restoration Hardware" couch) – could be sued privately for "false endorsement."  It's a ridiculous proposition to argue that describing a purchased item by name (erroneously or not) might be construed as an "endorsement" by the **maker** of that item.

At bottom, the claim against Ms. Kardashian is a publicity ploy for Plaintiff, who sowed the press with its lawsuit – not about actual damage or confusion.  Plaintiff accomplished that goal by crafting a narrative around Ms. Kardashian, even though its legal gripe is with the Clements firm.  Over a year ago, Ms. Kardashian offered to post a clarification and to purchase other Donald Judd items for her home.  Plaintiff rejected that, went silent for months, then – unannounced – launched this lawsuit.  *But the video is down, nobody has been confused, nobody is buying fewer $90,000 tables, nobody is watching Ms. Kardashian's videos to see if there's a mention of "Donald Judd" furniture minutes into them, and nobody is going to SKKN BY KIM's website to buy beauty products because an office tour video erroneously mentioned "Donald Judd."*  The Court is urged to put an end to this folly and dismiss the false endorsement claim against Ms. Kardashian.

## II.   SUMMARY OF RELEVANT FACTS AND ALLEGATIONS

### A.   Donald Judd and His Furniture

Donald Judd was an American artist and designer, active during the latter half of the twentieth century.  (¶¶ 18, 22–24.)  Among his many artistic pursuits, Mr. Judd designed and fabricated minimalist furniture, which he only began making available for commercial sale in the 1980s, during last decade of his life.  (¶ 23.)

Plaintiff Judd Foundation is a not-for-profit organization established to educate the public about and preserve the legacy of Mr. Judd.  (¶ 17.)  Plaintiff has continued to market, promote,

manufacture, and sell Mr. Judd's furniture following Mr. Judd's death in 1994, which it does through its wholly-owned subsidiary Judd Furniture LLC, DBA Donald Judd Furniture ("Judd Furniture") and a "handful of exclusive art galleries…and select retail stores."  (¶¶ 3, 26.) According to the Complaint, Plaintiff is "highly selective with its partnerships."  (¶ 26.)  Judd Furniture is not a party to this case.

Mr. Judd designed the La Mansana Table and Chair 84 – the pieces at issue in this action – in 1982, and they began to be commercially sold in 1984.  (¶¶ 31, 43.)  These pieces are incredibly expensive: the La Mansana Table sells for $90,000 and the Chair 84 chairs sell for $9,000, each. (¶ 45.)  It is not surprising, then, that the New York Times has reported that only *three* La Mansana Tables have been sold in the last fifteen years.[2]  The La Mansana Table and Chair 84 are only sold through the Judd Furniture website, three retailers based in Europe, and three galleries.  (¶ 44.) "Customers [of the furniture] are often art collectors and design enthusiasts." (¶ 27.)  There are no allegations in the Complaint that Plaintiff has ever earned any endorsement deals or sponsored any company.

## B.    Kim Kardashian and the SKKN BY KIM Business

"World-famous celebrity" Defendant Kim Kardashian is one of the most well-known celebrities in the world, "known for everything from her widely-watched reality TV show to her successful multibillion-dollar businesses."  (¶ 47.)   In October 2023, she was named one of *Fortune*'s "Most Powerful Women."  (Ghazarian Decl., Ex. 3.)  That same year, her SKIMS shapewear company was included in *Time* magazine's list of "100 Most Influential Companies of 2022." (¶ 47.)  She is also ranked 21st on *Forbes*'s 2024 ranking of "America's Richest Self-Made Women."  (Ghazarian Decl., Ex. 4.)  This degree of renown is not a recent occurrence for Ms. Kardashian.  She was also on *Time*'s 2015 list of "100 Most Influential People," where she was described as a "media phenomenon."  (Ghazarian Decl., Ex. 5.)  The Court can take judicial notice that   Ms.   Kardashian   has   over   300   million   followers   on   Instagram

---

[2] *See, e.g.*, https://www.nytimes.com/2024/03/27/arts/design/kim-kardashian-table-donald-judd.html (accessed June 24, 2024); Ghazarian Decl., Ex. 7.

Cooley LLP
Attorneys at Law

4

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

1   (https://www.instagram.com/kimkardashian/?hl=en).[3]  In short, Ms. Kardashian is a celebrity with

2   significant and recognized endorsement value herself.  (¶ 49 ("Ms. Kardashian is widely known

3   and lauded for her promotional skills…").)

4        Ms. Kardashian has led several business ventures throughout her career.  One such venture,

5   SKKN BY KIM, is a high-end beauty brand founded by Ms. Kardashian, who is also the company's

6   CEO.  (¶ 48.)  SKKN BY KIM also has its own social media channels for promoting its products,

7   including its own YouTube channel https://www.youtube.com/@SKKN, which are separate from

8   Ms. Kardashian's personal channels.  (*See*, *e.g.*, ¶ 49; Ghazarian Decl., Ex. 6.)  Oddly, although

9   SKKN BY KIM is a separate entity and supposedly benefitted from the "false endorsement"

10   claimed by Plaintiff (¶¶ 48, 179), it is <u>not</u> a defendant in this case.

11        Ms. Kardashian does not sell furniture, either in her personal capacity or through her

12   companies, and the Complaint does not allege as much.  Although the Complaint describes Ms.

13   Kardashian as "collaborating" with artists and furniture designers like Rick Owens (¶ 50), it is clear

14   from the descriptions provided in the Complaint that this "collaboration" is transactional in nature–

15   –Ms. Kardashian is a client that has commissioned and hired artists and designers to provide goods

16   and services (¶¶ 51, 52, 56–59).  Nowhere in the accused video (detailed below) does Ms.

