DAVID H. BERNSTEIN
(CA Bar No. 336551)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
Tel:    (212) 909-6696
Fax:    (212) 521-7696
Email:  dhbernstein@debevoise.com

MEGAN K. BANNIGAN
(admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel:    (212) 909-6000
Fax:    (212) 909-6836
Email:  mkbannigan@debevoise.com

RUSSELL M. SELMONT
(CA Bar No. 252522)
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, 12th Floor
Beverly Hills, CA 90212-2974
Tel:  (310) 273-6333
Fax:  (310) 859-2325
Email:  rselmont@ecjlaw.com

*Attorneys for Plaintiff*
JUDD FOUNDATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDD FOUNDATION,<br><br>                              Plaintiff,<br><br>           v.<br><br>CLEMENTS DESIGN, INC. AND KIM KARDASHIAN,<br><br>                              Defendants. | Case No.:  2:24-cv-02496-MEMF-AS<br><br>**PLAINTIFF JUDD FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO KIM KARDASHIAN'S MOTION TO DISMISS**<br><br>Hearing Date:  October 10, 2024<br>Time:  10:00 am<br>Court:  Courtroom 8B. 8th Floor<br>Judge:  Hon. Maame Ewusi-Mensah Frimpong |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

I.   Judd Foundation and Its Rights in Mr. Judd's Name and Identity. ............................... 2

II.  Ms. Kardashian's Social Media Advertising. ................................................................ 3

III. Ms. Kardashian's False Endorsement. ........................................................................... 4

IV.  The Aftermath and Harm to Judd Foundation. .............................................................. 5

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

I.   Judd Foundation Has Standing ...................................................................................... 8

II.  The SKKN BY KIM Office Tour Video Is Not Protected by the First Amendment ............... 11

III. Judd Foundation Has Sufficiently Pled False Endorsement. ....................................... 17

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*6th Street Partners, LLC v. Board*,
No. 21-06595-RSWL-JPRx, 2021 WL 8445826 (C.D. Cal. Dec. 3, 2021) ............. 10

*Am. Intern. Grp., Inc. v. Am. Intern. Bank*,
926 F.2d 829 (9th Cir. 1991) ................................................................. 20

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ............................................ 11, 12, 13, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................ 8

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
644 F. Supp. 3d 602 (C.D. Cal. 2022) ......................................................... 3

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. 60 (1983).............................................................................. 11

*Catholic League for Religious & C.R. v. City & Cnty. Of S.F.*,
624 F.3d 1043 (9th Cir. 2010) ................................................................. 9

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) .................................................... 13, 15, 19

*Eastwood v. Nat'l Enquirer, Inc.*,
123 F.3d 1249 (9th Cir. 1997) ............................................................ 16, 17

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ................................................................. 8

*EIS, Inc. v. WOW Tech Int'l GmbH*,
No. CV 19-1227-LPS, 2020 WL 7027528 (D. Del. Nov. 30, 2020) ...................... 13

*Falcon Foto, LLC v. Domain Mgmt. Servs.*,
LLC, No. CV 10-6469 CAS JCX, 2010 WL 4916645 (C.D. Cal. Nov. 29, 2010).. 17

*Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A. Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ..................................................................... 14, 19, 24

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ................................................................................ 21

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
  No. 3:16-CV-0480, 2022 WL 104730 (S.D. Cal. Jan. 11, 2022) ........................... 13

*Harte–Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ................................................................................................ 16

*Henley v. Devore*,
  No. SACV 09-0481-JVS, 2009 WL 10697982 (C.D. Cal. July 8, 2009) ............... 19

*Hoffman v. Cap. Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001) ............................................................... 11, 14, 16, 17

*Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*,
  No. 2:17-cv-076688-RGK-SS, 2018 WL 4962086 (C.D. Cal. Jan. 26, 2018) ........ 10

*Intenze Prod., Inc. v. TCM Supply Corp.*,
  No. 23-55710, 2024 WL 511878 (9th Cir. Feb. 9, 2024) ....................................... 23

*Kournikova v. Gen. Media Commc'ns Inc.*,
  278 F. Supp. 2d 1111 (C.D. Cal. 2003) .................................................................. 14

*Lexmark Intern., Inc. v. Static Control Components*,
  572 U.S. 118 (2014) ............................................................................................. 9, 10

*Longoria v. Kodiak Concepts LLC*,
  527 F. Supp. 3d 1085 (D. Ariz. 2021) .................................................................... 23

*Lucent Techs. v. Johnson*,
  No. CV 00–05668–GHK RNBX, 2000 WL 1604055 (C.D. Cal. Sept. 12, 2000) .. 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 8, 9, 10

*Manzari v. Associated Newspapers Ltd*,
  No. CV 13-6830-GW(PJWX), 2014 WL 12967363 (C.D. Cal. Mar. 21, 2014) ..... 17

*McGillvary v. Vonkurnatowski*, No. 2:22-cv-08587-FLA (AGRx), 2024 U.S. Dist.
  LEXIS 65993 (C.D. Cal. Apr. 10, 2024) ................................................................ 19

iii

*Miller v. Easy Day Studios Pty Ltd*,
   20CV02187-LAB-DEB, 2022 WL 20289094 (S.D. Cal. Sept. 16, 2022) .......... 9, 10

*Monster Energy Co. v. Vital Pharms., Inc.*,
   No. EDCV 18-1882 JGB, 2023 WL 2918724 (C.D. Cal. Apr. 12, 2023) .............. 12

*New Kids on the Block v. News Am. Publ'g., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ................................................................................ 18

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................................. 16

*Playboy Enters., Inc., v. Netscape Commc'ns Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ............................................................................. 23

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ............................................................................... 7

*Schroeder v. Volvo Grp. N. Am., LLC*,
   No. LACV2005127VAPPVCX, 2020 WL 6562242 (C.D. Cal. Sept. 3, 2020) ...... 21

*Seattle Pac. Univ. v. Ferguson*,
   104 F.4th 50 (9th Cir. 2024) ................................................................................ 10

*Simon v. Eastern Ky. Welfare Rts. Org.*,
   426 U.S. 26 (1992) ............................................................................................... 10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................... 8

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ............................................................................... 23

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
   No. CV-19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ............. 9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................... 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................. 4, 8

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020) ................................................................. 20

iv

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992) ................................................................. 9

*Wendt v. Host, Int'l, Inc.*,
  125 F.3d 806 (9th Cir. 1997) ................................................... 20, 22, 23

*White v. Samsung Elecs. Am., Inc.*,
  971 F.2d 1395 (9th Cir. 1992) ........................................................ 22, 23

*Yeager v. Cingular Wireless LLC*,
  627 F. Supp. 2d 1170 (E.D. Cal. 2008) ................................. 11, 15, 16

*Yeager v. Cingular Wireless LLC*,
  673 F. Supp. 2d 1089 (E.D. Cal. 2009) ................................. 12, 14, 22

**Statutes**

15 U.S.C. § 1125(a) ......................................................... 17, 18, 19, 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................... 7

Fed. R. Civ. P. 12(b)(6) ............................................................... 7

1        Plaintiff Judd Foundation ("Judd Foundation" or the "Foundation") respectfully submits this

2     opposition to Defendant Kim Kardashian's ("Ms. Kardashian") Motion to Dismiss (the "Motion")

3     (ECF No. 50).

