COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6404
Facsimile: (310) 883-6500

Attorneys for Defendant
KIM KARDASHIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDD FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>CLEMENTS DESIGN, INC. and KIM KARDASHIAN,<br><br>Defendants. | Case No. 2:24-cv-02496-MEMF-AS<br><br>**DEFENDANT KIM KARDASHIAN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JUDD FOUNDATION'S ELEVENTH CLAIM FOR RELIEF FOR FALSE ENDORSEMENT**<br><br>Date: October 10, 2024<br>Time: 10:00 a.m.<br>Court: Courtroom 8B, 8th Floor<br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br><br>Date Action Filed: March 27, 2024 |

## I. INTRODUCTION

Judd Foundation's ("Plaintiff" or "Judd Foundation") Opposition to Defendant Kim Kardashian's Motion to Dismiss ("Opposition") (Dkt. 54 ("Opp")) is replete with the same mischaracterizations found in its Complaint (Dkt. 1). Tellingly, Plaintiff offers no case law supporting its backwards take on a "false endorsement" claim and avoids the absurdity of its shotgun pleading. Common sense, the law, and the Complaint doom Plaintiff's claim.

To follow Plaintiff's logic, *every* designer or manufacturer whose products are included in a video tour would have a Lanham Act claim. Harken back to *MTV Cribs* or *Lifestyles of the Rich & Famous*, where celebrities allowed sneak peeks into their kitchens, bedrooms, and garages. Who would ever believe that the makers of each décor item, car, art, furniture piece, or kitchen appliance "sponsored or endorsed" the homeowner? That would require more than just name dropping. It would require some suggestion of an endorsement relationship, not just a remark that "this *Mustang* is a fast and fun car" or "check out my closet full of *Air Jordans*." And whether the person making the comment is right or wrong, no prudent person would draw from that type of stray comment that "Ford or NIKE must sponsor this person." Although Plaintiff pretends otherwise, the Lanham Act does not prevent Ms. Kardashian or others from referring to "Donald Judd" without his permission. As established in the Motion, there are ***three*** separate bases requiring dismissal.

**Lack of Standing.** The Motion established that Plaintiff lacks standing to bring its false endorsement claim for lack of injury. The ***only*** allegation of "injury" suffered by Plaintiff because of the alleged false endorsement is a single, passing reference to "reputational" harm, unsupported by any facts (¶ 8).[1] It is not a concrete and particularized injury in fact, and fails the other *Bolger* prongs.

**The Video is Protected Speech.** The Complaint acknowledges that the 13-minute video ("Video") is a "tour" (¶ 62); although the Opposition calls it an advertisement, it is not. Any products that appear in the office are incidental to the tour. The purpose of the Video is to walk interested viewers through Ms. Kardashian's office features and see where she works and spends her time – not to sell any products. As such, like the article in *Kournikova*, the Video is non-commercial speech.

---

[1] Unless otherwise stated, citations to "¶_" and "Ex. " are to the Complaint's paragraphs and exhibits, all emphases are added, and internal citations and quotation marks are omitted.

**No consumer was confused (or likely to be).** There was no plausible likelihood of confusion when the Video was up, and there is none now that is down. The Court must view the Video in its entirety, not rely on Plaintiff's screenshots or characterizations. In that context, it is apparent that no hypothetical fan of Ms. Kardashian who also knows Donald Judd would believe from watching Ms. Kardashian's office tour that Plaintiff "sponsored" her or one of the businesses she owns. And if Plaintiff's fanciful theory is that consumers are supposedly confused into believing the SKKN BY KIM business is endorsed by Plaintiff, then it is admitting it has the wrong defendant.

The Opposition suggests that Ms. Kardashian's mistaken comment causes viewers to believe the furniture was authentic. That is not a false endorsement. To the extent Plaintiff is concerned about ongoing "widespread confusion" (Opp. at 6), there is none. The Motion dispelled each so-called instance, but the Opposition ignores the facts in favor of its own narrative.

