UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JUDD FOUNDATION,

　　　　　　　　　Plaintiff,

　　　v.

CLEMENTS DESIGN, INC. and KIM KARDASHIAN,

　　　　　　　　　Defendants.

Case No.:  2:24-cv-02496-MEMF-AS

**ORDER DENYING MOTIONS TO DISMISS, GRANTING REQUEST FOR JUDICIAL NOTICE, AND DENYING REQUEST TO STRIKE [ECF NOS. 21, 48, 50, 52]**

　　　The following items are before the Court: a Motion to Dismiss filed by Defendant Clements Design, Inc. (ECF No. 21); a Request to Strike a portion of Plaintiff Judd Foundation's Opposition to that Motion to Dismiss filed by Defendant Clements Design, Inc. (ECF No. 48); a Motion to Dismiss filed by Defendant Kim Kardashian (ECF No. 50), and a Request for Judicial Notice filed by Defendant Kim Kardashian (ECF No. 52).

　　　The Court deems these matters appropriate for resolution without oral argument. *See* C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court GRANTS the Request for Judicial Notice (ECF No. 52), DENIES the Request to Strike (ECF No. 48), DENIES Kardashian's Motion to Dismiss (ECF No. 50), and DENIES Clements's Motion to Dismiss (ECF No. 21).

**BACKGROUND**

I.    **Factual Allegations**[1]

   **A. The Parties**

   Plaintiff Judd Foundation is a not-for-profit organization registered in Texas and with its principal place of business in New York. *See* ECF No. 1 ¶ 10. Defendant Clements Design, Inc. ("Clements") is a Pennsylvania corporation with its principal place of business in California. *See id.* ¶ 11. Defendant Kim Kardashian ("Kardashian") is an individual residing in California. *See id.* ¶ 12.

   Donald Judd ("Mr. Judd") was a renowned artist, with work featured in prominent museums and discussed in widely circulated publications. *See id.* ¶¶ 2, 19–20, 28. He had a "minimalist, geometric, and precise style," which he incorporated into furniture. *See id.* Mr. Judd died in 1994. *See id.* ¶¶ 3, 24. Judd Foundation was founded to "carry on and protect" Mr. Judd's legacy after his death. *See id.* ¶¶ 3, 25–27. Judd Foundation maintains Mr. Judd's working spaces, libraries, etc. *See id.* ¶ 3.

   Judd Foundation sells furniture through its wholly owned subsidiary, non-party Judd Furniture LLC d/b/a Donald Judd Furniture ("Judd Furniture"). *See id.* All authentic Judd Furniture pieces are sold under the federally registered Donald Judd trademark. *See id.* The Judd Foundation protects its intellectual property rights, including by using a registered trademark, by stamping each item with the name Donald Judd and a sequential production number. *See id.* ¶ 29. As a condition of purchase of any Donald Judd furniture, Judd Foundation prohibits customers from using the Donald Judd name or variations thereof in promotion materials (unless approved in advance by Judd Foundation), and the invoices for sale of furniture emphasize that "[n]o editorial, press or promotional materials shall create the impression that Judd Foundation endorses or is affiliated in any way, with any product, service or company." *See id.* ¶ 30.

   **B. The La Mansana Table and Chair 84**

---

[1] Unless otherwise indicated, the following factual background is derived from the allegations in Plaintiff Judd Foundation's Complaint. *See* ECF No. 1. For the purposes of analyzing the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

1  Judd Furniture's items include the "La Mansana Table 22" and the "Chair 84," each of which

2  Judd Furniture has sold since 1984. *See id.* ¶¶ 4, 31–46. The La Mansana Table 22 and the Chair 84

3  are separate designs, but they were created to fit together. *See id.* ¶ 4 The La Mansana Table 22 and

4  Chair 84 are detailed in the images below:





*See id.* The La Mansana Table is a rectangular table measuring 30 inches x 168 inches x 56

inches. *See id.* ¶ 32. Each leg is made of a wide, rectangular piece of wood. *See id.* The La Mansana

Table is offered only in specified types of wood, which do not include plywood. *See id.* ¶ 33. The

Chair 84 is a rectangular chair measuring 30 inches x 15 inches x 15 inches. *See id.* ¶ 35. Its base is

an "unornamented cuboid" instead of traditional legs. *See id.* The Chair has no arms. *See id.* It is

made in 10 different permutations with slightly different cuboid bases, as shown below:

*See id.* ¶ 36. The Chair 84 is only offered in specified types of wood. *See id.* ¶ 37.

The La Mansana Table and Chair 84 are available for purchase directly from Judd Furniture, or from a small number of select galleries. *See id.* ¶ 44. The hardwood version of the La Mansana Table retails for $90,000, and the hardwood version of the Chair 84 retails for $9,000 per chair. *See id.* ¶ 45.

**C. Kardashian's Table and Chairs**

Kardashian is a world-famous celebrity. *See id.* ¶¶ 47–49. She co-founded the brand SKIMS, which was worth over $4 billion as of 2023, and also founded SKKN BY KIM, which was valued at $1 billion in 2020. *See id.* ¶ 48. She is widely known for savvy promotion of herself and her business endeavors, and has also garnered a reputation as an art collector and design enthusiast. *See id.* ¶ 50.