17   Kardashian state or suggest that any of the artists and designers she mentions sponsored or endorsed

18   her or her companies' brands.  And nowhere is Ms. Kardashian alleged to have offered products or

19   sent out advertisements indicating that she was sponsored or endorsed by Donald Judd.

20   **C.**    **Ms. Kardashian's 13-Minute Office Tour Video**

21        On August 12, 2022, Ms. Kardashian posted a video titled "Welcome to my Office!  Official

22   SKKN BY KIM Office Tour" (the "Video") to her personal YouTube channel.  (¶ 60; *see also*

23   Ghazarian Decl., Ex. 1 ("Video").)[4]  The 13-minute Video is a mini-documentary in the nature of

24   an office tour for SKKN BY KIM's Los Angeles office, which had recently opened at the time.  (¶

25

---

26   [3]  *See West v. Misguided*, 2019 U.S. Dist. LEXIS 248537 at *12-15 (C.D. Cal. 2019) (providing
   Ms. Kardashian's social media following as of 2019 (120M on Instagram) and referring to Ms.

27   Kardashian's allure and earnings as a celebrity endorser).
   [4]  Because the Video is integral to the Complaint and incorporated by reference, Defendant submits

28   a full version to the Court.  The full version is necessary to provide context, especially due to the
   misleading "annotated" screenshots in Complaint.

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

61.)  As one would expect in a video tour, throughout the tour, Ms. Kardashian shows viewers the various physical features of the SKKN BY KIM office, including its layout, aesthetic, artwork, décor, and furniture, tells anecdotes about her life, describes her stylistic preferences, and explains the rationale behind her design choices, which are of interest to those who follow her.[5]  (¶ 62; Video at, *e.g.*, 0:46–1:45, 2:37–2:56, 2:57–3:26, 7:44–8:21, 9:35–10:14.)  Although SKKN BY KIM products appear in the Video (given that the venue is the company's offices), the Video's focus is the design and décor of the office, rather than SKKN BY KIM products.  (*See, generally*, Video.)  Indeed, the Video does not contain any call-to-action encouraging consumers to purchase SKKN BY KIM products or any other products or services.

Two minutes and twenty seconds into the Video, Ms. Kardashian points to two tables with sets of chairs tucked under the table (the "Tables and Chairs") and says, "If you guys are furniture people—because I've really gotten into furniture lately—these Donald Judd tables are really amazing and totally blend in with the seats."  (¶ 66; Video at 2:20.)  This is the *only* time that Donald Judd's name is mentioned in the Video.  The camera then pans to show the Tables and Chairs, which Ms. Kardashian later "learned…are not from Donald Judd" (*id.* at 2:27; ¶ 84) and then the tour continues to show the rest of the SKKN BY KIM office (Video at 2:34–12:57).  This segment of the Video is a matter of seconds and the words "Donald Judd tables" are just three of nearly 2000 words spoken in the Video.  (Ghazarian Decl., ¶ 2; Video at 2:25.)  The Video does not contain any annotated highlights, headnotes, or promotional notes that reference "Donald Judd" or call attention to the Video segment at issue here.

The Complaint indicates that when Plaintiff contacted Ms. Kardashian concerning the Tables and Chairs and her "erroneous" reference to Donald Judd in the Video (¶ 174), her representatives offered to update the caption of the Video with a retraction.  (¶¶ 84.)  This was rejected by Plaintiff.  (¶ 85.)  Since the filing of the Complaint, the Video has been taken down from Ms. Kardashian's YouTube channel.  (Ghazarian Decl., ¶ 2.)

---

[5] Public interest in Ms. Kardashian's aesthetic preferences predates the Video; for example, her personal home was featured in Architectural Digest.

### D.       The Surprise Lawsuit and Its Allegations

Plaintiff filed suit on March 27, 2024, approximately 18 months after the Video was originally posted. (¶ 60.)  Its last communication with either Defendant was approximately seven months prior, after which Plaintiff went radio silent until filing the Complaint.  (¶ 93.)  The Complaint asserts eleven causes of action, only one of which—a claim for False Endorsement under the Lanham Act, 15 U.S.C. § 1125(a)—is against Ms. Kardashian, personally.  (¶¶ 169–180.)  Despite this, the Complaint was written to highlight Ms. Kardashian's name throughout.  The split-second mention of "Donald Judd" was excerpted misleadingly in the Complaint to give the appearance that the reference was more prominent than it actually was.  (*See*, *e.g.*, ¶ 69.)  This is exacerbated by the screenshots created by Plaintiff, which turn on captioning and portray a focus on "Donald Judd tables" that is unnatural and deceiving without proper context.  Elsewhere, the Complaint also uses fanciful definitions of the products over which Judd Foundation has sued Clements Design, such as references to the "Kardashian Tables and Chairs," even though Ms. Kardashian did not create or sell the furniture at issue and there is no allegation that any other similar furniture pieces were offered for sale by Clements.  (*See*, *e.g.*, ¶¶ 69–75.)

The false endorsement claim is based on a single reference to "Donald Judd table" in the Video.  Plaintiff alleges that Ms. Kardashian, "on behalf and for the benefit of the SKKN BY KIM brand, erroneously and without authorization used the DONALD JUDD trademark and Mr. Judd's name and identity" when describing the Tables and Chairs. (¶ 174.)  In conclusory fashion, the Complaint asserts that this use is "**likely to confuse consumers as to Mr. Judd's and/or Judd Foundation's sponsorship or approval of the SKKN BY KIM brand and products.**"  (¶ 178.)  The Complaint does not shed light on why or how unidentified "consumers" are likely to be confused as to Mr. Judd's "or" Plaintiff's sponsorship or approval *of Ms. Kardashian* based on a single mention of "Donald Judd table" in the Video.  The Complaint is also unclear about how Ms. Kardashian is personally liable for false endorsement, when the products allegedly being "falsely endorsed" are SKKN BY KIM products.  (*Id.*)  Plaintiff has not brought any claims against the SKKN BY KIM business.