## INTRODUCTION

5        Ms. Kardashian is a successful entrepreneur who, like many other brand owners, leverages

6     social media to advertise and promote her brands, and regularly partners with other celebrities and

7     brands to make her own brands more appealing to consumers.  In August 2022, Ms. Kardashian

8     posted to YouTube a promotional video tour of her eponymous, newly-launched SKKN BY KIM

9     office in which she showcased and discussed the brand's skincare products (the "Video" or "SKKN

10    BY KIM Office Tour Video").  Ms. Kardashian has garnered a reputation as an art collector, design

11    enthusiast, and collaborator with famous artists and designers, and, in the Video, Ms. Kardashian

12    name-dropped the celebrity designers who contributed to the office's design.  For the "furniture

13    people" watching, Ms. Kardashian identified a set of "Donald Judd" tables and chairs that were the

14    centerpiece of the office's kitchen.  The problem is that the furniture is fake, and neither Donald

15    Judd ("Mr. Judd") nor Judd Foundation has anything to do with Ms. Kardashian and her brand.

16        Ms. Kardashian's false statement was heard by nearly four million people who were

17    erroneously led to believe that Donald Judd and Judd Foundation endorsed, sponsored, or were

18    otherwise affiliated with Ms. Kardashian and her SKKN BY KIM brand.  Ms. Kardashian's false

19    statement also was repeated in widely-read publications and on social media.  As a result, Judd

20    Foundation and Mr. Judd's legacy, reputation, and brand were harmed.  Ms. Kardashian does not

21    dispute that she made a false statement and kept the Video up, despite knowing her statement was

22    false.  Judd Foundation more than adequately pleads a false endorsement claim against Ms.

23    Kardashian, and her attempt to adjudicate the merits of Judd Foundation's claim on a motion to

24    dismiss should be rejected.

25        First, Ms. Kardashian's argument that Judd Foundation does not have standing because the

26    Foundation has not alleged an injury in fact ignores bedrock constitutional law.  As the Supreme

27    Court recently confirmed, reputational harms like those suffered by Mr. Judd and Judd Foundation

28    are precisely those encompassed by the injury-in-fact standard.

Second, Ms. Kardashian is simply wrong that her self-titled "SKKN BY KIM Office Tour" video, which extensively showcased and promoted her SKKN BY KIM products, is noncommercial speech shielded from liability under the Lanham Act. Ms. Kardashian improperly contradicts the Complaint's well-pled allegations and mischaracterizes the Video, likening it to a home tour (which it is not), and relies on decades-old print media cases. Ms. Kardashian's argument ignores that social media is the dominant for of advertising promotion that she and other brand owners' use today. Under Ninth Circuit precedent, Ms. Kardashian was engaged in patently commercial speech. That speech is not protected simply because Ms. Kardashian did not use a more traditional form of advertisement. Any holding that use of social media constitutes *per se* noncommercial speech would set a dangerous precedent.

Third, Ms. Kardashian's argument that Judd Foundation has not plausibly alleged a false endorsement claim ignores the Complaint's well-pled allegations, including that confusion is likely. Ms. Kardashian essentially argues that because she is more famous than Mr. Judd, there is no plausible claim for false endorsement. But the comparative level of fame between a plaintiff and defendant is legally irrelevant, and Ms. Kardashian cites no authority to support her argument. In fact, Ms. Kardashian's fame exacerbates the harm here, as her false statement was seen by millions of viewers. Judd Foundation's false endorsement claim is well pled and supported, and Ms. Kardashian's Motion should be denied.

**STATEMENT OF FACTS**

Judd Foundation's Complaint details the allegations and claims in this matter. The following summary is neither a replacement for the Complaint nor comprehensive of its contents. Rather, it is offered to provide a brief overview of the case and to highlight some of the key aspects that are mischaracterized and omitted from Ms. Kardashian's Motion.

**I.   Judd Foundation and Its Rights in Mr. Judd's Name and Identity.**

As the Complaint alleges, Mr. Judd was a renowned twentieth-century American artist, critically acclaimed for his distinctive minimalist art and furniture designs. Compl. ¶¶ 2, 18–22. Mr. Judd and his work have been featured in world-famous museums, documentaries, and mainstream media publications. *Id.* ¶ 2, 18–22. His DONALD JUDD furniture designs are considered "the

world's most iconic minimalist furniture," "peak Judd," and "trophies in the realms of fashion and design," *id.* ¶¶ 28, 40–41.  Mr. Judd's "influence is everywhere," and he has become "increasingly ubiquitous" in recent years.  *Id.* ¶ 20.

Judd Foundation is a non-profit dedicated to preserving Mr. Judd's legacy and owns, and scrupulously protects, the rights to Mr. Judd's name and identity, and the intellectual property rights in his art, writing, furniture, and archives.  *Id.* ¶¶ 24, 29–30, 170.  Judd Foundation, through its wholly-owned subsidiary, exclusively fabricates, sells, and authorizes for sale authentic DONALD JUDD furniture.  *Id.* ¶¶ 3, 39, 43.  Judd Foundation prohibits purchasers of authentic DONALD JUDD furniture from using Mr. Judd's name in any editorial, press, or promotional materials, and expressly states in its invoices that "[n]o editorial, press or promotional materials shall create the impression that Judd Foundation endorses or is affiliated in any way, with any product, service or company."  *Id.* ¶ 30.

**II.  Ms. Kardashian's Social Media Advertising.**

Ms. Kardashian is a world-famous celebrity and founder and CEO of SKKN BY KIM, a skincare collection she launched in June 2022.  Compl. ¶¶ 47–48; Mot at. 4–5, 12, 14.  She is a self-described "celebrity endorser" with millions of social media followers.  Compl. ¶ 49; Mot. at 5.  Like many brand owners, Ms. Kardashian also uses social media platforms, like YouTube, to promote and advertise her own brands, like SKKN BY KIM.  Compl. ¶ 49; Mot. at 21.  In particular, Ms. Kardashian's personal YouTube channel includes a link to the SKKN BY KIM commerce site as the first link at the top of her bio, many videos promoting KKW Beauty,[1] the predecessor of SKKN BY KIM, and two dedicated playlists of KKW Beauty videos with "KKW" in the title.[2]  Also like many brand owners, Ms. Kardashian often uses a long-form video blog format to promote her brands, interspersing her discussion of particular products with other topics to engage consumers.

---

[1] "KKW" stands for "Kim Kardashian West," Ms. Kardashian's legal name when she was previously married to Kanye West.

[2] *See* Kim Kardashian, YOUTUBE, https://www.youtube.com/c/KimKardashian (last visited July 25, 2024).  The Court may take judicial notice of webpages where the website's content was readily verifiable and highly relevant to the case, and where the website's authenticity is not in question.  *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 644 F. Supp. 3d 602, 606 (C.D. Cal. 2022).

**III. Ms. Kardashian's False Endorsement.**

In August 2022, two months after the SKKN BY KIM launch, Ms. Kardashian posted a video tour of the SKKN BY KIM office titled "Welcome to my Office! Official SKKN BY KIM Office Tour" to her personal YouTube channel.[3]  Compl. ¶ 60.  During the SKKN BY KIM Office Tour Video, Ms. Kardashian showcased and discussed the SKKN BY KIM skincare products extensively.  *Id.* ¶¶ 60–62.