The Opposition also relies on statements and extrinsic evidence not alleged or referenced in the Complaint,[2] but it cannot cure the glaring deficiencies in its False Endorsement claim. The bottom line is that a passing reference to "Donald Judd" in a 13-minute office tour video did not cause any cognizable injury to Judd Foundation and is not likely to confuse consumers into believing there is a legal relationship with Ms. Kardashian *or* the SKKN BY KIM business, SKIMS, or any other company not a defendant here. The claim against Ms. Kardashian must be dismissed.

## II. Plaintiff Lacks Standing to Bring A False Endorsement Claim

Before the Court gets into the substance of Plaintiff's legal claim, there is a threshold standing defect in Plaintiff's claim due to its failure to plausibly allege any injury in fact. (Mot. at 9–11.) Plaintiff's response is telling. It does not challenge that (1) it has not lost any clients, sales, or opportunities or (2) the reports that it has sold only ***three*** La Mansana Tables ***in the last fifteen years***. (Mot. at 4.)[3] It focuses instead on a conclusory reference to "reputational harm" in the Complaint's introduction. There, Plaintiff groups "Clements Design's and Ms. Kardashian's actions" together (though ten of the eleven claims are against Clements Design). (¶ 8.) As explained (Mot. at 10–11),

[2] The Opposition discusses Instagram posts made by Ms. Kardashian's SKIMS clothing line, which were made prior to the filing of this action and do not reference "Donald Judd." (Opp. at 6–7.) SKIMS is not a defendant in this case, nor does the Complaint allege that SKIMS products were allegedly falsely endorsed. Those should not be considered.

[3] In connection with her motion to dismiss, Ms. Kardashian requested judicial notice of various documents and facts. (Dkt. 52.) Plaintiff did not oppose that request.

the Complaint is bereft of any actual factual allegations supporting *any* reputational injury caused by the comment – and not any alleged injury at all in the section dedicated to the sole claim against Ms. Kardashian. (¶¶ 169–80.) There is no plausible basis to allege harm from the errant reference.

To have standing to bring its false endorsement claim, Plaintiff must allege that it (1) suffered an injury in fact that is "***concrete and particularized***," (2) that is fairly traceable to Ms. Kardashian's challenged conduct (*i.e.* her few-seconds reference to "Donald Judd" in the Video), and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). Plaintiff fails on all three standing prongs, but the Court need not look past the first.

As to the first prong, the Opposition largely ignores the dearth of factual allegations supporting Plaintiff's claim it suffered reputational harm. (*See*, *e.g.*, Mot. at 10–11). Instead, the Opposition turns to several distinguishable cases – both in terms of the underlying facts of the cases and the specificity of the harm alleged. *TransUnion*, for instance (Opp. at 8–9), involved allegations of reputational harm arising out of TransUnion's erroneous labeling of the class plaintiffs as "potential terrorists, drug traffickers, or serious criminals" in its credit files. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021). The court concluded that these defamatory statements, published to a third party, "would subject [them] to hatred, contempt, or ridicule." *Id.* at 432. Here, there is no defamatory allegation of criminal conduct, or that the Video subjected Plaintiff to "hatred, contempt, or ridicule."[4]

Nor is this case anything like *Miller* (Opp. at 9), where a professional skateboarder alleged that the defendant's unlicensed use of his image and likeness in its video game affected "his ability to maintain existing, and obtain new, sponsors" and precluded him "from appearing in any other skateboarding … game, and/or promote or market said game," due to his association with defendant's game. *Miller v. Easy Day Studios Pty Ltd.*, 2022 WL 20289094, *3 (S.D. Cal. Sep. 16, 2022). Here, there are *no* allegations of lost sales or endorsements and only the most conclusory mention of "reputational" harm.[5]

---

[4] If the Complaint alleges *any* backlash from the Video's reference, it was against Ms. Kardashian, not Plaintiff. (*See*, *e.g.*, ¶ 81 (showing screenshot of social media post stating, "I'm sad to report Kim Kardashian is really into furniture and just discovered Donald Judd.").)