In 2020, Kardashian contacted Clements regarding the interior design for the SKKN BY KIM office in Los Angeles. *See id.* ¶ 51. Clements is a renowned interior design firm which has been featured in *Architectural Digest*. *See id.* Clements works closely with designers and galleries on its projects, including galleries that are authorized to sell Judd Furniture pieces. *See id.* ¶¶ 52, 53. Clements design also manufactures furniture itself. *See id.* ¶ 54. Kardashian was a "huge fan" of Donald Judd, and Clements knew this. *See id.* ¶ 55. Clements frequently collaborates with non-party Waldo Fernandez ("Fernandez"), a designer. *See id.* ¶ 52.

4

1    On November 23, 2020, Clements sent a proposal to the predecessor company of SKKN BY

2    KIM (KKW Beauty, LLC) that included an offer to provide "(2) 168 [inch] L Dining Tables in the

3    Style of Donald Judd." *See id.* ¶ 57. The proposal also included a photo of an authentic Donald Judd

4    table with Chair 84 chairs around it. *See id.* The photo used was taken at the San Francisco Museum

5    of Modern Art in 2018, and Judd Foundation owns a registered copyright on the photo. *See id.* The

6    proposal also included an offer to provide "(24) Dining Chairs in the Style of Donald Judd." *See id.*

7    Kardashian purchased the proposed items from Clements, and Clements manufactured, sold, and

8    installed them. *See id.* ¶ 59.

9         **D. Kardashian's Video**

10        On August 12, 2022, Kardashian posted a video titled "Welcome to my Office! Official

11   SKKN BY KIM Office Tour" (the "Video") on her personal YouTube Channel. *See id.* ¶ 60.

12   Kardashian's YouTube Channel has over 2 million subscribers. *See id.* ¶ 49. In the Video,

13   Kardashian gave a tour of the office, and discussed various art pieces, including by naming their

14   designers or creators. *See id.* ¶¶ 62, 63. She noted in the Video that her "whole office was kind of

15   decorated by" a founder of Clements and by Fernandez. *See id.* ¶ 63; *see also id.* ¶¶ 51, 52.

16   Kardashian mentioned famous fashion designer Rick Owens, and pointed to a "Rick Owens bed."

17   *See id.* ¶ 64. Kardashian also stated "[w]e have all of the Vanessa Beecroft art everywhere. If you

18   see any art it's all Vanessa, who really was so pivotal in SKIMS and doing our first campaigns, and

19   she's just amazing. I work with her all the time." *See id.* ¶ 65. Immediately after these references, at

20   two minutes and twenty seconds into the Video, Kardashian stated "If you guys are furniture

21   people—because I've really gotten into furniture lately—these Donald Judd tables are really

22   amazing and totally blend in with the seats." *See id.* ¶ 66. Kardashian deliberately named Mr. Judd to

23   give the impression that she and her SKKN BY KIM brand were connected with or endorsed by Mr.

24   Judd and the Donald Judd brand.[2] *See id.* ¶ 67. This statement has misled consumers into believing

25

26   [2] The Court wishes to emphasize, as discussed above (*see* n.1), that this is merely an allegation and not a finding of fact. In other words, the Court's meaning is that Judd Foundation *alleges* that Kardashian

27   mentioned Mr. Judd's name deliberately in order to give the impression described, and the Court is making no finding as to whether that allegation is true or false. The same is true of all other statements in the factual

28   allegations section of this Order.

that Kardashian worked personally with Mr. Judd or his estate in outfitting the SKKN BY KIM office. *See id.* ¶ 68.

The table and chairs shown in the Video are not authentic Donald Judd furniture. *See id.* ¶ 69. They are instead knockoffs manufactured by Clements. *See id.* The tables are identical in length, width, and height to the La Mansana Table, but are made of plywood, a material that Judd Furniture does not use. *See id.* ¶ 71. The chairs are identical in length, height, and width to the Chair 84. *See id.* ¶ 72. The chairs are also made of plywood, and although Judd Furniture sells a version of the Chair 84 made of high-quality Finnish plywood, the chairs in the Video are made of different, lower quality plywood. *See id.* The chairs bear all of the design components of the Chair 84. *See id.* A comparison between authentic Donald Judd furniture and the furniture in Kardashian's Video is shown below:



*See id.* ¶ 73.

As of the filing of this action, Kardashian's video had been viewed 3.7 million times. *See id.* ¶ 80. The video, and the table and chairs in it, had been discussed in various publications, including *Architectural Digest*, *US Weekly,* and others. *See id.* Each publications repeated that the SKKN BY

KIM office had "Donald Judd" furniture. *See id.* These misstatements contributed to consumer belief

that the source of the furniture in the video was Judd Foundation, and that Kardashian and SKKN

BY KIM were associated with Mr. Judd and the Donald Judd brand. One user posted on X (formerly

known as Twitter): "Kim Kardashian is really into furniture and just discovered Donald Judd." *See*

*id.* ¶ 81. Other posts were also made by others. *See id.* ¶¶ 82–83.

Judd Foundation became aware of the video three days after its release, as Judd Foundation

tracks fabricated Donald Judd furniture. *See id.* ¶ 84. Judd Foundation asked Kardashian's

representatives to retract the video and make a statement to the press that clarified the truth, but

Kardashian was only willing to update the video caption. *See id.* ¶¶ 84, 85. Kardashian also offered

to promote the Judd Foundation. *See id.* ¶ 86.

Judd Foundation also eventually became aware that Clements had manufactured the furniture

in the Video. *See id.* ¶ 88. Judd Foundation's president (who is also Mr. Judd's daughter) reached

out to Clements and requested that they never again manufacture or sell knockoff Donald Judd

furniture. *See id.* ¶ 89. Clements responded that Judd Foundation had no rights to the furniture

design. *See id.* ¶ 90. Judd Foundation also offered to sell authentic Donald Judd pieces to Kardashian

at a discount to replace the knockoffs, but Kardashian declined. *See id.* ¶ 91.