Nowhere does the Complaint allege that any *consumers* were actually confused as to Judd

Foundation's alleged endorsement of the SKKN BY KIM business (or Ms. Kardashian).  The Complaint mentions social media discussion and press coverage of the Video, arguably reflecting a belief that the Tables and Chairs were sourced from Judd Foundation, and a crop quoted article from "StockX" by a design critic mischaracterized by Plaintiff as suggesting an affiliation between Mr. Judd and his furniture, on the one hand, and Ms. Kardashian and her "brands," on the other. (¶¶ 80–83; *see also* Ghazarian Decl., Ex. 2 (attaching the article).)  Again, context is important: the article is an editorial published on the online marketplace StockX discussing the relationship between furniture and fashion, generally.  (*Id.*)  Its discussion of the Video consists of three sentences that, at best, suggest that Ms. Kardashian's **SKIMS** brand (also not at issue in the Complaint) and the furniture in her SKKN BY KIM company office share a similar aesthetic.  (*Id.*)  In any event, none of the Complaint's examples of purported "confusion" relate to actual confusion as to sponsorship or endorsement.

## III.   LEGAL STANDARDS

Ms. Kardashian seeks dismissal under Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6).

A motion under Rule 12(b)(1) properly challenges Article III standing requirements, which limit the Court's subject matter jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Plaintiff has the burden of establishing such jurisdiction.  *Jackson v. Robinhood Markets, Inc.*, 2021 WL 2435307, *3 (N.D. Cal. Jun. 15, 2021) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Where, as here, the challenge to standing is a "facial" attack, the court accepts the well-pleaded facts as true and dismisses only if those facts are insufficient to invoke jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Meanwhile, "[d]ismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court need not "accept as true allegations that contradict … matters properly subject to judicial notice, or allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same); *Twombly*, 550 U.S. at 555 (courts need not "accept as true a legal conclusion couched as a factual allegation"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

Claim 11 is a false endorsement claim based on the unauthorized use of a celebrity's identity, which is "a type of false association claim…." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992). It invokes 15 U.S.C. § 1125(a), which protects against the use of "a word, term, name, … false designation of origin … or false or misleading representation of fact" by a person that is "likely to cause confusion, or … to deceive as to the affiliation, connection or association of such person with another person…." *Id.* at 1125(a)(1)(A). "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). Moreover, the "confusion must be probable, not simply a possibility." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996).

As explained below, the Court should dismiss the false endorsement claim for three, separate reasons: (1) Plaintiff fails to allege a cognizable injury resulting from the alleged false endorsement and therefore lacks standing to bring such a claim; (2) it is barred by the First Amendment; and (3) the Complaint fails to plead facts to plausibly show a likelihood of confusion as to endorsement.

### A.   Plaintiff Lacks Standing to Bring Its False Endorsement Claim

As a threshold issue, Plaintiff lacks standing to bring its false endorsement claim. The Complaint lacks any plausible allegation that Plaintiff has suffered any injury or harm as a result of the brief reference to "Donald Judd" furniture in the Video.

In order to have standing to bring its false endorsement claim, Plaintiff "must have (1)

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.*  Plaintiff has not established the first element, injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist…. [and be] 'real,' and not 'abstract.'" *Id.* at 340 (citing dictionaries).

**First**, as explained below, the Complaint contains no plausible explanation as to how consumers would erroneously conclude that Judd Foundation sponsored or endorsed Ms. Kardashian (or the SKKN BY KIM business).  Ostensibly, Plaintiff's speculative theory is that because Ms. Kardashian named some of the designers and creators of the other art and furniture pieces in her office and described her relationships with some of them, her naming of "Donald Judd" implies that she has a similar relationship with Mr. Judd.  (¶ 62–67.)  But Ms. Kardashian's hiring of interior designers to provide decorating services and commissioning of artwork to design her office does not equate to obtaining their "endorsement, sponsorship, or approval" of Ms. Kardashian or one of the businesses she founded.  These individuals provided goods and services as they would to any client, just as Plaintiff sells its furniture.  As is evidenced by the Video itself, there is no plausible basis to conclude that viewers would believe that *any* of the designers and artists referenced in the video *endorsed* Ms. Kardashian, let alone that Donald Judd himself did. When a complaint is "devoid of allegations explaining how [the defendant's use] create[s] the misimpression that Plaintiff sponsors, endorses, or is affiliated with [defendant]" the complaint must be dismissed.  *Chaquico*, 274 F. Supp. 3d at 952.

**Second**, the Complaint is devoid of allegations that Judd Foundation lost sales or endorsements as a result of Ms. Kardashian's mention of "Donald Judd table" within the lengthy Video.  The Complaint makes clear that it is Judd Foundation's subsidiary Judd Furniture LLC that

sells DONALD JUDD furniture.  (¶ 3.)  Judd Furniture LLC is not a plaintiff.  The Complaint only contains a conclusory allegation that Ms. Kardashian's Video has caused Plaintiff to suffer reputational harm "by undermining its ability to control…Mr. Judd's name and identity."  (¶ 8.) Again, the Complaint does not provide factual allegations that plausibly support the conclusion that Plaintiff's "ability" is undermined by a single reference in Video.  There are no facts as to how, exactly, Plaintiff's reputation was harmed.  The entirety of Plaintiff's claim of harm due to the alleged false endorsement is purely speculative.  They are not "concrete and particularized"; they do not exist.  *Spokeo* 578 U.S. at 339.  As such, without allegations of particularized damage, Plaintiff does not have standing under the Lanham Act.  For this reason alone, its false endorsement claim against Ms. Kardashian must be dismissed.