During her discussion of SKKN BY KIM products, Ms. Kardashian also described the various art and furniture designs in the office and personal relationships she had with the designers, and "explicitly drew the connection between her SKKN BY KIM brand and these pieces." *Id.* ¶¶ 50, 62–65.  Ms. Kardashian has also garnered a reputation as an art collector, design enthusiast, and collaborator with famous artists and designers.  *Id.* ¶ 50.  She is well-known for "consistently turn[ing] to neutral colors and minimalism in her design choices." *Id.* ¶ 80.  In the Video, Ms. Kardashian explicitly likened her SKKN BY KIM product packaging to her love of "home design." (Video at 8:52–8:57).  She showcased and discussed design and art pieces from well-known artists Rick Owens, Michèle Lamy, and Vanessa Beecroft, artists with whom she has collaborated extensively in the past.  *Id.* ¶ 50; 64–66.  Right after showcasing art from Vanessa Beecroft, and explaining that she "work[s] with her all the time," Ms. Kardashian showcased knockoff DONALD JUDD furniture and intentionally, but falsely, claimed:  "If you guys are furniture people—because I've really gotten into furniture lately—these *Donald Judd* tables are really amazing."  Compl. ¶¶ 60, 65–66 (emphasis added).  Just like Ms. Kardashian deliberately name dropped and discussed partnering with other well-known artists, Ms. Kardashian deliberately used Mr. Judd's name, identity, and world-renowned artistic reputation to lend value and exclusivity to the SKKN BY KIM products she was advertising and promoting.  *Id.* ¶¶ 67, 179.  But neither Ms. Kardashian nor SKKN BY KIM is in any way affiliated with or otherwise endorsed by Mr. Judd or Judd Foundation, and

---

[3] Kim Kardashian, *Welcome to my Office! Official SKKN BY KIM Office Tour*, YouTube (Aug. 12, 2022), https://www.youtube.com/watch?v=Na811tR1gFQ.  The Video was incorporated by reference into the Complaint and is attached to the Motion in full.  On a motion to dismiss, the Court may consider documents incorporated in the complaint or matters of judicial notice.  *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

Judd Foundation categorically prohibits the use of Mr. Judd's name and identity for marketing and promotional purposes—even by purchasers of authentic DONALD JUDD furniture. *Id.* ¶¶ 68–69. As alleged in the Complaint, Ms. Kardashian's false statement is likely to mislead consumers into thinking that Mr. Judd and Judd Foundation partnered with or are otherwise associated with SKKN BY KIM, just like the other designers with whom Ms. Kardashian explicitly mentioned she worked. *Id.* ¶¶ 67–68.

**IV. The Aftermath and Harm to Judd Foundation.**

Ms. Kardashian's false and misleading use of Mr. Judd's name and identity in her SKKN BY KIM Office Tour Video was viewed 3.7 million times as of the filing of the Complaint, and was repeated by widely-read publications like *Vogue* and *Us Weekly*, consumers, and design critics on social media. *Id.* ¶¶ 80–84. This further perpetuated Ms. Kardashian's false endorsement, with at least one design critic noting that her claimed "Donald Judd" furniture was an extension of the products Ms. Kardashian advertised in the Video. *Id.* ¶ 83. The critic noted that "the function of the furniture feels less important than its role as an extension of Kim[']s clothing itself" and, specifically, "the Judd dining set" played on the "neutral palette" of Ms. Kardashian's products.[4] *Id.*

On the same day Judd Foundation learned about Ms. Kardashian's false statement, it reached out to Ms. Kardashian through her publicist to attempt to amicably resolve the issue. *Id.* ¶ 84. Ms. Kardashian acknowledged her so-called DONALD JUDD furniture was knockoff, but claimed to have just "learned" this fact. *Id.* ¶ 84. However, Defendant Clements Design, LLC ("Clements"), the fabricator and seller of the knockoff DONALD JUDD furniture, claims that Ms. Kardashian "misspoke" and was never confused as to the origin of the furniture. *See id.* ¶ 92; Clements Mot. to Dismiss (ECF No. 21-1) at 16 n.4.

---

[4] Ms. Kardashian also extensively showcased and advertised her SKIMS clothing brand in her SKKN BY KIM Office Tour Video, which, like the SKKN BY KIM products, is minimalist with a neutral palette. *See generally* Kim Kardashian, *Welcome to my Office! Official SKKN BY KIM Office Tour*, YouTube (Aug. 12, 2022), https://www.youtube.com/watch?v=Na811tR1gFQ.

In an effort to ameliorate the widespread confusion, Judd Foundation requested that Ms. Kardashian take down the SKKN BY KIM Office Tour Video, issue a corrective statement given the considerable false press coverage, and recycle the knockoff DONALD JUDD furniture (which Judd Foundation offered to replace at a discount).  Compl. ¶¶ 85–87.  Ms. Kardashian declined to do so, offering only to update the Video caption and make a social media post to promote Judd Foundation. But Judd Foundation rejected this offer, as it did not—and does not—want Ms. Kardashian to promote Judd Foundation.  *Id.* ¶ 87.  The Foundation remains only interested in Ms. Kardashian retracting her false statement that her knockoff furniture was authentic DONALD JUDD and that Judd Foundation endorsed her and allowed her to use Mr. Judd's name to promote her SKKN BY KIM brand.  Ms. Kardashian and her associates ultimately stopped responding to Judd Foundation's inquiries in August 2023.  *Id.* ¶¶ 91–93.

Despite knowing her statement was false and likely to mislead consumers, Ms. Kardashian kept the SKKN BY KIM Office Tour Video up on YouTube.  *Id.* ¶¶ 84, 177.  Only after Judd Foundation reluctantly filed this action did Ms. Kardashian take down the Video.  Mot. at 6. However, she has not issued any corrective statements, and continues to maintain and display the knockoff DONALD JUDD furniture.  And contrary to her assertion that the furniture is "located within a private office, out of the public eye," Mot. at 23 n.12, Ms. Kardashian has continued to use the knockoff DONALD JUDD furniture in social media advertisements for her SKIMS brand, even after Judd Foundation contacted her and she admitted the furniture was fake.[5]  Selected screenshots of these social media advertisements are shown below, which include photos notably taken by the aforementioned Vanessa Beecroft, Ms. Kardashian's frequent collaborator:

---

[5] *See, e.g.,* Skims (@Skims), INSTAGRAM, https://www.instagram.com/p/CvIgqWKM7qa/? (last visited July 25, 2024); Skims (@Skims), INSTAGRAM, https://www.instagram.com/p/CvNO2nCOBzW/? (last visited July 25, 2024); Skims (@Skims), INSTAGRAM, https://www.instagram.com/p/CvLTNl0tzS2/? (last visited July 25, 2024); Skims (@Skims), INSTAGRAM, https://www.instagram.com/p/Cocdz5eLkQg/?igsh=MWNiYng3aHdsaGc0Zw%3D%3D&img_index=3 (last visited July 25, 2024); @skims, X (FKA TWITTER) (July 25, 2023), https://x.com/skims/status/1683915095175229440; @skims, X (FKA TWITTER) (July 24, 2023), https://x.com/skims/status/1683552717577367554; @skims, X (FKA TWITTER) (July 26, 2023), https://x.com/skims/status/1684277541375184896.

| SKIMS Instagram Post – July 25, 2023 | SKIMS Instagram Post – July 27, 2023 |
|---|---|
|  |  |

As a result of Ms. Kardashian's actions, consumers have believed, and are likely to continue to believe, that Mr. Judd and Judd Foundation sponsored, endorsed, or are otherwise affiliated or partnered with SKKN BY KIM, harming the Foundation's and Mr. Judd's goodwill, reputation, and integrity by undermining the Foundation's ability to control its brand and Mr. Judd's name and identity.  Compl. ¶¶ 7–9, 95, 169–180.

## LEGAL STANDARD

On both a "facial" attack pursuant to Fed. R. Civ. P. 12(b)(1) and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "all factual allegations in [the] complaint are taken as true and all reasonable inferences are drawn in [the plaintiff's] favor."  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).  To survive a motion to dismiss, a plaintiff need only "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  The court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" in deciding a motion to dismiss.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Under the liberal pleading standard of Fed. R. Civ. P. 8, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" and a plaintiff need only "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 556–70 (internal quotation omitted).  Judd Foundation's Complaint easily satisfies this standard.