[5] Plaintiff's reliance on *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, *4 (D. Ariz. Jan. 16, 2020) (Opp. at 9) is equally flawed. There, the complaint alleged that because of the defendant's false advertising and marking, "ThermoLife has suffered, and will continue to suffer damage to its ***business***, reputation and good will and ***has lost sales and profits***." This is a far cry from the sole conclusory claim of reputational harm alleged by Plaintiff.

Elsewhere, the portion of *Waits* cited by Plaintiff is irrelevant to standing. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1096 (9th Cir. 1992). In its analysis of challenges to the jury verdict and damages award, the court held that the jury could have inferred that the accused Doritos commercial would have made Tom Waits an "apparent hypocrite" (not alleged by Plaintiff) based on his public stance against doing commercial endorsements. *Id.* at 1103. But in the radio commercial in *Waits*, Frito-Lay hired a voice imitator to sing a jingle in the style of Tom Waits that comprised the entire commercial. The statement here is incomparable: a single colloquial reference to "Donald Judd" two minutes into a 13-minute office tour video (*see* Video at 2:20). *Id.* at 1097–98. *Waits* is inapposite.[6]

In short, Plaintiff cannot point to a single case in which similarly speculative and conclusory allegations of injury have withstood a motion to dismiss. Conversely, courts have dismissed claims premised on such allegations. *See Safari v. Whole Foods Mkt. Services, Inc.*, 2023 WL 5506014, *11 (C.D. Cal. Jul. 24, 2023) (granting motion to dismiss Lanham Act claim where defendant "d[id] not identify what injuries would result" from the "conclusory allegation of reputational harm"); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing misappropriation claim where plaintiffs' sole allegation relating to injury was a conclusory assertion that they were harmed by misappropriation of their names and likenesses without their knowledge or consent.)

Plaintiff also fails to meet the second prong: that its unspecific reputational and goodwill injuries are "fairly traceable" to Ms. Kardashian's actions. The Complaint alleges ten claims against Clements Design arising out of ***Clements Design's*** manufacture and sale of the set of furniture at issue ("Tables and Chairs") and alleges reputational harm arising specifically out of many of ***those*** claims. (¶¶ 100, 107, 114, 122, 129.) The conclusory allegation of "reputational harm" groups Ms. Kardashian's alleged actions with Clements Design's (*Id.* ¶ 8) – without any allegations of particularized injury caused by Ms. Kardashian's statement.

Plaintiff fares no better on the third prong (whether Judd Foundation's injuries are redressable), either. Plaintiff concedes that the Video was removed from Ms. Kardashian's YouTube channel.

[6] If Plaintiff's intended to cite *Waits* based on the court's analysis of standing, it missed the mark. There, the analysis focused on whether a party needs to be a competitor to allege a Lanham Act claim, which is distinct from the issue of injury. *Waits*, 978 F.2d at 1108-10.

(Opp. at 10.) Plaintiff's lawsuit – and the publicity that it *and* its law firm have sowed[7] – effectively served as the "correction" Plaintiff seeks (¶ C (Prayer for Relief)) (and which Ms. Kardashian had offered (¶ 84)). ***Plaintiff's*** exposure of Ms. Kardashian's erroneous statement would "logically enhance [Judd Foundation's] reputation with its supporters and the public." *Safari*, 2023 WL 5506014 at *11 (finding plaintiff failed to plead sufficient facts for a concrete injury where ***plaintiff's*** exposure of defendant's false advertising through a public awareness campaign "would logically enhance Farm Forward's reputation with its supporters and the public"). To the extent Plaintiff seeks an unfounded order requiring Ms. Kardashian to "recycle" the furniture she purchased from Clements, Plaintiff does not allege or argue how doing so would redress any reputational harm it suffered. (¶ D (Prayer for Relief); Opp. at 10.) Other than to continue to seed the press with litigation updates for publicity (Mot. at 3; fn. 6, *supra*), it is unclear what more Plaintiff hopes to achieve by pursuing its false endorsement claim against Ms. Kardashian.[8] Plaintiff fails on ***all*** three prongs.