## II.    **Procedural History**

Judd Foundation filed suit in this Court against Clements and Kardashian on March 27, 2024.

*See id.* Judd Foundation brings the following eleven claims: (1) trademark infringement and false

designation of origin under 15 U.S.C. § 1125(a) for the Donald Judd La Mansana Table trade dress,

against Clements only; (2) trademark infringement and false designation of origin under 15 U.S.C. §

1125(a) for the Donald Judd Chair 84 trade dress, against Clements only; (3) trademark infringement

and false designation of origin under 15 U.S.C. § 1125(a) for the Donald Judd integrated trade dress,

against Clements only; (4) registered trademark infringement under 15 U.S.C. § 1114, against

Clements only; (5) false designation of origin and unfair competition under 15 U.S.C. § 1125(a),

against Clements only; (6) false advertising under 15 U.S.C. § 1125(a), against Clements only; (7)

copyright infringement under 17 U.S.C. §§ 101 *et seq.*, against Clements only; (8) unfair

competition under California Business and Professions Code § 17200, against Clements only; (9)

1   false advertising under California Business and Professions Code § 17500, against Clements only;

2   (10) unfair competition under California Law, against Clements only; and (11) false endorsement

3   under 15 U.S.C. § 1125(a), against Kardashian only. *See id.*

4        Clements filed the instant Motion to Dismiss on April 26, 2024. *See* ECF No. 21. Judd

5   Foundation filed an Opposition to Clements's Motion to Dismiss on May 22, 2024.[3] *See* ECF No.

6   37. Clements filed a Reply in support of its Motion to Dismiss on June 4, 2024. *See* ECF No. 47.

7   Clements also filed the instant Motion to Strike on June 4, 2024, seeking to strike the statement of

8   facts in Judd Foundation's Opposition to Clements's Motion to Dismiss. *See* ECF No. 48. Judd

9   Foundation opposes the Motion to Strike. *See* ECF No. 49.

10        Kardashian filed the instant Motion to Dismiss on June 27, 2024. *See* ECF No. 50.

11   Kardashian also filed a Request for Judicial Notice, and several exhibits. *See* ECF Nos. 52, 50-2–50-

12   8. Clements filed an Opposition to Kardashian's Motion to Dismiss on July 25, 2024, and requested

13   judicial notice of additional material in its Opposition. *See* ECF No. 54. Kardashian filed a Reply in

14   support of her Motion to Dismiss on August 8, 2024. *See* ECF No. 55.

**REQUEST FOR JUDICIAL NOTICE (ECF No. 52)**

### I.    Applicable Law

17        A court may judicially notice facts that: "(1) [are] generally known within the trial court's

18   territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

19   cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts

20   may judicially notice "undisputed matters of public record," but generally may not notice "disputed

21   facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001),

22   overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.

23   2002). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as

24   conclusive." Fed. R. Evid. 201(f).

---

[3] Clements filed a Motion to Strike Judd Foundation's Opposition as untimely, which the Court denied. *See* ECF Nos. 42, 45.

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss may also take judicial notice of "matters of public record," "but not of facts that may be subject to reasonable dispute." *See id.* (citing *Lee*, 150 F.3d at 689). A court considering a motion to dismiss may not, "on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." *Id.*

A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

## II.    **Discussion**

Kardashian requests judicial notice of a copy of the Video (Exhibit 1), four articles published online (Exhibits 2–5), and screenshots of SKKN BY KIM's social media accounts (Exhibit 8). *See* ECF No. 52; *see also* ECF Nos. 50-2–50-8. No party has filed any opposition to Kardashian's request for judicial notice.

The Court finds it appropriate to take judicial notice of all these materials. First, the Court finds that the Video was incorporated by reference into the Complaint, as the Complaint refers to the Video, the Video is central to the claims, and no party has questioned its authenticity. *See Corinthian Colleges*, 655 F.3d at 999. Second, the Court finds that the other materials are all matters of public record, and so it is appropriate to take notice of the materials' existence, but the Court will not assume that any facts stated in the materials are true. *See id.* Thus, Kardashian's Request for Judicial Notice is GRANTED.

The Court notes that Judd Foundation requested judicial notice of additional material in its Opposition to Kardashian's Motion to Dismiss. *See* ECF No. 54 at 3 n.2, 4 n.3. Specifically, Judd

Foundations requests that the Court take notice of (1) Kardashian's YouTube channel, and (2) the Video. *See id.* The Court GRANTS this request for the reasons described above.

**REQUEST TO STRIKE (ECF No. 48)**

**I.    Applicable Law**

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).

**II.    Discussion**

The Court finds that there is no basis on which to strike the statement of facts in Judd Foundation's Opposition to Clements's Motion to Dismiss as Clements requests. *See* ECF No. 48. Clements provided no authority suggesting that striking this material is appropriate. *See id.* The Court does not find this material to be an "insufficient defense" or to be "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f).

The Court understands Clements's argument that it is inappropriate to add new facts not contained in the Complaint in opposing a motion to dismiss. *See* ECF No. 48. Judd Foundation argues that this is not what occurred. *See* ECF No. 49. But regardless, striking the material is neither appropriate nor necessary. The Court will only consider the facts alleged in the Complaint as discussed below and need not strike any material to limit its review in this manner.

Thus, the Motion to Strike (ECF No. 48) is DENIED.