## B.   The First Amendment Bars Plaintiff's False Endorsement Claim

Separately, the Court should dismiss Plaintiff's false endorsement claim against Ms. Kardashian because the Video is not commercial speech and is therefore protected under the First Amendment.  "When a public figure[6] (who is complaining about the use of [his] identity in noncommercial speech) brings a false endorsement claim, it is barred by the First Amendment unless the plaintiff produces clear and convincing evidence that the defendant acted with actual malice in creating the false impression of endorsement." *Kournikova v. Gen. Media Commc'ns Inc.,* 278 F. Supp. 2d 1111, 1128 (C.D. Cal. 2003) (citing *Hoffman v. Capital Cities/ABC Inc.,* 255 F.3d 1180, 1186, 1189 n. 3 (9th Cir. 2001)).  "[The] First Amendment defense extends to almost all reporting of recent events, as well as to publications about people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities," like Ms. Kardashian. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

The Ninth Circuit characterizes commercial speech as meeting three criteria: (1) speech that is an advertisement; (2) speech that refers to a specific product; and (3) speech in which the speaker has an economic motivation.  *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115–16 (9th Cir.

---

[6] The Complaint, itself, alleges that Donald Judd is a public figure.  (*See, e.g.*, ¶ 17 ("Mr. Judd [is] one of the most important American artists of the twentieth century").)

Cooley LLP
Attorneys at Law

11

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

2021); *see also Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67 (1983).  Economic motivation alone is insufficient to turn speech into commercial speech; courts look for "[t]he combination of *all* these characteristics.  *Id.* at 67.

Viewed in its entirety, the Video is an "office tour," not an advertisement.  (¶ 60.)  "'[T]here are commonsense differences between speech that does no more than propose a commercial transaction and other varieties,' and common sense tells us this is not a simple advertisement." *Hoffman.*, 255 F.3d at 1185–86 (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 n. 24 (1976)).  There is no "call to action" in the Video asking the viewer to purchase a product.  As noted above, the Video does not advertise design services or furniture for sale.  As the Complaint admits, the Video was posted to Ms. Kardashian's personal YouTube channel, not one for the SKKN BY KIM business.  (¶ 60.)  Although SKKN BY KIM products appear in the video (as one would expect from a tour of an office), the design and décor of the office, rather than the products, are the video's focus.  Similar to *Architectural Digest*'s "Home Tours"[7] or MTV's *Cribs*,[8] in which celebrities are filmed while exhibiting and describing their homes, the Video gives viewers an exclusive look into one of Ms. Kardashian's places of work.  In addition to showing viewers the physical attributes of her office (including the brief segment about the Tables and Chairs), throughout the Video Ms. Kardashian shares anecdotes about her life, describes her stylistic preferences, and explains the rationale behind her design choices, while walking viewers to the different areas of the office.  (Video, *e.g.*, 0:46–1:45, 2:37–2:56, 2:57–3:26, 7:44–8:21, 9:35–10:14.)  Given Ms. Kardashian's celebrity status, her workplace and lifestyle are newsworthy matters of public interest.  *Downing*, 265 F.3d at 1001; *cf. Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010) (considering Paris Hilton's "That's hot" catchphrase, public persona, and privileged lifestyle matters of public interest for purposes of anti-SLAPP analysis).

In contrast to the facts here, where courts have found false endorsement liability or declined to dismiss a false endorsement claim, the content at issue were clearly advertisements.  In *Downing*,

---

[7] *See*, *e.g.*, https://www.architecturaldigest.com/topic/home-tours.
[8] *See*, *e.g.*, https://www.mtv.com/shows/mtv-cribs.

Cooley LLP
Attorneys at Law

12

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

for instance, the content at issue was Abercrombie and Fitch's subscription catalog, which was the company's "largest advertising vehicle" and "account[ed] for approximately 80% of Abercrombie's overall advertising budget." *Downing*, 265 F.3d at 999.  In *Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A. Inc.*, photographs of Bob Marley were used without authorization directly on t-shirts and other merchandise being sold.  778 F.3d 1059, 1066 (9th Cir. 2015). And in *Yeager v. Cingular Wireless*, the publication at issue was a press release discussing Cingular's preparedness for disasters through its emergency preparedness equipment products, and its "sole purpose was to promote defendant's services." 673 F. Supp. 1089, 1098 (E.D. Cal. 2009).

The Video is more akin to the magazine cover and article at issue in *Kournikova*, which the court in that case determined was noncommercial speech.  In *Kournikova*, famous tennis player Anna Kournikova brought false endorsement and false advertising claims against a magazine publisher that had published nude photographs of another woman falsely identified as Ms. Kournikova.  278 F. Supp. 2d at 1113.  The court observed that the cover and article "[were] not simple advertisements" and were therefore entitled to the full protection of the First Amendment. *Id.* at 1128–29.  As discussed above, the Video is similarly "not a simple advertisement" but rather a 13-minute documentary on an aspect of Ms. Kardashian's life.