## **ARGUMENT**

### **I.    Judd Foundation Has Standing**

To plead Article III standing, a plaintiff need only allege, *not prove*, that it suffered an "injury in fact that is (1) concrete and particularized, (2) traceable to the defendant, and (3) redressable by judicial order."  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The Complaint alleges that Mr. Judd and Judd Foundation suffered reputational harm from Ms. Kardashian's false statement, which was likely to (and in fact did) confuse consumers as to sponsorship or approval of fake DONALD JUDD furniture by the DONALD JUDD brand.  Compl. ¶¶ 7–9, 95, 169–180.  This alleged injury clearly satisfies Article III standing.[6]

*First*, the harm to Judd Foundation's reputation and goodwill is concrete and particularized. An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  Concrete injuries must be "de facto"—meaning they actually exist—but can be "intangible."  *Id.* at 340.  As the Supreme Court recently confirmed, reputational harm is a type of concrete harm that satisfies Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("reputational harms" are type of "intangible harms" that

---

[6] Judd Foundation owns the DONALD JUDD trademark and the rights to Mr. Judd's name and identity, *id.* ¶ 170, the reputation of which were harmed by Ms. Kardashian's false statement. Judd Foundation is the proper plaintiff, not Donald Judd Furniture LLC, as Ms. Kardashian suggests. Mot. at 10–11.

"readily qualify as concrete injuries under Article III").  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (internal quotations omitted).  "[S]tanding analysis, which prevents a claim from being adjudicated for lack of jurisdiction, [may not] be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."  *Catholic League for Religious & C.R. v. City & Cnty. Of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc).

The Complaint alleges that Ms. Kardashian has harmed Judd Foundation by "undermining[ing] the goodwill and integrity of Judd Foundation's DONALD JUDD brand, including Mr. Judd's name and identity."  Compl. ¶ 8.  Courts in this Circuit routinely find that a plaintiff has standing to bring Lanham Act claims based on similar reputational injuries.  *See, e.g.*, *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1104 (9th Cir. 1992), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components*, 572 U.S. 118 (2014) (affirming jury award for false endorsement based on injury to goodwill, reputation, and future publicity value); *Miller v. Easy Day Studios Pty Ltd*, 20CV02187-LAB-DEB, 2022 WL 20289094, at *3 (S.D. Cal. Sept. 16, 2022) (denying motion to dismiss for lack of Article III standing, and rejecting defendants' argument that plaintiff's alleged injuries were "hypothetical and conclusory," where plaintiff alleged defendant's false endorsement "caused him to suffer harm to his reputation" and "lose control of his reputation and the goodwill inherent in his likeness"); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *4 (D. Ariz. Jan. 16, 2020) (Article III standing established where plaintiff alleged that defendant's false advertising caused harm to his business, reputation, and goodwill).

Furthermore, like in *Waits*, there is "added . . . evidence" of harm because Judd Foundation prohibits purchasers from using its furniture in promotional materials to imply endorsement, so Ms. Kardashian's false statement made Judd Foundation an "apparent hypocrite."  978 F.22d at 1103 (finding injury due to "the strong inference that, because of [Waits'] outspoken public stance against

1  doing commercial endorsements, the Doritos commercial humiliated Waits by making him an

2  apparent hypocrite"); *see* Compl. ¶ 30.  Judd Foundation has alleged an injury in fact.

3      *Second*, Judd Foundation's reputational and goodwill injuries are "fairly trac[eable]" to Ms.

4  Kardashian's actions and not the result of "independent action of some third party not before the

5  court." *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26,

6  41–42 (1992)).  This standard is not demanding, and requires less than a showing of proximate cause.

7  *Lexmark*, 572 U.S. at 134 n.6.  The Complaint alleges that Ms. Kardashian's advertisement and the

8  implied endorsement therein harmed Mr. Judd and Judd Foundation because it undermines the

9  ability to control Mr. Judd's name and identity and the DONALD JUDD brand.  The alleged harm is

10  "fairly traceable" to Ms. Kardashian's conduct and sufficient to establish standing.  *See Miller*, 2022

11  WL 20289094, at *3 (finding alleged false endorsement "fairly traceable" to defendant where

12  complaint asserted "unauthorized use of Miller's image and likeness in Skater XL has affected his

13  ability to maintain existing, and obtain new, sponsors, and has caused him to suffer harm to his

14  reputation" (internal quotations omitted)); *Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*,

15  No. 2:17-cv-076688-RGK-SS, 2018 WL 4962086, at * 6 (C.D. Cal. Jan. 26, 2018) (finding standing

16  where plaintiff alleged that "H&M's misappropriation of the[] name caused injury including damage

17  to marketing and publicity value and loss of goodwill").

18      *Third*, Judd Foundation's injuries are redressable.  An injury is redressable where it is "likely,

19  as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*,

20  504 U.S. at 560 (internal quotation marks omitted).  A plaintiff can establish redressability by

21  showing a court-ordered injunction would redress its injuries.  *See Seattle Pac. Univ. v. Ferguson*,

22  104 F.4th 50, 62–63 (9th Cir. 2024) (finding standing where "injunctive relief would directly redress

23  the injury").  Judd Foundation seeks, among other things, injunctive relief requiring Ms. Kardashian

24  to correct her false statement, recycle her infringing furniture, and permanently delete the Video

25  such that it cannot be reposted online.  Compl. ¶ 93.  *See 6th Street Partners, LLC v. Board*, No. 21-

26  06595-RSWL-JPRx, 2021 WL 8445826, at *3 (C.D. Cal. Dec. 3, 2021) (holding alleged reputational

27  injuries from defendant's alleged unauthorized trademark use were likely redressable by injunctive

28  relief).  Indeed, that Ms. Kardashian took down the SKKN BY KIM Office Tour Video mere hours

1  after Judd Foundation filed the Complaint—after declining to remove the Video for over a year—is

2  one of many facts demonstrating both the redressability of the claim and the need for Judd

3  Foundation's suit in the first place.  *See* Mot. at 23 n.12.  Judd Foundation has more than adequately

4  alleged standing.

5  **II.    The SKKN BY KIM Office Tour Video Is Not Protected by the First Amendment.**

6       The First Amendment affords different levels of protection to commercial and

7  noncommercial speech.  *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001).  All

8  false or misleading *commercial* speech is subject to Lanham Act liability.  *Id.*  The Complaint

9  alleges numerous facts establishing that Ms. Kardashian's SKKN BY KIM Office Tour Video is

10  *commercial* speech because it promotes Ms. Kardashian's SKKN BY KIM skincare line; therefore,

11  Judd Foundation's false endorsement claim is not barred by the First Amendment.

12       **A.    The SKKN BY KIM Office Tour Video is False and Misleading Commercial**

13            **Speech Subject to Lanham Act Liability.**

14       The Supreme Court has outlined three factors for courts to consider when determining

15  whether speech is commercial:  (1) whether the speech is an advertisement, (2) whether the speech

16  refers to a particular product, and (3) whether the speaker has an economic motivation.  *Bolger v.*

17  *Youngs Drug Prod. Corp.*, 463 U.S. 60, 66–68 (1983).  Not all factors must be present in order for

18  the speech to be commercial, *id.* at 67 n.14, but a combination of them provides strong support

19  speech is commercial.  *Id.* at 67–68.

20       The commercial speech analysis is an inherently difficult "fact-driven" inquiry.  *Ariix, LLC v.*

21  *NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021).  Accordingly, "[o]n a motion to dismiss,

22  the court must take as true plaintiff's allegation that the [speech]. . . was really an advertisement"

23  and ask whether "[v]iewing the allegations in the light most favorable to the plaintiff and drawing all

24  reasonable inferences therefrom, the complaint sufficiently alleges that defendant used plaintiff's

25  name and reputation for its own advantage to promote an unrelated product or theme."  *Yeager v.*

26  *Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1175 (E.D. Cal. 2008) (hereinafter *Yeager I*)

27  (denying motion to dismiss false endorsement claim and finding that plaintiff sufficiently alleged

28  that speech was commercial).  Here, the Complaint alleges Ms. Kardashian used Mr. Judd's name

and identity to advertise unrelated SKKN BY KIM products in her SKKN BY KIM Office Tour Video, Compl. ¶ 178–179, and all three *Bolger* factors favor a finding that the Video is commercial speech subject to Lanham Act liability.