## III. PLAINTIFF'S FALSE ENDORSEMENT CLAIM IS BARRED BY THE FIRST AMENDMENT

The Motion established why the Video is entitled to First Amendment protection (Mot. at 11–14). In response, Plaintiff misleadingly characterizes the Video, ignoring its nature, purpose, and Plaintiff's ***own*** allegations. Plaintiff's embellishments are no substitute for viewing the Video itself in its entirety. That was key to the district court's decision in *Jackson v. Robinhood Markets Inc.*, which concerned a false endorsement claim brought by musician Ice Cube against financial services company Robinhood over the use of his image in a newsletter posted on Robinhood's website. There, the court examined the newsletter itself, not the plaintiff's characterizations of it. 2021 WL 2435307, *4 (N.D. Cal. Jun. 15, 2021). In doing so, the court disagreed with plaintiff's characterization of the newsletter as an advertisement, concluding it was "demonstrably not an advertisement," and dismissing the complaint. *Id.*; *cf. Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (dismissing as implausible a trademark claim over a scene in *Hangover*)

---

[7] Plaintiff's counsel issued press releases moments after filing the suit and, again, after Ms. Kardashian filed its Motion. See https://www.prnewswire.com/news-releases/judd-foundation-files-federal-lawsuit-to-protect-legacy-of-donald-judd-302101582.html and https://www.prnewswire.com/news-releases/debevoise--plimpton-counsel-for-judd-foundation-responds-to-kim-kardashian-motion-to-dismiss-302185881.html. The latter is further proof that the suit against Ms. Kardashian is a publicity grab.

[8] Though the Complaint seeks monetary damages (¶ E (Prayer for Relief)), Plaintiff has effectively conceded that it hasn't lost any sales or endorsements and does not plead or argue that its alleged reputational harm entitles it to monetary damages.

("In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work. . . .").

As to the first *Bolger* factor,[9] viewing the Video in its entirety shows that it is not an advertisement, even "against the backdrop of today's widespread use of social media to advertise products." (Opp. at 12.) And although Plaintiff now recasts it as an "advertisement," tellingly, the Complaint does ***not***. (¶ 61 (describing the Video as a "tour").) Ms. Kardashian's 13-minute office tour video on YouTube is distinguishable from the images and short-form video posted to Facebook and Instagram that were deemed advertisements in the decisions cited by Plaintiff. (Opp. at 12–13.)[10] Context is important: as Plaintiff concedes, Ms. Kardashian is a "world-famous celebrity," who in addition to running successful businesses is known for her widely-watched reality television show, which follows Ms. Kardashian and her family as they live their day-to-day lives. (¶ 47.) Similar to her reality show, in the long-form Video, Ms. Kardashian gives an inside look at one of her places of work, while sharing personal anecdotes and describing her stylistic preferences and design choices. This is a newsworthy matter of public interest.[11] *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Ms. Kardashian's "reputation as an art collector and design enthusiast," makes her stylistic and design preferences yet another newsworthy aspect of her life. (¶ 50.) This is confirmed by one of the screenshots of the Video in the Complaint, where the caption (written from Ms. Kardashian,[12] addressed to her fans) reads, "You've been asking for this video for a long time and I am so excited to finally be able to share with you where my team and I work from." (¶ 69.) The

---

[9] In analyzing whether speech is commercial, courts in the Ninth Circuit consider whether (1) the speech is an advertisement, (2) the speech refers to a particular product, and (3) the speaker has an economic motivation." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115–16 (9th Cir. 2021) (citing *Bolger v. Youngs Drug Prods. Corp*, 463 U.S. 60, 66–67 (1983)).