**MOTIONS TO DISMISS (ECF Nos. 21, 50)**

**I.    Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

10

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II.    Discussion

For the reasons stated below, the Court DENIES Kardashian's Motion to Dismiss and DENIES Clements's Motion to Dismiss.

### A.  Kardashian's Motion to Dismiss (ECF No. 50) is DENIED.

The sole claim against Kardashian is false endorsement under 15 U.S.C. § 1125(a). *See* ECF No. 1 ¶¶ 169–180. Kardashian argues that this claim fails on three bases: (1) Judd Foundation lacks standing to bring it, (2) it is barred by the First Amendment, and (3) the Complaint does not plausibly allege consumer confusion. *See* ECF No. 50. These arguments fail.

First, the Court finds that Judd Foundation has standing to bring this claim. Standing requires that a plaintiff allege that it has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). The plaintiff bears the burden of establishing standing. *See id.*

Reputational harm is sufficient for standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("Various intangible harms can also be concrete . . . Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."). Here, Judd Foundation explicitly alleged that Kardashian's actions "harm Judd Foundation's reputation by undermining its ability to control the quality of pieces sold under its trademarks, as well as its ability to control Mr.

1    Judd's name and identity" and cause "confusion in the market and undermine the goodwill and

2    integrity of Judd Foundation's" brand. *See* ECF No. 1 ¶ 8. Viewed in light of the allegations that

3    Judd Foundation protects its intellectual property (*see id.* ¶ 29), that Judd Foundation does not allow

4    Judd Furniture pieces to be used in advertising (*see id.* ¶ 30), and the specific evidence offered that

5    the public has been confused (*see id.* ¶¶ 80–84), this allegation is plausible and not conclusory. It is

6    further bolstered by the specific way in which Kardashian discussed the furniture in the Video, by

7    naming other designers she had collaborated with first, and then referencing "Donald Judd," which

8    has at least some potential to plausibly affect Judd Foundation's reputation. *See id.* ¶¶ 64, 65. The

9    Court finds that Judd Foundation's allegation of reputational harm is plausible and sufficient for

10   standing.[4]

11        Kardashian argues that there is no plausible allegation as to how consumers were confused,

12   but the Court finds otherwise as discussed above. *See* ECF No. 50 at 16. Kardashian also argues that

13   there is no evidence of lost sales, but this is irrelevant given the authority suggesting reputational

14   harm alone is sufficient for standing. *See id.*; *see also TransUnion LLC*, 594 U.S. at 425. Kardashian

15   further argues that Judd Furniture would be the proper plaintiff, rather than Judd Foundation, but in

16   context, the Court finds that Judd Foundation has sufficiently alleged that its reputation was harmed

17   by Kardashian such that it has standing. Thus, the Court finds that Judd Foundation has standing.

18        Second, the Court finds that the First Amendment does not bar Judd Foundation's claims at

19   this stage. Kardashian cites *Kournikova v. Gen. Media Communications Inc.*, which held that when a

20   "public figure (who is complaining about the use of her identity in noncommercial speech) brings a

21   false endorsement claim, it is barred by the First Amendment unless the plaintiff produces clear and

22   convincing evidence that the defendant acted with actual malice in creating the false impression of

23   endorsement." *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1128 (C.D. Cal.

24   2003) (*citing Hoffman v. Capital Cities/ABC Inc.*, 255 F.3d 1180, 1186, 1189 n. 3 (9th Cir. 2001)).

25

26

27   [4] Although there is overlap between this analysis and the other sections below, standing analysis should not be
     conflated with an analysis of the merits. *See Catholic League for Religious & C.R. v. City & Cnty. Of S.F.*,
28   624 F.3d 1043, 1049 (9th Cir. 2010). In this section, the Court is only finding that this allegation is plausible
     and sufficient to confer standing and makes no finding as to whether any claims are sufficiently pleaded.

1  *Kournikova* is not binding on this Court, but even assuming it is correct as to the law, it does not

2  compel dismissal here. Judd Foundation *has* alleged actual malice here. Actual malice means

3  knowledge of falsity of reckless disregard for the truth. *See Hoffman*, 255 F.3d at 1184. Here, Judd

4  Foundation alleged that Kardashian deliberately sought to convey a "false impression" that she was

5  connected to or endorsed by the Judd Furniture brand. *See* ECF No. 1 ¶ 67. The Court finds this

6  allegation plausible in context, and drawing all inferences in favor of Judd Foundation, it alone is

7  sufficient to show actual malice. Furthermore, Judd Foundation has alleged that it informed

8  Kardashian of the truth that her table and chairs were inauthentic, and Kardashian refused to fully

9  correct her misstatements. *See id.* ¶ 84–87. Kardashian provides no authority suggesting this too

10  would not show actual malice.

11      Kardashian argues that the statements in the Complaint that Kardashian "erroneously" used

12  Mr. Judd's name undermines any actual malice (*see, e.g., id.* ¶ 174), but drawing all inferences in

13  favor of Judd Foundation, erroneous simply means not correct, and does not suggest a lack of

14  intentional falsity. Judd Foundation's allegation that Kardashian was "misled" by Clements also

15  does not undermine actual malice—a plaintiff is permitted to plead in the alternative, including by

16  asserting contradictory theories against different defendants, and "a pleading should not be construed

17  as an admission against another alternative" at the pleading stage. *See Molsbergen v. United States*,

18  757 F.2d 1016, 1019, 1019 n.4 (9th Cir. 1985). Although a plaintiff seeking to prove actual malice

19  bears a "heavy burden" and must have "clear and convincing evidence," the Court finds that at this

20  stage, Judd Foundation has sufficiently pleaded it. *See Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d

21  1249, 1252 (9th Cir. 1997). The Court need not settle the issue of whether the Video is commercial

22  speech, as even assuming it is not, Judd Foundation has met its burden at this stage.