The Complaint also does not allege that Ms. Kardashian acted with actual malice in creating any alleged false impression or endorsement, as is required when a false endorsement claim is premised on noncommercial speech.  *Kournikova*, 278 F. Supp. 2d at 1128.  Actual malice is a "heavy burden, far in excess of the preponderance sufficient for most civil litigation." *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1252 (9th Cir. 1997).  Here, far from an allegation supporting "actual malice," the Complaint alleges that Ms. Kardashian "erroneously" used the DONALD JUDD name and identity (¶ 174) and that *she* was "misled" (¶ 158).  Moreover, Ms. Kardashian even offered to include a retraction in the caption of the Video, after learning that the Tables and Chairs were apparently not authentic DONALD JUDD pieces.  (¶ 84.)  Nowhere does the Complaint allege that Ms. Kardashian explicitly mentions any endorsement or sponsorship by Donald Judd.  Instead, without any plausible support, it alleges that any association with Mr. Judd or the Judd Foundation is "implied."  (¶ 179.)  As is evident from the Video, Ms. Kardashian's

Cooley LLP
Attorneys at Law

13

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

commentary two-minutes into the tour was an errant reference that the Tables and Chairs she paid for are "Donald Judd" furniture (Video at 2:20) – not that she has some sort of sponsorship or endorsement arrangement with Plaintiff.

Incidentally, had the Tables and Chairs been authentic Donald Judd furniture, Ms. Kardashian's reference to Mr. Judd would constitute a quintessential example of nominative fair use, as Ms. Kardashian is entitled to describe the features of her office. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) (use of a mark "does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source.")  Put another way, simply mentioning the name of a designer or manufacturer of a décor item one has purchased for their office or dwelling does not imply that the designer or manufacturer "endorsed" or "sponsored" that customer.[9]  That's the case even where one gets the name of the designer wrong.  Here, Plaintiff's allegation that Ms. Kardashian intended to confuse consumers into believing Judd Foundation actually endorsed the SKKN BY KIM brand is conclusory, contradicted elsewhere in the Complaint (*e.g.* at ¶ 158), and belied by the entirety of the video.  As such, it is not plausible.[10]  The high standard for actual malice is simply not met here.

### C.    The Complaint Fails to Plausibly Allege Likelihood of Consumer Confusion As to Endorsement

Although the noncommercial nature of the Video, alone, bars Plaintiff's false endorsement claim, the claim fails for an additional reason: Plaintiff does not and cannot plead facts establishing a likelihood of confusion as to endorsement of Ms. Kardashian by Donald Judd.

Here, there is no legal basis for what is essentially a "reverse false endorsement" claim (i.e., the purported endorsement of a world-renowned celebrity by an inarguably lesser-known, deceased designer).  The Complaint alleges that Ms. Kardashian herself is a celebrity with significant and

---

[9] Imagine the consequences if one could be sued for false endorsement by the estate for Henry Ford for saying in an Instagram video that they love their "new Ford."

[10] Plaintiff's allegation, on the one hand, that Ms. Kardashian's reference to Donald Judd in the video was "intentional" (¶ 67) and its allegation, on the other hand, that Ms. Kardashian used Mr. Judd's name "erroneously" (¶ 174) and that she was "confused" (¶ 115) are glaring inconsistencies in the Complaint.  T

recognized endorsement value.  (¶¶ 47, 49; fn. 3, *supra*.)  Viewers of the Video[11] watched it out of their interest in Ms. Kardashian, her life, and her likes.  There are no allegations that an *appreciable* number of Ms. Kardashian's fans would recognize Donald Judd, let alone be confused that Mr. Judd endorsed Ms. Kardashian or the SKKN BY KIM brand.  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996) ("[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.").)  There is no precedent for finding false endorsement liability under these circumstances.

**First**, as a preliminary defect, the Complaint is unclear as to (1) who or what is allegedly being falsely endorsed and (2) which consumers are allegedly being confused.  On the one hand, Plaintiff sued Ms. Kardashian personally, and in some parts of the Complaint alleges that consumers are likely to be confused into believing that Mr. Judd *endorsed Ms. Kardashian personally*.  (¶¶ 79, 81.)  On the other hand, Plaintiff alleges that the confusion as to endorsement concerns the SKKN BY KIM business and products.  (¶¶ 81, 178.)

If its theory is the former, it is nonsensical.  Ms. Kardashian is one of the most recognized celebrities in the United States.  Any claim that she personally benefitted from a reference to Donald Judd made while describing furniture in her 13-minute office tour (*see supra* II.C.) is implausible.  Moreover, if this is Plaintiff's contention, then Plaintiff has failed to identify any product or service allegedly being falsely endorsed, warranting dismissal.  *See McGillvary v. Vonkurnatowski*, 2024 U.S. Dist. LEXIS 65993, *7 (C.D. Cal. Apr. 10, 2024) (dismissing false endorsement claim based on use of plaintiff's likeness in defendant's personal YouTube video where plaintiff did not plead "the existence of any good, service, or advertisement as the subject of his allegedly false endorsement").

If its theory is the latter, SKKN BY KIM is not a defendant in this case.  But *even if* SKKN BY KIM were a defendant, Plaintiff's conclusory allegation that consumers are likely to be

---

[11] According to the Complaint, the Video had 3.7 million views as of the date the Complaint was filed.  (¶ 6.)

Cooley LLP
Attorneys at Law

15

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

confused as to its or Mr. Judd's sponsorship or approval of the SKKN BY KIM beauty brand is just as implausible.

**Second**, the Complaint obfuscates the identity of the hypothetical consumer allegedly confused by the Video. Lanham Act claims require proof of *probable* confusion among reasonably prudent consumers of the relevant parties' products or services. *Murray*, 86 F.3d at 861. The Complaint is purposefully vague on this point: is it supposedly one of Ms. Kardashian's fans, who watched the video beyond the two-minute mark and heard the phrase "Donald Judd tables?" And if so, to what effect? And *what* exactly were they confused was being endorsed? They already chose to watch the Video before they knew what awaited them minutes into it. Or, is the consumer supposedly somebody who would spend meaningful money to purchase high-end beauty products like the SKKN BY KIM line? It is not plausible that those seeking SKKN BY KIM beauty products ever sought those products due to some speculative and absurd notion that Ms. Kardashian was "endorsed" by Mr. Judd during an office tour video. And if the Complaint is clear on one point, it is that consumers of Mr. Judd's furniture could not possibly be confused. Why would they be? Ms. Kardashian doesn't sell furniture. And Plaintiff's furniture is scarcely sold and costs tens of thousands of dollars. (¶ 45.) The failure to identify the so-called consumer at issue is fatal to the claim.