*First*, the Complaint alleges that the SKKN BY KIM Office Tour Video is an advertisement because—particularly against the backdrop of today's widespread use of social media to advertise products—Ms. Kardashian was promoting her SKKN BY KIM skincare products.  Significantly, the Video is a tour of the SKKN BY KIM *office*, *id.* ¶ 61, not a tour of Ms. Kardashian's personal home, to which the Motion attempts to liken it.  Mot. at 12.  Ms. Kardashian titled the Video "Welcome to my Office!  Official SKKN BY KIM Office Tour," prominently boasting the SKKN BY KIM mark. Compl. ¶¶ 60.  The Video also begins and ends with the SKKN BY KIM mark superimposed in large font over the Video.  (Video at 0:19; 12:33).  Ms. Kardashian's first line in the Video is:  "Hey guys, welcome to the SKKN BY KIM office."  (Video at 0:08–0:12).  Throughout the Video, Ms. Kardashian stands in front of large television screens featuring the SKKN BY KIM mark and SKKN BY KIM photo advertisements, (Video at 0:55–1:18; 8:22–8:29), and mentions SKKN BY KIM by name.  (Video at 3:39; 6:31; 7:38).  Finally, Ms. Kardashian showcased and discussed her SKKN BY KIM products extensively during the Video.  Compl. ¶ 61.  Tellingly, Ms. Kardashian posted the Video in August 2022, only two months after launching her SKKN BY KIM brand in June 2022.  *Id.* ¶¶ 48, 60.  Where a publication mentions a brand by name multiple times throughout, and the "purpose . . . was, in part, to create positive associations with the [] brand" it is a commercial advertisement even if not a "mere proposal[] to engage in commercial transactions."  *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1097 (E.D. Cal. 2009) (hereinafter *Yeager II*).

The Ninth Circuit, as well as the Federal Trade Commission, has made clear that speech that is "not in the traditional form of an advertisement" can still be commercial speech, "especially given today's sophisticated and subtle marketing campaigns."  *Ariix*, 985 F.3d at 1116.  In particular, although "social media posts may not have the indicia of a traditional advertisement, there can be little doubt that these paid posts are in fact advertisements."  *Ariix*, 985 F.3d at 1116; *see, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB, 2023 WL 2918724, at *8 (C.D. Cal. Apr. 12, 2023) (social media post on Instagram promoting defendant's product was commercial

speech not protected by the First Amendment); *see also H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, No. 3:16-CV-0480, 2022 WL 104730, at *6 (S.D. Cal. Jan. 11, 2022) (social media post on Facebook promoting a product was commercial speech under the Lanham Act); *EIS, Inc. v. WOW Tech Int'l GmbH*, No. CV 19-1227-LPS, 2020 WL 7027528, at *4 (D. Del. Nov. 30, 2020) (social media post on Instagram promoting product was commercial speech under the Lanham Act).  The Ninth Circuit has cited to Ms. Kardashian herself as an example of a "prominent influencer" who engages in commercial speech by promoting products on her Instagram account.  *Ariix*, 985 F.3d at 1116 n.5.  This is exactly the sort of commercial speech Ms. Kardashian engaged in when promoting her SKKN BY KIM products in her in SKKN BY KIM Office Tour Video.  Ms. Kardashian is, as the Motion plainly states, a "celebrity endorser," Mot. at 5 n.3, and widely promotes SKKN BY KIM products on "social media channels."  Mot. at 21; *see also* Compl. ¶ 49.

Ms. Kardashian attempts to distinguish her personal YouTube channel from her SKKN BY KIM YouTube channel, Mot. at 12, but her personal YouTube is commercial in nature:  (1) the first links at the top of her bio are to the SKKN BY KIM and SKIMS commerce sites, and (2) there are numerous videos, including two dedicated playlists, promoting KKW Beauty, the predecessor of SKKN BY KIM.[7]

Given clear Ninth Circuit precedent that commercial speech need not be in the form of a traditional advertisement, Ms. Kardashian pivots and insists that her video is not commercial speech because "[t]here is no 'call to action' in the Video asking the viewer to purchase a product."  Mot. at 12; *see also id.* at 2, 6.  But she cites no cases (because there are none) requiring commercial speech to have a "call to action."  Instead, Ms. Kardashian attempts to distinguish three cases where the court found that print media speech was "clearly advertisements," but does not explain why these cases foreclose the possibility that other forms of speech, especially in the age of social media, are also commercial.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001); *Yeager II*,

---

[7] *See* Kim Kardashian, YOUTUBE, https://www.youtube.com/c/KimKardashian (last visited July 25, 2024).

1    673 F. Supp. 2d at 1097–1098; *Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A. Inc.*, 778 F.3d 1059

2    (9th Cir. 2015).

3          Additionally, the decision in *Yeager II* was far from "clear[]," as Ms. Kardashian argues. *See*

4    Mot. at 12–13.  Rather, the court noted that the publication, an emergency preparedness pamphlet

5    published by a wireless company, "contained discussions of important public issues" and "did not

6    directly propose any commercial transactions or offer any products or services," but the *Bolger*

7    factors ultimately led the court to conclude it was commercial speech because, like the SKKN BY

8    KIM Office Tour Video, it "emphasized the benefits of defendant's [wireless] product generally," it

9    referred to the product "explicitly," and it was "reasonable to infer that defendant had an economic

10   motivation underlying the [p]ublication's distribution."  *Yeager II*, 673 F. Supp. 2d at 1097–1098.

11         The examples to which Ms. Kardashian attempts to analogize her SKKN BY KIM Office

12   Tour Video are equally unavailing.  Both *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp.

13   2d 1111, 1114 (C.D. Cal. 2003), and *Hoffman*, 255 F.3d at 1183, held magazine articles, about

14   celebrity news and fashion trends, respectively, were not commercial speech.  But these articles, as

15   is the case here, (1) were not published by the celebrities themselves in connection with their own

16   businesses, (2) did not reference particular products or services, and (3) did not attempt to sell or

17   gain any economic benefit from any featured product or service.  The court in *Hoffman* specifically

18   noted that, if the photograph at issue "appeared in a Ralph Lauren advertisement" or the magazine

19   "receive[d] any consideration from the designers for featuring their clothing" in the article, the

20   outcome would be different.  *Hoffman*, 255 F.3d at 1185.  The hypothetical facts missing from

21   *Hoffman* are present here—Ms. Kardashian's false statement appeared in her SKKN BY KIM

22   advertisement promoting the SKKN BY KIM products she sells, for which she receives

23   consideration.

24         The Complaint also satisfies the second *Bolger* factor—that the SKKN BY KIM Office Tour

25   Video refers to SKKN BY KIM products.  Compl. ¶¶ 61, 83, 178.  Not only does Ms. Kardashian

26   refer to SKKN BY KIM products, she visually showcases them and discusses what she loves about

27   them.  (Video at 5:08–5:52) ("It's just so amazing to see our packaging."); 8:32–10:15 ("I had [the

28   product] made up in real stone . . . I mean, is that not the cutest, coolest thing ever?").  Ms.

Kardashian argues the SKKN BY KIM products are not the "video's focus," Mot. at 12, but this is belied by, again, the Video title and various clips that feature the SKKN BY KIM mark, the Video being posted right after the launch of SKKN BY KIM, and the extensive product placement.  While Ms. Kardashian does discuss other topics in the Video, this is typical of the "sophisticated and subtle" social media posts the Ninth Circuit explained were commercial speech.  *Ariix*, 985 F.3d at 1116. This is alleged in the Complaint, ¶ 49, and a quick review of Ms. Kardashian's social media history confirms she often uses this long-form video blog format to promote her products, and she has repeatedly been flagged, including by the Securities and Exchange Commission (the "SEC"), for using deceptive influencer advertising that is presented as a "testimonial" rather than an advertisement.