[10] The Video is also unlike the pamphlet at issue in *Yeager* (Opp. at 11), which was published by the telecommunications company that sold the advertised products and which the court observed lacked any expression of editorial comment or opinion. *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d, 1089, 1098 (E.D. Cal. 2009). By contrast, the Video was posted to Ms. Kardashian's personal YouTube account and contains significant editorialization by Ms. Kardashian. (Video, *e.g.*, 0:46–1:45, 2:37–2:56, 2:57–3:26, 7:44–8:21, 9:35–10:14.)

[11] In the Opposition, Plaintiff claims that Ms. Kardashian "often uses this long-form video blog format to promote her products" and has "repeatedly been flagged…for using deceptive influencer advertising," but this is not alleged in the Complaint nor supported by any evidence. (Opp. at 15.)

[12] Plaintiff's attempt to distinguish the articles at issue in *Kournikova* and *Hoffman* because they were "published by the celebrities themselves" (Opp. at 14) is puzzling and unhelpful. Donald Judd did not publish the Video.

Video therefore does "more than propose a commercial transaction" and is "not a simple advertisement" (*Hoffman v. Cap. Cities/ABC Inc.,* 255 F.3d 1180, 1185–86 (9th Cir. 2001)).

In arguing that the second *Bolger* factor – whether the speech refers to a particular product – is met, Plaintiff points to the appearance of "SKKN BY KIM" in the Video and two brief portions of the Video in which Ms. Kardashian refers to the SKKN BY KIM packaging. (Opp. 14–15.) However, the reference to a specific product does not by itself render the Video commercial speech. *Bolger*, 463 U.S. at 66. After all, the Video is an ***office*** tour; it necessarily follows that some products (here, SKKN BY KIM beauty products) would be visible. Notably, the Video does not discuss the products' pricing, ingredients, or features. Moreover, the two clips from the Video cited by Plaintiff (Opp. at 14–15) are more examples of Ms. Kardashian describing her stylistic preferences and presenting the rationale for her design choices. (Video at 5:08–5:52, 8:32–10:15.) In one clip, Ms. Kardashian shows the office's "showroom," a place where products are logically displayed. (*Id.* at 5:08–5:20.) In the other, Ms. Kardashian is in her personal office and shows mock-ups of SKKN BY KIM packaging, which she explains were created out of stone—her source of inspiration. (*Id.* at 9:00-9:24.) These clips align thematically with the Video overall; they do not turn it into commercial speech.

Finally, as to the third *Bolger* element – whether the speaker has an economic motivation – Plaintiff's response is unavailing. "This factor asks whether the speaker acted *primarily* out of economic motivation, not simply whether the speaker had *any* economic motivation." *Ariix*, 985 F.3d at 1116 (emphasis in original). "A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech." *Id.* at 1117; *see also Gordon & Breach Sci. Publishers S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (standing to benefit or even intending to benefit from speech is insufficient by itself to turn speech commercial). Plaintiff does not argue that Ms. Kardashian acted ***primarily*** out of economic motivation in its Opposition ***or*** its Complaint. As discussed, there are many motivations for posting the Video, including to appease Ms. Kardashian's fans, as the Complaint itself recognizes. (¶ 69.) Her companies know how to run commercial advertisements (billboards, videos focused on the efficacy of products, print promotions, etc.) to sell products. The office tour is ***not*** of that ilk. Application of the *Bolger* factors to the Video strongly supports dismissal of Plaintiff's claim.