23      Third, the Court finds that Judd Foundation has sufficiently alleged consumer confusion as to

24  an endorsement. "Under the law of false endorsement, likelihood of customer confusion is the

25  determinative issue." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002). Kardashian

26  asserts that a false endorsement claim requires that an "*appreciable* number" of people would be

27

28

confused.[5] *See* ECF No. 21 (emphasis in original). Assuming that this is required, Judd Foundation has pleaded sufficient facts to meet this standard. In context, drawing all inferences in favor of Judd Foundation, the Court finds that Judd Foundation has plausibly alleged that an appreciable number of people would have been confused, as explained next.

In the context of Kardashian allegedly being a widely known celebrity and an influencer (*see* ECF No. 1 ¶¶ 47–50), and Kardashian allegedly being an "art collector and design enthusiast" that collaborates with well known art personalities (*see id.* ¶ 51), it is at least plausible that viewers of social media content would understand the Video as suggesting that Kardashian was associated with the Donald Judd brand. This is bolstered by the references to other art personalities in the Video. *See id.* ¶¶ 64–66. Kardashian referenced famous designer Rick Owens, and then made clear that her office included a "Rick Owens bed." *See id.* ¶ 64. Kardashian then referenced famous artist Vanessa Beecroft, explained that the office had Vanessa Beecroft art "everywhere," and stated that Vanessa Beecroft "was so pivotal in SKIMS" and that Kardashian "work[s] with [Vanessa Beecroft] all the time." *See id.* ¶ 65. It is plausible in context that these descriptions would suggest to a consumer that Kardashian is associated with these famous and respected artists. The details of the association are not made clear—Kardashian may simply be a fan of these people and purchaser or their art, but it is plausible that a reasonable viewer might conclude that the association may be deeper than that, and that these people are collaborators with Kardashian, particularly as to Vanessa Beecroft. *See id.* Given Kardashian's alleged status as an influencer, it is plausible both that these associations benefit Kardashian's image and that they were intended to do so. Kardashian did the same thing with Mr. Judd's name as she did with the others—she mentioned Mr. Judd by name and then pointed out that her SKKN BY KIM office contains his (purported) works. *See id.* ¶¶ 66–68. In light of Mr. Judd's alleged notoriety and cultural impact[6] (*see id.* ¶ 28), reasonable consumers plausibly might gain

---

[5] The authority cited in support of this statement addresses trademark infringement, not false endorsement. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) ("To constitute trademark infringement, use of a mark must be likely to confuse an *appreciable* number of people as to the source of the product."). The Court need not settle whether it applies, as even if it does, the Complaint is sufficient.

[6] Kardashian argues that her fans are unlikely to recognize Mr. Judd and know him. *See* ECF No. 50 at 23–24. The Complaint alleges facts sufficient to draw the inference that the opposite is true.

respect for Kardashian through her implied association with him. But regardless of whether the
reference to Mr. Judd actually improved Kardashian's image, it is plausible that reasonable
consumers could understand the reference to him to suggest an association between him or the Judd
Furniture brand and Kardashian. It is further plausible that this association would benefit
Kardashian's brand and suggest an endorsement of Kardashian by Judd Foundation. Drawing all
inferences in favor of Judd Foundation, the Court finds that the allegations suggest that it is plausible
that a significant number of consumers likely assumed that this association existed, and thus the
Court finds that Judd Foundation has sufficiently alleged a likelihood of consumer confusion.

Kardashian's argument that SKKN BY KIM should instead be a defendant misses the mark.
*See* ECF No. 50 at 21. Kardashian's video promoted not only SKKN BY KIM but also her personal
brand, and the Court sees no reason she personally cannot be liable. So too does Kardashian's
argument that the parties use different marketing channels (*see id.* at 27)—this inquiry is relevant to
trademark infringement, but no authority suggests that it is relevant to a false endorsement claim.
*See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (analyzing a trademark
claim).

Thus, Kardashian's Motion to Dismiss (ECF No. 50) is DENIED.

**B. Clements's Motion to Dismiss (ECF No. 21) is DENIED.**

Clements moves to dismiss Judd Foundation's claims on the following purported bases: (1)
Judd Foundation failed to plead trade dress, in that Judd Foundation failed to allege the claimed
trade dress with particularity, failed to allege non-functionality, failed to plead lack of secondary
meaning, and failed to plead likelihood of confusion; (2) Judd Foundation fails to plead actionable
claims based on the statement "in the Style of Donald Judd," because this was nominative fair use
and was not sufficient to show likelihood of confusion; (3) Judd Foundation failed to plead false
advertising in that it neither alleged false statements nor actionable advertising; (4) Judd Foundation
failed to plead claims under California Business and Professions Code Sections 17200 and 17500;
(5) Judd Foundation failed to plead common law unfair competition; (6) Judd Foundation has no
relief available for copyright infringement; and (7) Judd Foundation lacks standing for false
advertising claims. *See* ECF No. 21-1. The Court will address each argument in turn.

1. <u>Judd Foundation has adequately pleaded claims for trade dress (first, second, and third causes of action).</u>

The Court finds that Judd Foundation's claims for trade dress infringement are sufficiently pleaded at this stage. To state a claim for trade dress infringement, Judd Foundation must allege: "(1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1212 (9th Cir. 2023).