**Third**, beyond these defects, "[u]nder the law of false endorsement, likelihood of customer confusion is the determinative issue." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002). Recognizing that the traditional multi-factor test for analyzing trademark likelihood of confusion is not always applicable to false endorsement cases involving a "celebrity," in those cases the Ninth Circuit applies the modified multi-factor test laid out in *Downing*. The "restate[d]" factors include:

> (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines.

*Downing*, 265 F.3d at 1007–08. Although all of these factors are appropriate for consideration,

"they are not necessarily of equal importance, nor do they necessarily apply to every case." *Id*. at 1008. "The list of factors is not a score-card—whether a party 'wins' a majority of the factors is not the point." *Fifty-Six Hope*, 778 F.3d at 1069 (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). Moreover, the "strength of association between the mark and the plaintiff" becomes an additional relevant factor where, as here, the plaintiff is not the celebrity himself. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1217 (C.D. Cal. 2000).

"Courts may determine likelihood of confusion as a matter of law on … a motion to dismiss." *Infostream Grp. Inc. v. Avid Life Media Inc.*, 2013 WL 6018030, at *3 (C.D. Cal. Nov. 12, 2013) (citing *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996)); "[C]ourts have not hesitated to dismiss claims at the pleading stage where there is no likelihood [of confusion] as a matter of law," as is the case here. *Performance Designed Prods. LLC v. Plantronics, Inc.*, 2019 WL 3082160, at *4 (S.D. Cal. July 15, 2019) (citing cases); *see also Dfinity Foundation v. Meta Platforms, Inc.*, 2022 WL 16857036, *11–12 (N.D. Cal. Nov. 10, 2022) (granting motion to dismiss Lanham Act claim after analyzing and weighing likelihood of confusion factors). Courts also dismiss false endorsement claims based on merely conclusory allegations of consumer confusion. *See Chaquico v. Freiberg*, 274 F.Supp.3d 942, 952 (N.D. Cal. 2017) (dismissing false endorsement claim where First Amended Complaint was "devoid of allegations explaining how the advertisements create the misimpression that Plaintiff sponsors, endorses, or is affiliated with" Defendants).

As a matter of law, Plaintiff fails to state a plausible claim for false endorsement.

### 1. The Complaint Fails to Plausibly Plead Recognition of "Donald Judd" Among Relevant Purchasers

Setting aside the above defects, Plaintiff fails to allege that Mr. Judd or Judd Foundation enjoys a high degree of recognition among SKKN BY KIM consumers or Ms. Kardashian's fans. In context, Ms. Kardashian's prefatory comment in the video, "*If* you guys are furniture people," suggests that her viewers are ***not*** necessarily "furniture people." (Video at 2:20.) The rest of the short segment of the nearly 13-minute video in which the Tables and Chairs are discussed suggests that viewers would not already recognize Donald Judd or his furniture. Ms. Kardashian is exposing

her viewers to something new.  This is evidenced by Ms. Kardashian pointing out that the tables "blend in with the seats" (¶ 66), which one who recognized Donald Judd or the La Mansana table and Chair 84 would already know (*See*, *e.g.*, ¶ 39 ("This DONALD JUDD Integrated Trade Dress has been recognized by design critics, who have noted that the table and chairs 'merge into one block, closing space within it'").)  And even if one were to speculate that a handful of Ms. Kardashian's millions of followers recognize the Donald Judd name (notwithstanding that they are not purchasers of his sparsely sold, expensive furniture), that is insufficient to plausibly state a high degree of recognition.  (¶ 45.)  And, as also noted above, there are no allegations regarding recognition of Plaintiff's name among beauty product purchasers.

### 2.     Any Fame Donald Judd May Have Achieved As An Artist is Unrelated to the SKKN BY KIM Beauty Products

This factor adjusts the second *Sleekcraft* factor ("relatedness of the goods") to apply to celebrity false endorsement cases.  Donald Judd was an art critic and artist specializing in minimalist art.  (¶¶18–19.)  Related goods (or services) are those "which would be reasonably thought by the buying public to come from the same source if sold under the same mark."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n.10 (9th Cir. 1979).  As alleged in the Complaint, to the extent Mr. Judd enjoys any degree of fame, it is tied to his art and furniture.  (*See*, *e.g.*, ¶¶ 19 ("Mr. Judd became widely known for his…sculptures that incorporate repetition of geometric shapes at an impressive scale"); 20 (discussing coverage of Mr. Judd's "exhibitions," "legacy," and "art" in publications and documentaries); 28 (citing newspapers and magazines that "have all featured and discussed Mr. Judd's furniture"); 171 (describing Mr. Judd's fame as "from his works' exhibition in world-class art museums and coverage in leading media publications").)  Mr. Judd did not make or sell beauty care products, and neither does Judd Foundation.  Ms. Kardashian, similarly, does not sell furniture.  This is not like in *Downing* where the plaintiffs' fame was based on their surfing success and Abercrombie used their names and images to promote its surf apparel. *Downing*, 265 F.3d at 1008.  Mr. Judd's fame and the SKKN BY KIM beauty products (to the extent they could be considered given that the company is not a defendant) are not related, and this is further supported by Plaintiff's allegations that DONALD JUDD furniture is sold through "a

Cooley LLP
Attorneys at Law

18

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

handful of exclusive art galleries" and "select retail stores—like the MoMA Design store."  (¶ 26.)