Finally, the Complaint pleads the third *Bolger* factor—that Ms. Kardashian, as the founder and CEO of SKKN BY KIM, had economic motivation to disseminate her SKKN BY KIM Office Tour Video.  Compl. ¶¶ 12, 48.  Ms. Kardashian showcased and discussed her SKKN BY KIM products with the expectation she would reap the direct commercial benefits of increased sales of her products, and the indirect benefits of improvements to the SKKN BY KIM image and general exposure of the product line.  *See Ariix*, 985 F.3d at 1117 ("[E]conomic motivation is not limited simply to the expectation of a direct commercial transaction with consumers.  Courts have found commercial speech even when it involves indirect benefits, such as . . . improvements to a brand's image, [and] general exposure of a product[.]").

Ms. Kardashian argues that "her workplace and lifestyle are newsworthy matters of public interest"; therefore, the First Amendment defense should apply.  Mot. at 12.  But the First Amendment defense is inapplicable where the false statement is used to advance a "commercial theme or product."  *Yeager I,* 627 F. Supp. 2d at 1175; *see also Downing*, 265 F.3d at 1002) (no First Amendment defense where false statement was used "as window-dressing to advance the catalog's surf-theme").  Ms. Kardashian used Mr. Judd's name, identity, and "world-renowned artistic reputation" to advance the commercial theme of her SKKN BY KIM advertisement that touted the design and aesthetics of the SKKN BY KIM products, and increase the perceived value and exclusivity of the SKKN BY KIM brand by implying it was associated with Mr. Judd and his iconic

1  status.  Compl. ¶¶ 67, 179.  At this stage, the "court may only look at [these] allegations in the

2  complaint and must view those allegations in the light most favorable to the plaintiff[.]" *Yeager I*,

3  627 F. Supp. at 1175.

4  **B.  Judd Foundation May Also Recover Damages Because Ms. Kardashian Acted**

5  **with Actual Malice in Continuing to Broadcast Her False Statement of**

6  **Endorsement Despite Knowing It Was False.**

7  Even if Ms. Kardashian's SKKN BY KIM Office Tour Video is noncommercial speech (and

8  it is not), Judd Foundation can still "recover damages for noncommercial speech . . .  by proving

9  'actual malice.'"  *Hoffman*, 255 F.3d at 1186.[8]  Actual malice means "with 'reckless disregard for

10  the truth' or a 'high degree of awareness of probable falsity.'"  *Hoffman*, 255 F.3d at 1186 (quoting

11  *Harte–Hanks*, 491 U.S. at 667).  Ms. Kardashian acted with actual malice because she knew her

12  statements were false and could falsely imply sponsorship and endorsement by Mr. Judd and Judd

13  Foundation. *See* Clements Mot. to Dismiss at 16 n.4 (claiming Ms. Kardashian "misspoke").

14  Even if the Court accepts Ms. Kardashian's story that she "learned" her statements were false

15  in August 2022, she acted with actual malice when she refused to take down the Video, despite Judd

16  Foundation's multiple demands and expressions of concern about being discussed in Video, until

17  this action was filed in March 2024. [9]  Compl. ¶¶ 9, 84–87, 95; Mot. at 6.  Ms. Kardashian "knew . . .

18  that [her false statement] would mislead [her viewers] into thinking that" Ms. Kardashian was

19

20  —————————————

21  [8] Ms. Kardashian contends that Judd Foundation must show actual malice in order to state a false endorsement claim,
citing *Kournikova*, 278 F. Supp. at 1114, but *Kournikova* misreads *Hoffman*, 255 F.3d at 1186, which only requires

22  actual malice to recover damages in line with Supreme Court precedent.  *See Harte-Hanks Commc'ns, Inc. v.
Connaughton*, 491 U.S. 657, 659 (1989) ) ("A public figure may not recover damages for a defamatory falsehood

23  without clear and convincing proof that the false 'statement was made with 'actual malice'—that is, with knowledge that
it was false or with reckless disregard of whether it was false or not.'" (quoting *New York Times Co. v. Sullivan*, 376

24  U.S. 254, 279–280 (1964))); *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997) (explaining,
in a Lanham Act case, that a public figure can recover damages only by proving actual malice).

25  [9] Ms. Kardashian argues she could not have acted with actual malice because the Complaint alleged she acted

26  "erroneously."  Mot. at 13.  But "erroneously" simply means Ms. Kardashian made a *false* statement of endorsement, not
an accidental one.  In any event, Ms. Kardashian's knowledge about the origin of the furniture is not material to her

27  knowledge that, in keeping the video up, she was broadcasting her false statement of endorsement to millions of
followers.

28

endorsed or otherwise partnered with Mr. Judd and Judd Foundation; this is sufficient to show actual malice. *Hoffman*, 255 F.3d at 1187; *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997) (actual malice found in Lanham Act case where evidence shows "the editors intended to convey [an] impression—known by them to be false"); *Manzari v. Associated Newspapers Ltd*, No. CV 13-6830-GW(PJWX), 2014 WL 12967363, at *8 (C.D. Cal. Mar. 21, 2014), *aff'd sub nom. Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016) (actual malice found in defamation case where evidence showed plaintiff "entertained serious doubt" his statement was truthful); *Falcon Foto, LLC v. Domain Mgmt. Servs.*, LLC, No. CV 10-6469 CAS JCX, 2010 WL 4916645, at *4 (C.D. Cal. Nov. 29, 2010) (actual malice found in misappropriation of likeness case where "Plaintiff's FAC specifically alleges that Defendant 'deliberately and knowingly used [Sizemore's] persona, without permission, to draw Internet traffic to their websites'").

## III.   Judd Foundation Has Sufficiently Pled False Endorsement.

Ms. Kardashian's actions, as alleged in the Complaint, constitute a textbook false endorsement claim under 15 U.S.C. § 1125(a).  In her Motion, Ms. Kardashian erroneously mischaracterizes the claim as a "reverse false endorsement" claim, attempting to excuse her behavior because she is purportedly more famous than Mr. Judd.  *See* Mot. at 14.  The comparative level of fame between a plaintiff and defendant, however, is legally irrelevant, and Ms. Kardashian cites no caselaw in support.  In fact, Ms. Kardashian's fame exacerbates the harm here, as her false statement was seen by millions of viewers.  And notably, Ms. Kardashian does not cite to a *single* case where a court granted a motion to dismiss a false endorsement claim in her analysis of likelihood of confusion factors.  *See* Mot. 17–23.[10]  This is because Judd Foundation's claim is grounded in the text of the Lanham Act and supported by Ninth Circuit precedent.

---

[10] She also improperly attempts to shift the burden to Judd Foundation, suggesting that the Foundation did not provide her relevant case law during the Rule 7-3 conference.  Mot. at 9.  Ms. Kardashian has it backwards:  it is she who must support her Motion to Dismiss.

Judd Foundation brings its claim under 15 U.S.C. § 1125(a).  Section 1125(a)(1)(A) prohibits, in relevant part:

> [1] Any person who . . . [2] in connection with any goods or services . . . [3] uses in commerce . . . [4] any false designation of origination, false or misleading description of fact, or false or misleading representation of fact, which . . . [5] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

*Id.*

Judd Foundation has clearly stated a claim under the plain text of the statute, as the Complaint alleges:  (1) Ms. Kardashian, (2) in connection with her SKKN BY KIM goods, (3) in commerce, (4) falsely stated that she had authentic DONALD JUDD furniture, which (5) is likely to cause confusion connection, association, sponsorship, or approval by Mr. Judd and Judd Foundation of Ms. Kardashian and SKKN BY KIM goods.

*First*, Ms. Kardashian, is the proper defendant here, as she is the person who made the false statement claiming endorsement by Judd Foundation.[11]

*Second*, Ms. Kardashian made the statement "in connection with" SKKN BY KIM products. The Video is an office tour of SKKN BY KIM entitled "Welcome to my Office!  Official SKKN BY KIM Office Tour."  Compl. ¶ 60.  During the Video, "Ms. Kardashian showcased and discussed her SKKN BY KIM products extensively" and interwove discussions of artists and designers she works with.  *Id.* ¶ 61.  Ms. Kardashian spends nearly a minute explicitly discussing the packaging of the SKKN BY KIM products, and likens it to inspiration from her love of "home design."  (Video at 8:40–9:40).  Ms. Kardashian's bald assertion that Judd Foundation "has failed to identify any product or service allegedly being falsely endorsed" is contradicted by the Complaint and the SKKN BY KIM Office Tour Video, of which Ms. Kardashian asks the Court to take judicial notice.