Because the Video is non-commercial, Plaintiff must show that Ms. Kardashian acted with actual malice in creating a false impression of endorsement – an allegation ***not*** in its Complaint. *Kournikova v. Gen. Media Commc'ns., Inc.*, 278 F. Supp. 2d 1111, 1128.[13] Plaintiff's weak argument that Ms. Kardashian acted with actual malice (Opp. at 16–17) is belied by Plaintiff's own allegations and mischaracterizes what is required to show actual malice. First, Plaintiff relies on ***Clements Design's*** claim in its Motion to Dismiss that Ms. Kardashian "misspoke" as support that Ms. Kardashian knew her reference to "Donald Judd" was false and could falsely imply sponsorship or endorsement by Plaintiff. (Opp. at 16.) Yet, in opposing that same motion, Plaintiff argued that Ms. Kardashian was "confused" as to the authenticity of the Tables and Chairs. (Dkt. 37 at 5, 14.) Plaintiff cannot have it both ways. Moreover, even assuming Ms. Kardashian "misspoke," "mere negligence is not enough to demonstrate actual malice." *Hoffman*, 255 F.3d at 1187.

Second, there is no "actual malice" just because the creative Video was not taken down immediately. As stated in *Kournikova*, for a false endorsement claim based on non-commercial speech to survive, the defendant must have acted with actual malice in ***creating*** the alleged false impression and must have "intended to confuse consumers into believing [the claimant] actually endorsed [the defendant's products]." *Kournikova*, 278 F. Supp. 2d at 1128–29. Plaintiff's own allegations demonstrate that this is not the case. Ms. Kardashian referenced Donald Judd "erroneously" (¶ 174), and, upon "learning" that the Tables and Chairs were not DONALD JUDD furniture, offered to include a retraction in the caption of the Video (¶ 84) – an indication that she was not acting with "reckless disregard for the truth." *Hoffman*, 255 F.3d at 1186. The First Amendment bars Plaintiff's claim.

## IV. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION AS TO ENDORSEMENT

The Motion detailed how it is implausible that any reasonable consumer was likely to conclude from the 13-minute tour that Donald Judd sponsored or endorsed Ms. Kardashian. (Mot. at 14–23.) The Complaint speaks in hypotheticals about "widespread confusion" that might occur, but points to no facts making it plausible. Its Opposition does not change the analysis.

First, Plaintiff continues to obfuscate who or what is allegedly being falsely endorsed. On the

[13] Plaintiff is incorrect that a showing of actual malice is only required to recover damages. (Opp. at 16 n.2.) Since *Kournikova*, other courts have acknowledged that a showing of actual malice is required to avoid dismissal of a false endorsement claim based on noncommercial speech. *See*, *e.g.*, *Yeager*, 673 F. Supp. 2d at 1102 n.9.

one hand, Plaintiff argues that Ms. Kardashian's reference to "Donald Judd" in the Video was made "in connection with SKKN BY KIM products." (Opp. at 18.) Not so. But on the other hand, it claims that "*Ms. Kardashian's brand* and the SKKN BY KIM brand benefitted from the association with the DONALD JUDD brand" (*id.* at 19), underscoring the lack of clarity on this point in the Complaint (*compare*, *e.g.*, ¶¶ 79, 81 and ¶¶ 81, 178). Plaintiff defends that Ms. Kardashian is the correct defendant, because "she is the person who made the false statement claiming endorsement by Judd Foundation." (Opp. at 18.). Yet it disregards that the Complaint alleges she did so "on behalf and for the benefit of the SKKN BY KIM brand," which is not named as a defendant. (¶ 174). Plaintiff cannot possibly obtain a remedy from an unnamed defendant for its alleged "benefit."

Second, Plaintiff's attempt to identify the hypothetical consumer who was allegedly confused by the Video is unavailing. Plaintiff makes much of Ms. Kardashian's reference to "furniture people" in the Video, suggesting that these "furniture people" are also fans of Donald Judd and would be confused as to his or Plaintiff's sponsorship or endorsement of Ms. Kardashian or SKKN BY KIM. (Opp. at 20.) However, Ms. Kardashian's YouTube channel has over two million subscribers (¶ 49), and the reference to "furniture people" is only made two minutes and twenty seconds into the Video (¶ 66). There was no emphasis on that brief segment or to "Donald Judd" in any promotion, title, or elsewhere. As explained (Mot. at 16), one would have to make a conscious decision to watch the Video (due to interest in Ms. Kardashian) and make it two minutes in to hear the reference.