First, the Court finds that Judd Foundation has identified its alleged trade dress with particularity. For a trade dress claim to prevail, "the elements of the alleged trade dress must be clearly listed and described." *See id.* at 1213. Clements argues that Judd Foundation's claims fail to meet this standard, but the Court finds otherwise.

Judd Foundation's complaint includes highly detailed descriptions of the alleged trade dress as to the La Mansana Table, the Chair 84, and the integrated combination of the two. *See* ECF No. 1 ¶¶ 32–39. The descriptions include specific dimensions (e.g., "a rectangular chair measuring 30 inches tall, 15 inches wide, and 15 inches long, using 1x12 boards," ECF No. 1 ¶ 35), details on how the parts fit together (e.g., "unadorned, flat, straight, rectangular pieces meeting orthogonally," *id.*), and descriptions of how this trade dress differs from other similar products (e.g., "Instead of having four legs like most ordinary chairs, the base of the DONALD JUDD Chair 84 is an unornamented cuboid . . . The chair has no arms—rather, a single, undecorated, rectangular piece, orthogonal to the chair seat, serves as the back of the chair," *id.*). At this stage, the Court finds these descriptions sufficient to identify the claimed trade dress.

Clements acknowledges these descriptions in its Motion, but nevertheless argues they are insufficient—Clements's argument appear to be that Judd Foundation provided *too much* detail, and that it is unclear what specific features are protected. *See* ECF No. 21-1 at 14. Clements argues that failing to "identify which of the many features it lists is an element of the alleged trade dress," is "fatal to a trade dress claim," but provides no authority in support, and the Court finds that this is not a reason to dismiss the claims in this context. *See id.* Clements further argues that it is unclear which

permutation of Chair 84 Judd Foundation seeks to protect. *See id.* But no authority suggests that a plaintiff may not assert trade dress protection over a series of designs that are slightly distinct from each other but have significant similarities and are distinct from other products. Finally, Clements argues that the descriptions are too generic to be protected. *See id.* This argument fails—at minimum, the specific dimensions distinguish the trade dress at issue from other minimalist designs. *See, e.g.*, ECF No. 1 ¶ 35. Clements focuses on individual elements such as "orthogonal shape" to argue that the design is generic but ignores the complete whole and other more distinct details. *See* ECF No. 21-1 at 15. The Court finds that the trade dress is identified with sufficient particularity.

Second, the Court finds that at this stage, Judd Foundation has adequately alleged non-functionality. To be eligible for trade dress protection, a design must not be "functional," meaning it must have neither "utilitarian functionality," based on how it works, nor "aesthetic functionality" based on its inherent aesthetic appeal. *See Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020). Here, Clements focuses its argument on aesthetic functionality. *See* ECF No. 21-1. "A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress protection under trademark law would impose a significant non-reputation-related competitive disadvantage on its owner's competitors." *Blumenthal*, 963 F.3d at 865. The key inquiry is whether granting protection would force competitors to "use alternative designs" that would, for example, "not have as much intrinsic aesthetic appeal." *See id.*

Trade dress functionality is an "intensely factual issue." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 73 (9th Cir. 2002). It is nevertheless suitable for determination as a matter of law in some circumstances, but only where facts are undisputed. *See id.* At this stage, the Court cannot find as a matter of law that the trade dress is functional. The facts as pleaded are susceptible to multiple interpretations that would impact the analysis described above. The Complaint describes the furniture in great detail, and this Court is not well positioned to determine whether all aspects described are purely aesthetic and not functional without further information on the furniture industry and Judd Foundation's competitors. Drawing all inferences in favor of Judd Foundation, it

1  is plausible that at least some aspects[7] of the claimed trade dress serve source identifying rather than

2  aesthetic purposes. *See Blumenthal*, 963 F.3d at 865. Thus, the Court cannot find at this stage that

3  the design is functional and thus not subject to protection.

4      Third, the Court finds that Judd Foundation adequately alleged that its products have

5  acquired secondary meaning. Where trade dress has not been registered, "a product's design is

6  distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores,*

7  *Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000). Secondary meaning is "a mental recognition in

8  buyers' and potential buyers' minds that products connected with the trade dress are associated with

9  the same source." *Jason Scott*, 68 F.4th at 1214. "Secondary meaning can be established in a variety

10  of ways, including direct consumer testimony; survey evidence; exclusivity, manner, and length of

11  use of mark; amount and manner of advertising; amount of sales and number of customers;

12  established place in the market; and proof of intentional copying by the defendant." *Id.* "Whether a

13  particular trade dress has acquired secondary meaning is a question of fact." *First Brands Corp. v.*

14  *Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).

15      Here, Judd Foundation has alleged facts sufficient to draw a plausible inference that the trade

16  dress at issue has acquired secondary meaning. In particular, Judd Foundation has alleged that it

17  markets and promotes its furniture (*see* ECF No. 1 ¶ 27), and that the media has covered Mr. Judd's

18  work (*see id.* ¶ 28). These alone are sufficient at this stage to draw an inference of secondary

19  meaning. Further, Judd Foundation has alleged that Clements deliberately copied its designs, which

20  if true, would "strongly support[] an inference of secondary meaning." *See Jason Scott Collection*,

21  68 F4th at 1211. In sum, Judd Foundation has sufficiently alleged secondary meaning.

22      Finally, Judd Foundation has alleged a sufficient likelihood of consumer confusion. As

23  discussed in further detail below as to the claim for trademark infringement, the Court finds that in

24  context, Judd Foundation's statements to Kardashian in the proposal—particularly the statement that

25  the furniture would be "in the style of Donald Judd" accompanied by an actual photo of Judd

26

27  [7] The Ninth Circuit has made clear that for trade dress to be functional, "*everything* about it must be

28  functional"—it is not sufficient if merely some parts of the trade dress are functional. *See Blumenthal*, 963 F.3d at 867.