**3.    There is a Single Reference to "Donald Judd Table" in the 13 Minute Video**

The third factor under *Downing* considers "the similarity of the likeness used by the defendant to the actual plaintiff." *Downing*, 265 F.3d at 1008.  Although Ms. Kardashian refers to "Donald Judd" in the Video, she does so only once out of the entire 13-minute video.  (Video at 2:25.)  When considered in the context of the entire video – not the still screenshots in the Complaint – this single reference is insignificant.  One would only happen upon the accused segment if they elected to watch the Video (due to interest in Ms. Kardashian) and were paying close attention two minutes into it, and, arguably then, only if one had captions on and could decipher the name "Donald Judd."  Importantly, Plaintiff does not and cannot allege that Ms. Kardashian used the reference as a "hook" to entice viewers to watch the rest of the video or purchase SKKN BY KIM products. *See Yeager*, 673 F. Supp. 2d at 1094 ("Plaintiff further asserts that his name was used as a 'hook' to entice an audience to read about defendant's improved services").  Nor does the Complaint allege (because it cannot) that the Video was promoted as featuring artist or designer endorsements of Ms. Kardashian.

**4.    The Complaint Fails to Plausibly Allege Actual Confusion As To Endorsement**

Plaintiff does not plausibly allege that any consumers have actually been confused as to Donald Judd's or the Judd Foundation's endorsement of Ms. Kardashian or the SKKN BY KIM brand.  And given that the Video is down, future hypothetical "confusion" is similarly speculative.

The only allegations in the Complaint relating to *purported* confusion suggest that third parties erroneously believed (allegedly like Ms. Kardashian) that the Tables and Chairs were original DONALD JUDD furniture.  (¶ 80–82.)  In any event, these examples do not reflect confusion as to endorsement and do not relate to confusion affecting the sale of a product or service.  In the example from X.com (which appears to have been taken down), the user merely indicates that Ms. Kardashian has "just discovered Donald Judd."  (¶ 81.)  That says nothing of "endorsement."  Similarly, among the comments to David Eardley's Instagram post is one that

states, "She probably didn't even know who [Donald Judd] was until an interior decorator told her to get it," indicating the commenter's recognition that Ms. Kardashian simply purchased the furniture and did <u>not</u> obtain Judd Foundation's sponsorship or endorsement.  (¶ 82.)  The other allegations, from publications covering the Video and mentioning that the SKKN BY KIM office contained Donald Judd furniture, do not at all suggest the authors (who are not consumers, anyhow) believed Donald Judd or Judd Foundation endorsed the SKKN BY KIM brand or Ms. Kardashian.  (¶ 80, 82.)

The only other purported instance of "confusion" alleged in the Complaint is the StockX article discussed above (*supra* at 8), which Plaintiff completely mischaracterizes as suggesting an affiliation between Ms. Kardashian and Donald Judd.  (¶ 83.)  In fact, the Article discusses the relationship between furniture and fashion, generally, and makes only a passing reference to the Video.  (Ghazarian Decl., Ex. 2 at p.1.)  The relevant portion of the Article, which Plaintiff misleadingly excerpted in the Complaint, is included, in full, below:

> Watching the tour, one might get the sense that the function of the furniture feels less important than its role as an extension of Kim's clothing itself. The warm wood grain of the Judd dining set and deep chocolates of the Rick Owens sofa, impressive but unobtrusive, play to the largely neutral palette of the Skims brand.

(*Id.*)  As an initial observation, this excerpt refers to Ms. Kardashian's **SKIMS** clothing brand, which is not at issue in the Complaint.  At most, the article suggests that Ms. Kardashian chose to design her office with furniture that has a similar aesthetic to her clothing line.  It describes Ms. Kardashian "excitedly shar[ing] the furniture by Donald Judd and Rick Owens that she's had installed in the [office] space," as anyone making a major purchase might do.  (*Id.*)  These statements do not suggest the author believed Plaintiff sponsored or endorsed Ms. Kardashian.

In *Kournikova*, the court made a similar distinction as to alleged confusion.  In that case, the court considered as evidence a class action lawsuit that was filed by readers of the Defendant's magazine, who were disappointed to learn that the purported photographs of Anna Kournikova were actually of another woman.  *Kournikova*, 278 F. Supp. 2d at 1124.  The court held that "[w]hile the class action may demonstrate that individuals purchased *Penthouse* because they hoped or believed that it contained pictures of Kournikova, no evidence is offered to show, nor is it argued,

Cooley LLP
Attorneys at Law

20

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

that the class action plaintiffs believed that Kournikova **voluntarily** posed for the pictures or endorsed *Penthouse*." *Id.* (emphasis in original). The same is true of the examples of purported confusion cited in the Complaint. *Even if* the examples of confusion cited in the Complaint relate to questions over the authenticity of the furniture, they do not suggest confusion as to sponsorship or endorsement – which is Plaintiff's claim here.

### 5.    The Parties Use Different Marketing Channels

"In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014). Nowhere does the Complaint allege that the parties have the same customer base or advertise and market their products in similar ways. Judd Foundation's target consumers are "art collectors," "design enthusiasts," and "well-known celebrities." (¶ 27; *see also* Dkt. 37 at 12 ("Judd Foundation uses a 'manner of advertising' that directly targets the 'art collectors,' 'design enthusiasts,' and 'well-known celebrities' who are buyers or potential buyers of the DONALD JUDD Trade Dress.") Plaintiff also markets DONALD JUDD furniture through its website, "editorial pieces and by its authorized retailers through exhibitions." (¶ 27.) Indeed, the Complaint emphasizes Plaintiff's "exclusive" and "highly selective" sales and marketing channels. (¶¶ 26, 27.)