---

[11] Ms. Kardashian's passing, hypothetical invocation of the nominative fair use defense is a non sequitur.  Mot. at 14. Ms. Kardashian does not contest that her furniture is fake, and even if the furniture were real, it would not have been necessary for Ms. Kardashian to use the DONALD JUDD name in her advertisement.  *See New Kids on the Block v. News Am. Publ'g., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

1  Furthermore, the single case Ms. Kardashian cites, *McGillvary v. Vonkurnatowski*, is  inapposite.

2  No. 2:22-cv-08587-FLA (AGRx), 2024 U.S. Dist. LEXIS 65993 (C.D. Cal. Apr. 10, 2024).  There,

3  the plaintiff was interviewed and videotaped by a local news outlet, and the defendant merely took

4  the video, superimposed his face on plaintiff's, and published the edited video to social media.  *Id.* at

5  *3.  Unlike here, the plaintiff did not "plead[] the existence of any good, service, or advertisement as

6  the subject of his allegedly false endorsement."  *Id.* at *7.

7         *Third* and *Fourth*, Ms. Kardashian's Motion does not contest that she made a false statement

8  that she had authentic DONALD JUDD furniture in commerce.  To the extent Ms. Kardashian

9  argues that the SKKN BY KIM Office Tour Video is not commercial speech, this is a distinct

10  standard and, as discussed in Section II, *supra*, incorrect.[12]  *See Henley v. Devore*, No. SACV 09-

11  0481-JVS, 2009 WL 10697982, at *2 (C.D. Cal. July 8, 2009) (defendant's noncommercial parodies

12  constituted the use of goods or services in commerce for the purposes of plaintiff's Lanham Act false

13  endorsement claim and denying defendant's motion to dismiss same).

14        *Fifth*, Judd Foundation has alleged a likelihood of confusion, which is the "determinative

15  issue" in any § 1125(a) claim.  *Fifty-Six Hope Road*, 778 F.3d at 1073.  Courts assess likelihood of

16  confusion for false endorsement claims using the nine *Downing* factors:  (1) the level of recognition

17  that the celebrity has among the segment of the society for whom the defendant's product is

18  intended; (2) the relatedness of the fame or success of the celebrity to the defendant's product; (3)

19  the similarity of the likeness used by the defendant to the actual celebrity; (4) evidence of actual

20  confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on

21  selecting the celebrity; (8) likelihood of expansion of the product lines; and (9) where plaintiff is not

22  the celebrity himself, the strength of association between the mark and the plaintiff.  *Id.* (citing

23  *Downing*, 265 F.3d at 1007–08).  Likelihood of confusion is a fact-intensive determination that is not

24

25  [12] Because the speech at issue is patently commercial, it is not, as Ms. Kardashian claims, like someone saying they love
26  their "new Ford" in a run-of-the-mill "Instagram video."  Mot. at 14 n9.  Rather, the Court should imagine the
   consequences to all brands and intellectual property rights holders if celebrities can use with impunity fake furniture to
27  advertise and promote their brands.

28

appropriate for resolution on a motion to dismiss. *See Wendt v. Host, Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997) ("The Lanham Act's likelihood of confusion' standard is predominantly factual in nature."); *Lucent Techs. v. Johnson*, No. CV 00–05668–GHK RNBX, 2000 WL 1604055, at *2 (C.D. Cal. Sept. 12, 2000) ("[T]he likelihood of confusion inquiry is a fact-intensive evaluation ill-suited for disposition on a motion to dismiss.").

As detailed below, Judd Foundation has pled facts demonstrating that consumer confusion is likely. Ms. Kardashian misconstrues the legal standard and demands more than is required at the motion to dismiss stage when she argues that Judd Foundation must provide "*proof* of probable confusion." Mot. at 16 (emphasis added). Not so. "On a motion to dismiss, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff and determines whether the complaint alleges facts to state a claim that is plausible on its face." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 973–74 (S.D. Cal. 2020) (denying motion to dismiss false endorsement claim and rejecting defendant's "merits-based arguments" on a motion to dismiss). Evidence of actual confusion is not required at this, or any, stage of a false endorsement claim. *Am. Intern. Grp., Inc. v. Am. Intern. Bank*, 926 F.2d 829, 832 (9th Cir. 1991) ("[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham [] Act."). Yet the Complaint shows that confusion is indeed probable and establishes why discovery on the issue is necessary:

- Donald Judd's name and identity and the DONALD JUDD brand have global recognition in the art, design, and fashion worlds, the same segments of society for which Ms. Kardashian's products and the SKKN BY KIM Office Tour Video are intended. Compl. ¶¶ 2, 4, 20, 23, 28, 31, 40–41, 43, 57, 171. The Complaint alleges that the "'furniture people' to whom Ms. Kardashian referred" in the Video are "design- and art-loving consumers of . . . Judd Foundation." Compl. ¶ 7. In her SKKN BY KIM Office Tour Video, Ms. Kardashian "discussed the various art and furniture pieces in the office, named their designers and creators, and described the personal relationships she had with them. Ms. Kardashian explicitly drew the connection between her SKKN BY KIM brand and these pieces." Compl. ¶ 62. Social media users and mainstream publications who

viewed the Video recognized Ms. Kardashian's use of Mr. Judd's name, demonstrating overlap in consumer segments.  Comp. ¶¶ 81–83; *see Schroeder v. Volvo Grp. N. Am., LLC*, No. LACV2005127VAPPVCX, 2020 WL 6562242, at *10 (C.D. Cal. Sept. 3, 2020) (denying defendant's motion to dismiss false endorsement claim where plaintiffs alleged that model was "known globally" and established the model's "widespread level of recognition in society").

- The Complaint alleges Mr. Judd's fame and recognition—as a leading artist and designer of high-end furniture synonymous with the minimalist movement—is related to Ms. Kardashian's brand and her SKKN BY KIM products.  Ms. Kardashian's personal brand and the SKKN BY KIM brand consistently incorporate minimalism in design choices.  Compl.  ¶ 80.   Ms. Kardashian has established a reputation as an art collector and enthusiast.  Compl. ¶ 50.  In the Video, Ms. Kardashian aligned herself and the SKKN BY KIM brand with high-end fashion designers and artists to give the brands cachet and an air of exclusivity in the fashion and design worlds.  Compl. ¶¶ 50–53.  Mr. Judd's fame and success have made his works "trophies in the realms of fashion and design."  Compl. ¶ 28.  Therefore, Ms. Kardashian's brand and the SKKN BY KIM brand benefitted from association with the DONALD JUDD brand.  In the wake of the Video, design critics noted the connection between the hallmark style of DONALD JUDD furniture and Ms. Kardashian's personal brand and the brand of her products, including SKKN BY KIM.  Compl. ¶¶ 80, 83.

- Ms. Kardashian concedes that she invoked Mr. Judd's name verbatim alongside furniture that infringed instantly-recognizable DONALD JUDD designs.  Mot. at 19.  Because the names used are identical, there is a greater likelihood of confusion.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) ("[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion.").  Yet, Ms.

Kardashian baldly asserts this was "insignificant" when viewed in context.[13]  Mot. at 19.
She provides no caselaw for this assertion, and she ignores that her invocation of Mr.
Judd was picked up by social media and leading publications connecting herself and the
SKKN BY KIM brand to Mr. Judd.  Compl. ¶¶ 81–83.  Ms. Kardashian's insistence that
Mr. Judd was not the "hook" of the Video is irrelevant—the case she cites never
suggested the need for a "hook" but simply recited the plaintiff's assertion in their
complaint without comment.  Mot. at 19; *see Yeager II*, 673 F. Supp. at 1094.