Although Plaintiff now argues otherwise, the Complaint does ***not*** allege that the Video was targeted to these "furniture people." (*Compare* Opp. at 22 with ¶¶ 63–66). Ms. Kardashian's statement in the Video, "***If*** you guys are furniture people" (Video at 2:20) suggests that her viewers are ***not*** necessarily "furniture people." Given Ms. Kardashian's broad following and the general public interest in her life (p. 8–9, *supra*), it is implausible that any consumers supposedly targeted by the Video were those that would (1) recognize Donald Judd, then (2) believe as a result of her errant remark, that he "endorsed" Ms. Kardashian or the SKKN BY KIM brand.[14] This is a frustratingly

[14] That Ms. Kardashian discusses "work[ing] with" other artists and designers in the Video does not change this. (¶ 65.) At most, the mistaken reference to Donald Judd suggests Ms. Kardashian or SKKN BY KIM purchased DONALD JUDD furniture, just as the services of the other designers and artists referenced in Video were purchased or commissioned. (*See also* Mot. at 10.) Such references do not imply sponsorship or endorsement.

disingenuous proposition, made more frustrating alongside the proposition that "furniture people" were then led to buy beauty products based on the "endorsement." (¶ 179.) As explained in the Motion, by this logic, then every designer would have a "false endorsement" claim against anybody that exhibited their products in a video. There is a reason why Plaintiff cannot cite a single case supporting this perversion of the Lanham Act.

The remainder of Plaintiff's Opposition relies on mischaracterizations of its Complaint or the Video. No matter, it still fails to point to allegations that plausibly support any likelihood of confusion. For instance, Plaintiff points to social media users, major publications, and a design critic that recognized the reference to Donald Judd and noted the connection between the style of his furniture and "Ms. Kardashian's personal brand and the brand of her products." (Opp. at 21.) These examples do not reflect confusion as to endorsement. *See Kournikova*, 278 F. Supp. 2d at 1124; (*see also* Mot. at 19–21). And these individuals and entities are not the relevant consumers of "Ms. Kardashian's brand or the SKKN BY KIM brand." The Opposition ignores the fact that Donald Judd's fame is tied to his art and furniture (¶¶ 19, 20, 27, 28, 171), and ***not*** beauty products. It also effectively ignores the Motion's deconstruction of the Complaint's cited examples of purported "confusion," including Plaintiff's misleading reference to an article (Mot. at 19-21; Dkt. 50–3 (Ghazarian Declaration, Ex. 2).) Separately, Plaintiff asserts that both Donald Judd and Ms. Kardashian are associated with minimalism (Opp. at 21), but this argument is neither here nor there. That Ms. Kardashian chose to design her office with a similar "aesthetic" to that of her companies' brands is indicative of nothing more than personal preference; ***it does not suggest endorsement*** by any designer or manufacturer of items in her office. Finally, to the extent Plaintiff brings in extrinsic facts to fill in the holes in its claim, these are not alleged in the Complaint. (*See* Opp. at 22 (discussing the price of SKKN BY KIM products), 23–24 (discussing additional products sold under the SKKN BY KIM brand), and regardless, do not make its spurious false endorsement claim any more plausible.

Common sense must prevail. Viewed in context, it is simply not plausible that Ms. Kardashian's single, erroneous reference to "Donald Judd" in the now-removed Video is – or was – likely to cause confusion among an appreciable number of reasonably prudent consumers that Donald Judd sponsored or endorsed her, the SKKN BY KIM business, or anybody else.

Dated: August 8, 2024

COOLEY LLP

By: ______________________

Michael G. Rhodes
Bobby Ghajar
Colette Ghazarian

Attorneys for Defendant
KIM KARDASHIAN