Foundation furniture (*see* ECF No. 1 ¶ 57)—could plausibly lead a reasonable consumer to be confused and believe that Clements was selling authentic Judd Foundation furniture.

For these reasons, the Court finds the trade dress claims (first, second, and third causes of action) to be adequately pleaded.

2.  <u>Judd Foundation has adequately pleaded claims for trademark infringement and false designation of origin (fourth and fifth causes of action).</u>

Clements argues that Judd Foundation's claims for trademark infringement and false designation of origin fail as pleaded. The Court finds that these claims are sufficient at this stage.

Clements first argues that its use of the phrase "in the Style of Donald Judd" was nominative fair use. *See* ECF No. 21-1 at 20. Trademark law does not prohibit the "*nominative use* of a mark—where the only word reasonably available to describe a particular thing is pressed into service.*" New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). A seller may use another's name in describing the seller's product, so long as the seller "makes it clear that the product they offer is their own." *Smith v. Chanel, Inc.*, 402 F.2d 562, 569 (9th Cir. 1968). For example, the statement "We dare you to try to detect any difference between Chanel #5 [] and Ta'Ron's 2nd Chance" was not actionable, as although the statement referenced Chanel, it made clear that Ta'ron's product was distinct. *See id.* at 563, 569.

Here, at this stage, the Court finds that the phrase "in the Style of Donald Judd" is not necessarily nominative fair use. In context, it is possible that a reader would interpret this as suggesting that the products came directly from Judd Foundation—Judd Foundation itself sells products in the style of Mr. Judd, and the statement does not make clear that Clements's products are unique. There are factual questions as to how that phrase would be read, and at this stage, drawing all inferences in favor of Judd Foundation, the Court cannot hold as a matter of law that this makes clear that Clements's products are its own. Furthermore, Judd Foundation's claims are not based solely on that phrase. *See* ECF No. 1 ¶¶ 117–31. Clements allegedly not only used that phrase, but also included a photograph of an actual Judd Furniture table and chairs (*see id.* ¶ 57), and Judd Foundation alleges that Kardashian was actually misled by Judd Foundation's proposal (*see id.* ¶ 158). At this stage, nominative fair use fails as a defense, because the facts suggest that Clements did

not make clear that the products were from Clements as opposed to Judd Foundation or Judd Furniture.

Clements next argues that Judd Foundation failed to allege a likelihood of confusion. If "a plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint" on a motion to dismiss. *See Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023). The key test for likelihood of confusion on a trademark claim is "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Courts typically use the eight *Sleekcraft* factors to analyze this.[8] *See id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)). For similar reasons to those discussed above, the Court finds that it is plausible that a reasonably prudent consumer who read Clements's proposal to Kardashian would have been misled about the origins of Clements's products. The phrase "in the Style of Donald Judd" is susceptible to a reading that Clements is selling Judd Furniture tables as designed by Mr. Judd, and in combination with the photos, a consumer could be confused. This is sufficient on a motion to dismiss.

Thus, the Court finds that the fourth and fifth causes of action are sufficiently pleaded. Clements's Motion to Dismiss is DENIED as to these claims.

3. Judd Foundation has adequately pleaded claims for false advertising under federal or state law (sixth cause of action).

Clements argues that the false advertising claims fail because there was no false statement of fact and no advertisement, and further argues that Judd Foundation lacks standing to bring these claims. *See* ECF No. 21-1 at 22–24, 26–27. The Court finds that these claims are adequately pleaded.

---

[8] Clements does not engage with the *Sleekcraft* factors in its Motion to Dismiss or Reply, and instead simply asserts that there is no likelihood of confusion. The Court will not examine these factors in detail, but if the Court were to do so, several appear to point in favor of likelihood of confusion, including: "strength of the mark," "proximity or relatedness of the goods," "evidence of actual confusion" (at least as alleged), and "intent." *See Sleekcraft*, 599 F.2d at 348–49.

1       A claim for false advertising under federal law[9] requires, among other elements, that the

2   defendant "made false statements of fact about its own product" "in its . . . advertisements." *Cook,*

3   *Perkiss & Liehe, Inc. v. N. California Collection Serv.* Inc., 911 F.2d 242, 244 (9th Cir. 1990). Here,

4   Clements argues there was no false statement and no advertising.

5       The Court first finds that there was a false statement. A "false statement" in this context is

6   not limited to statements that are literally false—it also includes statements that are false by

7   "necessary implication," or that are "literally true but likely to mislead or confuse consumers."

8   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). As described above,

9   the Court finds that the statements in Clements's proposal to Kardashian are likely to confuse

10   consumers (drawing all inferences in favor of Judd Foundation at this stage), and so those are

11   sufficiently false statements at this stage.