Again setting aside the defect that SKKN BY KIM is not a defendant, the Complaint does not allege that the marketing channels for Donald Judd furniture are the same as those for SKKN BY KIM beauty products. SKKN BY KIM beauty products are widely promoted on the company's social media channels, not Plaintiff's "highly selective" channels. (Ghazarian Decl., Ex. 6.) Nor do Plaintiff's art galleries and authorized furniture retailers sell beauty products. (¶ 44.) Although Plaintiffs attempt to draw a connection between consumers of Donald Judd furniture and the "furniture people" Ms. Kardashian refers to in her video, the Complaint does not allege that any "furniture people" who watched the Video comprise the SKKN BY KIM customer base. (¶ 7.) Consumers of beauty products are simply not the same as consumers of Plaintiffs' $90,000 table and $9,000 chairs. (¶ 45.) Consideration of this factor also favors dismissal.

Cooley LLP
Attorneys at Law

21

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

### 6.      Any Consumers That Recognize Donald Judd Are Discerning

The sixth *Downing* factor is the degree of purchaser care, although this factor can only weigh in favor of Ms. Kardashian because the Video is not selling anything, much less furniture. For this factor, "the inquiry is whether consumers are likely to be particularly careful in determining who endorses the [defendant's products], making confusion as to [the plaintiff's] endorsement more likely." *Downing*, 265 F.3d at 1008.  As discussed above, it is unclear who or what Plaintiff claims was "falsely endorsed" by Donald Judd—is it Ms. Kardashian herself or SKKN BY KIM, which is not even a defendant in this case?  Moreover, as discussed above, the premise of this argument is dangerously absurd: that mentioning the name of the maker of a print, painting, sculpture, or décor in one's office implies *endorsement* by that artist.  That is simply implausible.

Here, playing along with Plaintiff's speculation, to the extent a viewer of the Video recognized "Donald Judd," (and again, only after choosing to watch the video in the first place and waiting to get two minutes into it) those viewers would be "particularly careful" in determining whether Mr. Judd or Plaintiff provided their endorsement. *Id.*  Where the goods or services at issue are expensive, consumers exercise a high degree of care.  *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015).  Donald Judd furniture is incredibly expensive, and Plaintiff is allegedly selective as to who may sell and market it.  (¶ 26, 30, 45.)  Relevant consumers – if they are one of the very few who might afford and consider Donald Judd furniture – would be particularly discerning before reaching the conclusion that a reference to Donald Judd or his furniture is an endorsement by him.  In the context of an office tour given by one of the most famous people in the world, it is wholly implausible that a viewer would be confused into believing that Plaintiff endorsed Ms. Kardashian or the SKKN BY KIM brand.

### 7.      The Complaint Fails to Plausibly Allege Intent

In analyzing this factor in the context of a false endorsement claim, "[t]he relevant question is whether [Ms. Kardashian] intended to profit by confusing consumers concerning the endorsement of [SKKN BY KIM products]." *Downing*, 265 F.3d at 1008.  The closest the Complaint comes to an allegation bearing on this factor is the claim that "Ms. Kardashian deliberately named Mr. Judd—as she did the other designers—and utilized the DONALD JUDD

Cooley LLP
Attorneys at Law

22

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS

trademark to give the impression that she and her SKKN BY KIM brand were connected, affiliated, associated with, or otherwise endorsed by Mr. Judd and the DONALD JUDD brand." (¶ 67.)  For many reasons, this allegation is conclusory and implausible.  First, as covered above, the Complaint alleges that Ms. Kardashian's use of Donald Judd's name was *erroneous* (¶ 174), which is inconsistent with "intent."  Second, Plaintiff does not allege that the alleged "false endorsement" resulted in (or is even likely to result in) higher profits or sales for Ms. Kardashian (whatever that means) or for third party SKKN BY KIM.  Moreover, the conclusion that Ms. Kardashian intended to benefit herself (or the SKKN BY KIM brand) from a two-second reference to Donald Judd is entirely speculative.  Ms. Kardashian's decision to purchase furniture and share it with her fans does not mean she intended to profit by confusing consumers that the Plaintiff endorsed her business.  Especially in the context of an office video tour of her non-public office, Plaintiff's allegations of intent are as baseless, unsupported, and legally untenable, as is its claim overall.[12]

\*　　　\*　　　\*

There is no set of facts upon which Plaintiff could plausibly allege that Ms. Kardashian's "erroneous" reference to "Donald Judd" is likely to cause consumer confusion as to Plaintiff's endorsement of her (much less the SKKN BY KIM business).  Thus, the false endorsement claim should be dismissed with prejudice.

## V.　CONCLUSION

The Complaint fails to state a plausible claim for relief against Ms. Kardashian.  For all the foregoing reasons, the Court should dismiss Plaintiff's Lanham Act false endorsement claim against Ms. Kardashian with prejudice.  *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt, Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (leave to amend should be denied where amendment would be futile).

---

[12] The last *Downing* factor (likelihood of expansion) also favors dismissal. Since the lawsuit was filed without notice, the Video has been removed.  The Tables and Chairs are located within a private office, out of the public eye.  And there are no allegations that Ms. Kardashian intends to sell future.

1   Dated: June 27, 2024                    COOLEY LLP

2

3                                           By:

4                                               Michael G. Rhodes
                                                Bobby Ghajar
                                                Colette Ghazarian
5

6                                           Attorneys for Defendant
                                            KIM KARDASHIAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

Def. K. Kardashian's Notice of
Mtn and Mtn to Dismiss
Case No. 2:24-cv-02496-MEMF-AS