- The marketing channels used are similar because Ms. Kardashian's intended audience are
  "fans" of Mr. Judd.  *See Wendt*, 125 F.3d at 813 (finding "similarity in marketing
  channels [that] suggests that there is at least a likelihood of consumer confusion" where
  the "target audience" of the false endorsement were fans of the plaintiffs' work).  Ms.
  Kardashian's target audience were "furniture people," Compl. ¶¶ 63–66, and Ms.
  Kardashian acknowledges the Video was meant to show her fans the "artwork, décor, and
  furniture" in the office.  Mot. at 6.  It is plausible that viewers interested in Ms.
  Kardashian's furniture are fans of Mr. Judd, one of the most well-known furniture
  designers in the past century.

- The likely degree of consumer care is low, because "consumers are not likely to be
  particularly careful in determining who endorses [skincare products], making confusion
  as to their endorsement more likely."  *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395,
  1400 (9th Cir. 1992).  Ms. Kardashian improperly focuses on the price of DONALD
  JUDD furniture.  That is not the relevant inquiry.  The analysis focuses on the products
  being endorsed.  *See White*, 971 F.2d at 1400 (focusing the degree of care inquiry on the
  product featured in the advertisement).  SKKN BY KIM products can be purchased for as
  little as $22 dollars, meaning they are "inexpensive products" where "consumer care . . .

---

[13] Ms. Kardashian erroneously asserts that Judd Foundation turned on captions for the Video to highlight and decontextualize her use of Mr. Judd's name.  Mot. at 7, 19.  Ms. Kardashian hard coded the captions into the YouTube video, meaning they could not be removed or turned off, and each of the nearly 4 million viewers saw the Video in the exact same manner.

is expected to be quite low." *Playboy Enters., Inc.*, *v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004); *Lip Liner*, SKKN BY KIM, https://skknbykim.com/collections/makeup/products/lip-liner?variant=42677825863864; *see Intenze Prod., Inc. v. TCM Supply Corp.*, No. 23-55710, 2024 WL 511878, at *1 (9th Cir. Feb. 9, 2024) (finding consumer care low where defendants products could be purchased for $19.50); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) ("With respect to small, inexpensive goods such as sunscreen, the consumer is likely to exercise very little care."). "Low consumer care . . . increases the likelihood of confusion." *Playboy Enters.*, 354 F.3d at 1028. Moreover, degree of care is a "fact-based determination for the jury" not appropriate for a resolution on a motion to dismiss. *Longoria v. Kodiak Concepts LLC*, 527 F. Supp. 3d 1085, 1109 (D. Ariz. 2021).

- Ms. Kardashian clearly "recognized from the outset [] the value of the association" with Mr. Judd and "intended to exploit [his] celebrity." *Wendt*, 125 F.3d at 813. The Complaint alleges, and Ms. Kardashian concedes, that the focal point of the SKKN BY KIM Office Tour Video is the various art and furniture pieces in the office, their designers and creators, and the personal relationships Ms. Kardashian has with them. Compl. ¶¶ 62–67; Mot. at 6 ("[T]he Video's focus is the design and décor of the office[.]"). Ms. Kardashian deliberately named Mr. Judd to the "furniture people" watching because she recognized the value of associating her products with Mr. Judd's name, identity, and reputation. This assertion is neither conclusory nor speculative; rather, the social media posts and articles associating Ms. Kardashian with Mr. Judd demonstrate the effects of her intentional actions. Compl. ¶¶ 81–83.

- The "likelihood of expansion of the product lines" factor is not "apposite to a celebrity endorsement case." *White*, 971 F.2d at 1401. Still, Ms. Kardashian has recently launched products, including SKKN BY KIM products, that are closer to the worlds of minimalist furniture and design. Indeed, Ms. Kardashian's SKKN BY KIM line already includes home goods and accessories, including a tray, a cannister, a round container, a

tissue box, and a waste basket all of which capture Ms. Kardashian's preference for a minimalist aesthetic.[14]  *See also* ECF No. 50-7 at 14–15.[15]

- Finally, the ninth factor favors Judd Foundation, which Ms. Kardashian does not contest. Judd Foundation exists to protect the works and legacy of Mr. Judd.  Compl. ¶ 17.  Mr. Judd sold furniture in his lifetime and entrusted the Judd Foundation to do the same. Judd Foundation is the beneficiary of Mr. Judd's intellectual property rights.  These elements favor Judd Foundation.  *See Fifty-Six Hope Road*, 778 F.3d at 1071–72 (finding strong association between Bob Marley and plaintiff because Marley "sold merchandise bearing his image during his lifetime, and his successors-in-interest have continued to do so, implying that his image served (and continues to serve) a source-identifying function" and there was "common understanding" that plaintiff owned the rights to Marley).

The Complaint clearly pleads facts that demonstrate a likelihood of confusion and false endorsement under Section § 1125(a).

## <u>CONCLUSION</u>

For the foregoing reasons, Judd Foundation respectfully requests that the Court deny Ms. Kardashian's Motion to Dismiss.

Dated:  July 25, 2024

DEBEVOISE & PLIMPTON LLP

 /s/ David H. Bernstein

David H. Bernstein
dhbernstein@debevoise.com
650 California Street

---

[14] Waste Basket, SKKN BY KIM, https://skknbykim.com/products/waste-basket?variant=41952576274616 (last visited July 25, 2024); Tissue Box, SKKN BY KIM, https://skknbykim.com/products/tissue-box?variant=41952575389880 (last visited July 25, 2024); Vanity Tray, SKKN BY KIM, https://skknbykim.com/products/vanity-tray?variant=41952576176312 (last visited July 25, 2024); Round Container, SKKN BY KIM, https://skknbykim.com/collections/home-accessories-1/products/round-container?variant=41952573292728 (last visited July 25, 2024); Canister, SKKN BY KIM, https://skknbykim.com/collections/home-accessories-1/products/canister?variant=41952573522104 (last visited July 25, 2024).

[15] Ms. Kardashian's assertion that her knockoff Donald Judd furniture is "out of the public eye" is inaccurate and irrelevant to the likelihood of confusion analysis.  *See* Mot. at 23 n.12.  Ms. Kardashian has used the knockoff Donald Judd furniture extensively throughout her SKIMS social media accounts.  *See* note 5, *supra*.

1

San Francisco, CA 94108
Telephone:  (212) 909-6696

2

Facsimile:   (212) 521-7696

3

4

Megan K. Bannigan*
mkbannigan@debevoise.com
Jared I. Kagan*

5

jikagan@debevoise.com

6

Hannah Beattie*
hbeattie@debevoise.com

7

James Stramm*
jstramm@debevoise.com

8

*Admitted *Pro Hac Vice*

9

66 Hudson Boulevard
New York, NY 10001

10

Telephone:  (212) 909-6000

11

Facsimile:  (212) 909-6836

12

ERVIN COHEN & JESSUP LLP

13

Russell M. Selmont
Email:  rselmont@ecjlaw.com

14

9401 Wilshire Boulevard, 12th Floor
Beverly Hills, CA 90212-2974

15

Telephone:  (310) 273-6333

16

Facsimile:  (310) 859-2325

17

*Attorneys for Plaintiff*
JUDD FOUNDATION

18

19

20

21

22

23

24

25

26

27

28

1

2

ATTESTATION UNDER LOCAL RULE 11-6.2

3

The undersigned, counsel of record for Plaintiff Judd Foundation, certifies that this brief

4

contains 25 pages, which complies with the page limit set by the Court's standing order.

5

6

Dated: July 25, 2024                                   _/s/_ David H. Bernstein

7                                                        DAVID H. BERNSTEIN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28