12       Second, the Court finds that there was an advertisement. The Ninth Circuit has defined

13   "commercial advertising" as a representation meeting the following four elements: (1) commercial

14   speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose

15   of influencing consumers in purchasing defendant's goods and services; and (4) disseminated

16   sufficiently to the relevant purchasing public to constitute advertising within the industry. *See*

17   *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). Here,

18   these elements are met. The first three are clear—Clements's proposal to Kardashian was

19   commercial speech, by Clements (allegedly a competitor of Judd Foundation), for the purpose of

20   influencing Kardashian to purchase Clements's goods and services. The only question is whether

21   what appears to have been a bespoke proposal to one client was "disseminated sufficiently to the

22   relevant purchasing public to constitute advertising within the industry." *See id.* On a motion to

23   dismiss, the Court finds the allegations sufficient. At least one district court has held that

---

[9] Non-binding authority suggests that the claim for false advertising in violation of California law (ninth cause of action) has the same standard as the federal law claim (sixth cause of action), and no party has argued otherwise. *See Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, Case No. 16-CV-02594, 2018 WL 1524499, at *6 (S.D. Cal. Mar. 28, 2018). To the extent that Clements is challenging the ninth cause of action on the same grounds, the Court finds that that claim survives for the same reasons as the sixth cause of action described here.

1   "allegations of a single promotional presentation to an individual purchaser may be enough to plead

2   sufficient dissemination." *See Impeva Labs, Inc. v. Sys. Plan. Corp.*, Case No. 5:12-CV-00125, 2012

3   WL 3647716, at *4 (N.D. Cal. Aug. 23, 2012). Although *Impeva* is not binding on this Court, the

4   Court holds similarly in this context—drawing all inferences in favor of Judd Foundation, it appears

5   that in the market for expensive furniture, a proposal to one specific client is sufficiently

6   disseminated to the relevant purchasing public to constitute advertising within the industry. Thus,

7   there was an advertisement.

8        Finally, the Court finds that Judd Foundation has standing. In order to have standing to bring

9   a false advertising claim, a plaintiff "must show economic or reputational injury flowing directly

10  from the deception wrought by the defendant's advertising; and that that occurs when deception of

11  consumers causes them to withhold trade from the plaintiff." *See Lexmark Int'l, Inc. v. Static

12  Control Components, Inc.*, 572 U.S. 118, 133 (2014). "That showing is generally not made when the

13  deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133–

14  34. "For example, while a competitor who is forced out of business by a defendant's false

15  advertising generally will be able to sue for its losses, the same is not true of the competitor's

16  landlord, its electric company, and other commercial parties who suffer merely as a result of the

17  competitor's inability to meet its financial obligations." *Id.* Here, the key issue is whether an injury

18  to Judd Foundation's subsidiary Judd Furniture is sufficient. The Court finds that it is. Judd

19  Foundation is not akin to the third parties given as examples by the Supreme Court above (e.g., a

20  landlord)—its interests are much more closely tied to Judd Furniture. And Judd Foundation itself

21  arguably suffered reputational harm. Clements asserts that it "is well-established that it cannot be

22  assumed that a parent corporation has the same interests as a subsidiary," *see* ECF No. 47 at 14, but

23  provides no citation for this. The Court finds that Judd Foundation has standing to bring a false

24  advertising claim.

25       Thus, Clements's Motion to Dismiss is DENIED as to the federal false advertising claim

26  (sixth cause of action).

27       4.  Judd Foundation has adequately pleaded its claims under California Business and
         Professions Code Sections 17200 and 17500 (eighth and ninth causes of action).

28

Clements argues that under the California Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17500) and False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17200), Judd Foundation may only win equitable relief. This argument does not warrant dismissal, as the Court finds that Judd Foundation has pleaded facts sufficient to pursue injunctive relief (at minimum) at this stage.

A plaintiff may pursue injunctive relief based on past violations of the law. *See S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("An inference arises from illegal past conduct that future violations may occur . . . The fact that illegal conduct has ceased does not foreclose injunctive relief."). Furthermore, even if this were not so, Judd Foundation has pleaded facts suggesting a reasonable fear of future violations. Judd Foundation alleges that Clements has argued in correspondence that it is not to blame for Kardashian's Video and has a right to act as it did. *See* ECF No. 1 ¶ 92. This is sufficient at this stage to pursue prospective injunctive relief.

Thus, the Motion to Dismiss is DENIED as to the eighth and ninth causes of action.

5. <u>Judd Foundation has adequately pleaded its claim for common law unfair competition (tenth cause of action).</u>

Clements argues that the common law unfair competition law claim fails because Clements did not "pass off" its goods as being from Judd Foundation. In light of the Court's ruling as to the other claims—that a reasonable consumer could interpret Clements's proposal to Kardashian as suggesting that Clements was selling authentic Judd Furniture goods, when it was not—the Court finds that this argument fails. Clements's Motion to Dismiss is thus DENIED as to the tenth cause of action.

6. <u>Judd Foundation has adequately pleaded its claim for copyright infringement (seventh cause of action).</u>

Clements argues that Judd Foundation cannot pursue a claim for copyright infringement because it is neither entitled to an injunction nor damages. *See* ECF No. 21-1 at 26. The Court finds otherwise. At minimum, Judd Foundation is potentially entitled to an injunction against further use of its copyrighted photo. The fact that illegal activity has ceased does not mean a plaintiff cannot pursue an injunction, as discussed above, and Judd Foundation has reason to fear that Clements may

use the photo again based on correspondence. *See* ECF No. 1 ¶ 92. This is sufficient at this stage.
The copyright infringement claim therefore may proceed, and the Motion to Dismiss is DENIED as
to the seventh cause of action.

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Kardashian's Request for Judicial Notice (ECF No. 52) is GRANTED, and Judd
   Foundation's Requests for Judicial Notice contained in ECF No. 54 are likewise GRANTED.

2. Clements's Request to Strike (ECF No. 48) is DENIED.

3. Kardashian's Motion to Dismiss (ECF No. 50) is DENIED.

4. Clements's Motion to Dismiss (ECF No. 21) is DENIED.


IT IS SO ORDERED.


Dated: March 24, 2025

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge